**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GIORGI RTSKHILADZE,<br><br>    Plaintiff,<br><br> v.<br><br>ROBERT S. MUELLER, III<br>*in his individual capacity*,<br><br>and<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE<br><br>    Defendants. | Case No.  1:20-cv-1591-CRC |

**REPLY BRIEF IN SUPPORT OF DEFENDANT UNITED STATES'**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................1

I.      Rtskhiladze Failed to Establish That He Has Standing. ................................................1

        A.      Rtskhiladze Failed to Allege that His Injuries Are Causally Connected to the Any
                Inaccuracies in Footnote 112 or Its Publication. ..............................................2

        B.      Rtskhiladze Failed to Establish His Injuries are Redressable by Equitable Relief. ......4

                1.      Rtskhiladze's Declaration Fails to Establish That It is Probable that His
                        Business Associates and the Georgian Government Will Resume Their
                        Relationship With Him. .........................................................................5

                2.      Rtskhiladze's Suggestions of Additional Equitable Relief Also Fail to Redress
                        His Injuries. ........................................................................................7

II.     Rtskhiladze Did Not Plead a Due Process Cause of Action Against DOJ, Nor Could He
        (Count I). .....................................................................................................................9

        A.      Rtskhiladze Cannot Amend His Complaint Through Argument. ...........................9

        B.      Even if Rtskhiladze Attempted to Plead a Due Process Cause of Action Against
                DOJ, He Failed to State a Claim. .....................................................................11

III.    Rtskhiladze Failed to State a Claim Under the APA (Count II). ..................................12

IV.     Rtskhiladze Failed to State a Claim Under the Declaratory Judgement Act (Count II). ..........15

V.      Rtskhiladze Failed to State a Claim Under the Privacy Act (Counts III and IV). ....................16

        A.      Rtskhiladze Has Not Suffered An Adverse Determination ...........................................17

        B.      Rtskhiladze Failed to Allege Any Inaccuracy Was Intentional or Willful. ..................19

        C.      Rtskhiladze Is Not Entitled To Equitable Relief For His Accuracy Claim. ...............19

                1.      Multiple Courts Have Held The Privacy Act Bars Equitable Relief For an
                        Accuracy Claim. ...............................................................................20

                2.      The APA Does Not Provide a Basis for Equitable Relief For An Accuracy
                        Claim. .............................................................................................21

CONCLUSION ...........................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

\* *Abdelfattah v. DHS*,
    787 F.3d 524 (D.C. Cir. 2015) ................................................................................... 11, 23

*Akl v. Sebelius*,
    No. 08-cv-461, 2011 WL 13273368 (D.D.C. Jan. 13, 2011) .........................................18

*Akl v. Sebelius*,
    No. 08-cv-461, 2012 WL 12905168 (D.D.C. Sept. 7, 2012) .........................................18

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ......................................................................................................21

\* *Ali v. Rumsfeld*,
    649 F.3d 762 (D.C. Cir. 2011) .......................................................................................16

\* *Allen v. Wright*,
    468 U.S. 737 (1984) .........................................................................................................2

\* *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) ................................................................................................. 10, 11

\* *Cause of Action Inst. v. Tillerson*,
    285 F. Supp. 3d 201 (D.D.C. 2018) ............................................................................ 5, 6, 7

\* *Chambers v. U.S. Dep't of Interior*,
    568 F.3d 998 (D.C. Cir. 2009) .......................................................................................17

*Coll. Sports Council v. GAO*,
    421 F. Supp. 2d 59 (D.D.C.2006) ............................................................................... 9, 14

\* *Comm. On the Judiciary of United States House of Representatives v. McGahn*,
    No. 19-5331, 2020 WL 5104869 (D.C. Cir. Aug. 31, 2020) .........................................15

*Davis v. Billington*,
    681 F.3d 377 (D.C. Cir. 2012) .......................................................................................10

*Dick v. Holder*,
    67 F. Supp. 3d 167 (D.D.C. 2014) .................................................................................18

\* *Dickson v. Office of Pers. Mgmt.*,
    828 F.2d 32 (D.C. Cir. 1987) .........................................................................................17

*Doe v. Air Force,*
    812 F.2d 738 (D.C. Cir. 1987) ................................................................22

*Doe v. Chao,*
    435 F.3d 492 (4th Cir. 2006) .................................................................20

\* *Doe v. Chao,*
    540 U.S. 614 (2004) ..............................................................................22

*Doe v. DOJ,*
    753 F.2d 1092 (D.C. Cir. 1985) ............................................................19

\* *Doe v. Stephens,*
    851 F.2d 1457 (D.C. Cir. 1988) ........................................................ 20, 22

*Doe v. Tenenbaum,*
    127 F. Supp.3d 426 (D. Md. 2012) ........................................................14

*El-Shifa Pharm. Indus. Co. v. United States,*
    No. CIV.A.01 731 RWR, 2007 WL 950082 (D.D.C. Mar. 28, 2007) ........15

*Ermit v. FBI,*
    811 F. App'x 4 (D.C. Cir. 2020) ............................................................10

*F.D.I.C. v. Meyer,*
    510 U.S. 471 (1994) ..............................................................................10

*Federal Election Comm'n,*
    13 F.3d 412 (D.C. Cir. 1994) ..................................................................2

\* *Food & Water Watch, Inc. v. Vilsack,*
    808 F.3d 905 (D.C. Cir. 2015) ............................................................ 3, 4

*Gen. Elec. Co., v. Jackson,*
    610 F.3d 110 (D.C. Cir. 2010) ..............................................................11

*Haase v. Sessions,*
    893 F.2d 370 (D.C. Cir. 1990) ..............................................................21

*Hanley v. DOJ,*
    623 F.2d 1138 (6th Cir. 1980) ..............................................................20

\* *Hearst Radio v. F.C.C.,*
    167 F.2d 225 (D.C. Cir. 1948) ..............................................................15

*Hinck v. United States,*
    550 U.S. 501 (2007)........................................................................................................21

*Hobson v. Wilson,*
    737 F.2d 1 (D.C. Cir.1984) ............................................................................................22

* *Kleiman v. Dept. of Energy,*
    956 F.2d 335 (D.C. Cir. 1992) .......................................................................................18

*Kone v. D.C.,*
    808 F. Supp. 2d 80 (D.D.C. 2011) .......................................................................... 13, 16

*Kursar v. TSA,*
    581 F. Supp. 2d 7 (D.D.C. 2008), *aff'd,* 442 F. App'x 565 (D.C. Cir. 2011) ......................20

* *Laningham v. United States Navy,*
    813 F.2d 1236 (D.C. Cir. 1987) .....................................................................................19

* *Lee v. Geren,*
    480 F. Supp. 2d 198 (D.D.C. 2007) ...............................................................................18

* *Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)........................................................................................................1

* *Manning v. Esper,* No. CV 12-1802 (CKK),
    2019 WL 281278 (D.D.C. 2019), *appeal dismissed,* No. 19-5078, 2019 WL 4745367 (D.C. Cir. June
    25, 2019) ................................................................................................................ 13, 14

* *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
    567 U.S. 209 (2012)..............................................................................................21, 22, 23

* *McCready v. Nicholson,*
    465 F.3d 1 (D.C. Cir. 2006) ...........................................................................................18

*Meghrig v. KFC Western,* Inc.,
    516 U.S. 479 (1996)........................................................................................................21

*Middlebrooks v. Godwin Corp.,*
    722 F. Supp. 2d 82 (D.D.C. 2010) ...................................................................................9

*Mosrie v. Barry,*
    718 F.2d 1151 (D.C. Cir. 1983) .....................................................................................12

* *O'Donnell v. Barry,*
    148 F.3d 1126 (D.C.Cir. 1998) ......................................................................................11

*Parks v. IRS,*
    618 F.2d 677 (10th Cir. 1980)...............................................................................20

*Paul v. Davis,*
    424 U.S. 693 (1976)..............................................................................................11

*Perkins v. Vance-Cooks,*
    886 F. Supp. 2d 22 (D.D.C. 2012)........................................................................9

* *Renal Physicians Ass'n v. HHS,*
    489 F.3d 1267 (D.C. Cir. 2007)............................................................................5

*Risley v. Hawk,*
    108 F.3d 1396 (D.C. Cir. 1997)..........................................................................20

* *Rosenblatt v. Fenty,*
    734 F. Supp. 2d 21 (D.D.C. 2010)................................................................13, 16

*Siegert v. Gilley,*
    500 U.S. 226 (1991)..............................................................................................11

*Simon v. Eastern Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976)..................................................................................................2

*Smith v. Nixon,*
    807 F.2d 197 (D.C. Cir. 1986)............................................................................22

*Sussman v. U.S. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007)..........................................................................20

*Taylor v. Resolution Trust Corp.,*
    56 F.3d 1497 (D.C. Cir. 1995)............................................................................12

*Transamerica Mortg. Advisors, Inc. v. Lewis,*
    444 U.S. 11 (1979)................................................................................................21

*Treiber v. Aspen Dental Mgmt.,* Inc.,
    94 F.Supp.3d 352 (N.D.N.Y. 2015)......................................................................5

* *Trudeau v. Federal Trade Comm'n,*
    456 F.3d 178 (D.C. Cir. 2006)............................................................................15

*Welborn v. Internal Revenue Serv.,*
    218 F. Supp. 3d 64 (D.D.C. 2016)........................................................................5

*Wilkie v. Robbins,*
  551 U.S. 537 (2007)................................................................................................................10

**Statutes**

5 U.S.C. § 552a ................................................................................................................*passim*

5 U.S.C. § 701(a)(2)................................................................................................................15

5 U.S.C. § 702 ........................................................................................................................21

28 U.S.C. § 2680(h)................................................................................................................10

**Regulations**
28 C.F.R. § 600.9(C) ........................................................................................................ 14, 15

**Other Authorities**

Fed. Prac. & Proc. Civ. § 2751................................................................................................16

## INTRODUCTION

Rtskhiladze devotes his opposition brief and lengthy declaration to enumerating a litany of grievances, very few of which are meaningfully tethered to the matter at issue in this action: Footnote 112 in the Mueller Report. These grievances begin with negative media attention from a 2017 *New Yorker* article, continue on to express his annoyance at the inconvenience and expense of providing testimony in the Special Counsel's investigation, and culminate with his recently frayed business and civic relationships. Like the First Amended Complaint, Rtskhiladze fails in opposition to establish that Footnote 112 caused any harms that might be redressable through judicial intervention. And Rtskhiladze's inconsistent requests for equitable relief, if indulged, could not compel his business associates or the Georgian government to redress his alleged injuries. The Court should dismiss Rtskhiladze's claims for lack of jurisdiction because of the deficiencies in these two essential elements of standing – causation and redressability.

Even if Rtskhiladze had established his standing, he still failed to state a claim against defendant Department of Justice ("DOJ") under the Administrative Procedure Act ("APA"), the Declaratory Judgment Act ("DJA"), or the Privacy Act. Rtskhiladze's opposition departs from his First Amended Complaint by attempting to provide new bases for his causes of action, by adding a due process claim, and by sewing confusion regarding his requested equitable remedies. The Court should reject Rtskhiladze's improper attempt to amend his complaint through briefing. In any event, each of these arguments still fails to rescue his warrantless claim against DOJ.

For the foregoing reasons, and the reasons in DOJ's Memorandum in Support of its Motion to Dismiss ("Def.'s Br."), ECF No. 20, the Court should grant DOJ's motion to dismiss Rtskhiladze's claims against it for lack of standing and for failure to state a claim.

## ARGUMENT

**I.      Rtskhiladze Failed to Establish That He Has Standing.**

Rtskhiladze failed to meet his burden to allege two of the three essential elements of "irreducible constitutional minimum of standing" – causation and redressability. *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560 (1992). Both causation and redressability analysis "focus on principles of causation: fair traceability turns on the causal nexus between the agency action and the asserted injury, while redressability centers on the causal connection between the asserted injury and judicial relief." *See Freedom Republicans. Inc. v. Federal Election Comm'n*, 13 F.3d 412, 418 (D.C. Cir. 1994) (citing *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). "Causation remains inherently historical; redressability quintessentially predictive." *See id.* Rtskhiladze faces a "substantially more difficult" burden, because he alleges that DOJ caused third parties to make discretionary choices injuring him and that the requested relief would compel the third parties to redress those injuries. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 44-45 (1976). In opposition to DOJ's motion to dismiss, Rtskhiladze submitted a declaration to support his standing "to the extent" that "the allegations [in the Amended Complaint] are insufficient to support jurisdiction." Pl.'s Resp. in Opp. to Def.'s DOJ's Mot. to Dismiss ("Pl.'s Opp.") at 23, ECF No. 22; *see* Declaration of Plaintiff Giorgi Rtskhiladze ("Rtskhiladze Decl."), ECF No. 22.1. Neither Rtskhiladze's opposition nor his declaration cures the defects in the First Amended Complaint ("FAC"), ECF No. 19.1.

### A. Rtskhiladze Failed to Allege that His Injuries Are Causally Connected to the Any Inaccuracies in Footnote 112 or Its Publication.

Rtskhiladze attempts to connect the publication of Footnote 112, containing two alleged inaccuracies, to a host of third party decisions to exclude Rtskhiladze from their business transactions and civic events. Among other things, Rtskhiladze directs the Court to five specific financial losses that he claims were caused by DOJ's publication of Footnote 112. *See* Pl.'s Opp. at 25. This effort to cure the deficiencies in the operative pleading fails to show that any of these five business transactions fell apart because of Footnote 112. *See* Def.'s Br. at 7-9.

Rtskhiladze first suggests that a "$50 million" business transaction with the Silk Road Group to construct a Radisson Brand hotel in Georgia was cancelled because of Footnote 112. *See* Pl.'s Opp. at 25. As an initial matter, Rtskhiladze's declaration diverges from description in the FAC about this transaction. In the FAC, Rtskhiladze claims this project failed because OPIC withdrew its $10 million loan, *before* the Mueller Report was published. FAC ¶¶ 58-59. Now, in his declaration,

2

Rtskhiladze appears to suggest that the project is continuing without his involvement. *See* Rtskhiladze Decl. ¶¶ 17-18. But the Court need not resolve this discrepancy, because Rtskhiladze admitted that this project has been mired in controversy since a negative article about the Silk Road Group and Rtskhiladze was published in a 2017 issue of the *New Yorker*. FAC ¶¶ 53-58. Rtskhiladze asks the Court to accept, on his say-so, that the Silk Road Group's lobbying efforts successfully overcame the lengthy *New Yorker* article, while at the same time suggesting that he is unable to overcome damage caused by a brief footnote that he claims is demonstrably false. *See* Rtskhiladze Decl. ¶ 28. Rtskhiladze has failed to show that it was Footnote 112, not the *New Yorker* article, which caused any public controversy contributing to the end of this project, particularly because the loan was lost prior to the publication of the Mueller Report. *See* Def.'s Br. at 7.

Next, Rtskhiladze points to three more failed business relationships that he alleges were "caused" by Footnote 112: a lost membership in "an advisory group" for a mobile telecommunications company, "forced exile" from a Euro bond transaction, and the end to an affiliation with a "large financial institution." Pl.'s Opp. at 25. Rtskhiladze's reliance on each of these alleged injuries falters for multiple reasons.

Rtskhiladze "cannot manufacture standing merely by inflicting harm on [himself]." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). Rtskhiladze describes his departure from the telecommunications venture and Euro bond transaction as subjective, voluntary decisions made in consultation with his business associates. *See* Rtskhiladze Decl. ¶ 23 ("agree[ing]" to remove himself from a project), ¶ 29 ("we agreed" that Rtskhiladze would "pull out of all our business ventures"); *see also* Pls. Opp. 20, 27 (explaining Rtskhiladze "withdrew" and "abandoned" transactions or that the transactions continued "without his participation."); Def's Mot at 7-8.

Rtskhiladze argues that the Court could infer that these disassociations were caused by the publication of Footnote 112 because they occurred "contemporaneous[ly] with the release of the Footnote." Pl.'s Opp. at 25. In this case, the temporal relationship alone cannot plausibly establish causation. Footnote 112 was released as part of the Mueller Report. And Rtskhiladze (and the Silk

Road Group) appear in other portions of the Mueller Report that are not challenged in this suit. *See* Def.'s Br. at 8 (citing Mueller Report, Vol. I at ii, 69-70, n.313-18; Vol II at 27-28, n.112, 945, B-9). Also, shortly after the Mueller Report was published, the Senate Select Committee on Intelligence also published a report which contained a similar description of Rtskhiladze's text message discussion of the "sensitive tapes." *See id.* (citing SSCI Report at 659-660). Rtskhiladze does not demonstrate why Footnote 112, and not the Mueller Report generally or the SSCI Report (or the *New Yorker* article), caused any third party decisions to disassociate themselves.

Lastly, Rtskhiladze relies on just the timing of his fifth alleged business injury, the end of his advisory role with the Georgia Oil and Gas Corporation ("GOGC"), to establish causation. *See* Pl.'s Opp. 25; Rtskhiladze Decl. ¶ 20. Rtskhiladze explains the relationship only began one year earlier, in 2018, and was to be annually renewed. *See* Rtskhiladze Decl. ¶ 20. That the end of the first year came in April 2019 could easily be a mere coincidence in the timing of the annual renewal. GOGC may have had any number of reasons to decline to renew the newly formed relationship – reasons that Rtskhiladze's recitation of facts fails to meaningfully explore, apart from timing alone.

While describing the decisions of his business associates, Rtskhiladze makes frequent use of the verb "forced," *see e.g.*, Pl.'s Opp. 20, 34. But despite invoking the term "forced" in argument, Rtskhiladze describes little more than his business associates' discretionary choice to "distance themselves" in the face of negative publicity. Rtskhiladze Decl. ¶ 29; *see* Pl.'s Op. at 33-34. Such discretionary choices of third parties are insufficient to establish that DOJ caused his alleged injuries.

### B.  Rtskhiladze Failed to Establish His Injuries are Redressable by Equitable Relief.

Rtskhiladze also failed to establish that his alleged injuries are redressable by the equitable relief that he seeks.[1] As an initial matter, Rtskhiladze waffles about the nature of his request for equitable relief. In his FAC, which controls, Rtskhiladze's prayer for relief requests that the Court

---

[1] As explained further below, Rtskhiladze's only claim for money damages against DOJ is his Accuracy Claim under the Privacy Act. With respect to that claim, he still failed to establish causation and has failed to state a claim.

(1) order DOJ to "delete all references to plaintiff in Footnote 112," and (2) declare the footnote was inaccurate and defamatory. FAC at 29. In opposition briefing, Rtskhiladze now requests that the Court (1) order DOJ to "redact references to plaintiff in Footnote 112," Pl.'s Opp. at 14, (2) order DOJ to "either to delete all references to plaintiff in Footnote 112 or modify it," Pl.'s Opp. at 29, and (3) declare that "the Attorney General and Special Counsel violated [his] liberty interest," the APA, or the Privacy Act, Pl.'s Opp. at 27 n.9, 28-29, 40. But even with this improperly expanded request for equitable relief, Rtskhiladze still fails to establish that his injuries are prospectively redressable with equitable relief, because, among other deficiencies, he is reliant on discretionary decisions of third parties.

   1. *Rtskhiladze's Declaration Fails to Establish That It is Probable that His Business Associates and the Georgian Government Will Resume Their Relationship With Him*.

   Rtskhiladze suggests that if he secures a "DOJ retraction" that he will be able to "proceed forward" to with the process of being granted the title of Honorary Consul from the Georgian government and that his business associates will restore their relationship with him. Pl.'s Opp. at 28. However, Rtskhiladze's declaration, based on hearsay, does not credibly establish that there is a substantial likelihood of this outcome. *See Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1275 (D.C. Cir. 2007).

   As an initial matter, it is questionable whether the Court should rely on hearsay in a declaration to find that it has subject matter jurisdiction. *See Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 79-80 (D.D.C. 2016) (when considering a motion to dismiss for lack of subject matter jurisdiction, a court cannot "'rely on conclusory or hearsay statements contained in the affidavits.'") (quoting *Treiber v. Aspen Dental Mgmt.*, Inc., 94 F.Supp.3d 352, 361 (N.D.N.Y. 2015)); *Cause of Action Inst. v. Tillerson*, 285 F. Supp. 3d 201, 208 n.6 (D.D.C. 2018) (observing that "[a] review of pertinent case law suggests that admissibility—and a focus on reliability—should guide me in assessing whether to rely on [hearsay] evidence outside of the pleadings," and noting that "the D.C. Circuit

has yet to embrace" the Second Circuit precedent cited in *Welborn* "that a court cannot rely on hearsay in considering a motion to dismiss.").

Even if the Court credits Rtskhiladze's hearsay-based testimony, it does not reliably establish redressability. With respect to his business affiliations, Rtskhiladze relays that he had a "candid conversation" with Kairat Kelimbetov, a Kazakh government official, who expressed "deep concerns" about Footnote 112. Rtskhiladze Decl. ¶¶ 21, 29. Rtskhiladze explained the Mr. Kelimbetov "hoped" they could resume collaboration if he could rectify the situation with his "public image." *Id.* ¶ 21. Rtskhiladze's future relationship with the Silk Road Group is even more nebulous. The current chair of the Silk Road Group, a "good friend," supposedly told Rstkhiladze there was "no way forward" to resume a relationship until he cleared his name. *Id.* ¶ 29. Neither of these platitudes included an express or unequivocal commitment to restore a normal business relationship if Rtskhiladze receives a judicial remedy. Problematically, Rtskhiladze admits many of his business associates have been "silent" regarding the reasons to sever their relationships – their reasons could be plausibly be related to the Mueller Report as a whole or entirely unrelated business hurdles that would not be resolved by a remedy addressing Footnote 112. *Id.* ¶ 27. It is nothing but speculation on Rtskhiladze's part that his former business associates are likely to invite him to participate in future transactions if he succeeds in Court.

The alleged injuries to Rtskhiladze's civic relationships contain the same redressability problems. Rtskhiladze's declaration describes a "short and blunt" conversation with the Chief of Staff to the Prime Minister of Georgia. *Id.* ¶ 19. The Chief of Staff explained that "it was very important to see the Attorney General's response and even more important that I obtain a retraction." *Id.* Nothing about this testimony establishes that the Georgian Embassy has taken the official position that it will likely offer him Honorary Consul title if he obtains judicial relief (or even suggests that the Chief of Staff was conveying the official position of the Georgian government rather than offering his personal advice). Rtskhiladze admits that he already considers it "*the end* of

this once in a lifetime opportunity," acknowledging that it is unlikely that he will be offered this honor again. *Id.* (emphasis added)

### 2. Rtskhiladze's Suggestions of Additional Equitable Relief Also Fail to Redress His Injuries.

The redressability problem is more pronounced when the new forms of relief that Rtskhiladze seeks are considered. Despite his assertion that Footnote 112 is "pure fantasy," Rtskhiladze admits the footnote is accurate except for three issues: (1) it describes him as Russian instead of Georgian, (2) it misquotes his text message as referring to "tapes" rather than "some tapes," and (3) it does not include a follow on text message that says he is "not sure" of the contents of the tape and that he gained his information from a "person bragging in Moscow." *See* Pl.'s Opp. 12 n.7, 15-18, 25-26. Rtskhiladze also complains that Footnote 112 states that "he has said 'tapes' referred to compromising tapes of Trump rumored to be held by persons associated with the Russian real estate conglomerate Crocus Group, which helped host the 2013 Miss Universe Pageant in Russia." *See* Pl.'s Opp. at 26. Notably, Rtskhiladze never suggests this last statement, based on his sworn testimony, is false or inaccurate, and therefore it cannot be the basis for his injury or remedy.

Rtskhiladze implausibly suggests that a declaration about the footnote's inaccuracy or injunction requiring a correction of the footnote will correct his reputational harm. But even if the footnote contained these three revisions, it is not plausible that it will alter the reaction of his business associates or the Georgian government, because it would not meaningfully change the meaning of the footnote.

Rtskhiladze argues that the description that he is Russian instead of Georgian implies he is involved with "nefarious" dealings involving Russian oligarchs. Pl.'s Opp. at 1. But Rtskhiladze cannot demonstrate how the Georgian government (or his long standing business and civic associates) would be misled into believing that Rtskhiladze is Russian by Footnote 112. *See* Def.'s Br. 8-9.

Likewise, Rtskhiladze claims that if the text message correctly read "some tapes," rather than "tapes" it would demonstrate that he lacked familiarity with the contents of those tapes. *See* Pl.'s

Opp. at 15-16. The word "some" does nothing to suggest lack of familiarity, but rather only references the quantity of tapes (i.e. some tapes, rather than [*all*] tapes).[2] It is unlikely this correction will alter any impressions created about whether he was familiar with the contents of the tapes. Nor will publishing the follow on text "not sure of the content but person in Moscow was bragging had tapes from the Russia trip" cure that problem. Even with the suggested corrections, the reader would still conclude that Rtskhiladze had at least some knowledge that the tapes had controversial content because he was texting the Trump campaign to let them know the flow of any such tapes was "stopped." Merely correcting the contents of the footnote as Rtskhiladze suggests would likely not redress his reputational harms stemming from public knowledge that he was coordinating with the Trump campaign to prevent the release of potentially controversial tapes. Nor would it undo existing media reporting.

Lastly, Rtskhiladze's new, unpleaded request for a declaration that "the Attorney General's release of Footnote 112 unredacted violated plaintiff's liberty interest" does nothing to redress any of his alleged injuries. Pl.'s Opp. at 40. The proposed declaration does not erase Footnote 112 from the public domain nor does it resolve his associates' concerns regarding the *contents* of the footnote. An after-the-fact admission that that the footnote should have been kept from the public disclosure will do nothing to resolve Rtskhiladze's alleged injuries or restore his business or civic relationships. *Accord* Pl.'s Opp. at 14 ("the bell cannot be un-rung").

In sum, because Rtskhiladze failed to establish DOJ caused his alleged injuries or that his injuries are redressable by equitable relief, he lacks standing to bring his suit.

---

[2] Rtskhiladze calls the use of the expression "some tapes" rather than "tapes" as "awkward slang" which could be "cryptic, garbled, or sloppy" because English is not his first language. Pls. Opp. at 17. Neither construction of the text message with "some tapes" or "tapes" appears to be particularly cryptic or difficult to read.

**II.      Rtskhiladze Did Not Plead a Due Process Cause of Action Against DOJ, Nor Could He (Count I).**

The Court should reject Rtskhiladze's attempt, through his opposition briefing, to allege a new cause of action against DOJ for a denial of due process under a reputation-plus theory. *See* Pl.'s Opp. at 6, 27, 39. Even if Rtskhiladze had attempted to bring a cause of action against DOJ under this theory, it too should be dismissed for failure to state a claim.

**A.      Rtskhiladze Cannot Amend His Complaint Through Argument.**

Rtskhiladze's FAC lacked a due process cause of action against DOJ. "It is settled law in this circuit that a plaintiff may not raise new allegations [in a motion-to-dismiss opposition]." *Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22, 29 n.5 (D.D.C. 2012); *see, e.g.*, *Coll. Sports Council v. GAO*, 421 F. Supp. 2d 59, 71 n.16 (D.D.C.2006) ("[T]he Court does not, and cannot, consider claims first raised in the plaintiff's opposition."); *Middlebrooks v. Godwin Corp.,* 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010) ("[P]laintiff may not amend her complaint by the briefs in opposition to a motion to dismiss.").

Rtskhiladze's FAC brings four causes of action. *See* FAC ¶¶ 69-72 (Count I); 73-74 (Count II), 75-76 (Count III), 77-79 (Count IV). Count I is his due process claim. *See* FAC at 5 ("Count I asserts a defamation-plus claim under the Fifth Amendment."), ¶¶ 69-72. The FAC states, in its very first paragraph: "Count I asserts against *Mr. Mueller* a claim for violation of procedural guarantees in the Due Process Clause of the Fifth Amendment to the Constitution of the United States." FAC ¶ 1 (emphasis added). This was not a scrivener's error; Rtskhiladze added this clarifying sentence when he amended his original complaint. *See* Redlined Amendments to Original Complaint ¶ 1, ECF No. 19.2. In comparison, the FAC's descriptions of Count II, III, and IV lack a similar limiting statement. *See* FAC ¶ 1. Rtskhiladze cites only four paragraphs of the FAC to demonstrate that he alleged Count I against the DOJ. *See* Pl.'s Opp. at 27 (citing FAC ¶¶ 50-52, 60), 39 (failing to cite any portion of the FAC). None of these paragraphs implicates DOJ as the cause of the alleged defamation.

The FAC contains additional confirming cues that Count I is not plausibly brought against DOJ. Rtskhiladze seeks only compensatory and exemplary damages as relief for Count I. *See* FAC

¶ 29 (Prayer for Relief); Pl.'s Opp at 29 (confirming he seeks an award of damages); *see also* Pl.'s Opp. to Def. Mueller's Mot. to Dismiss at 2 ("Pl.'s Opp. to Mueller"), ECF No. 25 (describing Count I as a "damages claim" against DOJ). Rtskhiladze does not argue that there is a waiver of sovereign immunity to seek money damages from the DOJ for a constitutional violation.  Nor could he. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable . . . for constitutional tort claims."); *Ermit v. FBI*, 811 F. App'x 4, 5 (D.C. Cir. 2020) ("To the extent appellant sought to raise constitutional tort claims [against FBI], those are barred by sovereign immunity.").

Perhaps in acknowledgement of this critical pleading infirmity, Rtskhiladze pivots to arguing that he has actually brought a free-standing claim seeking equitable relief for "the violation of [his] constitutional rights." *See* Pl.'s Opp. at 40. Rtskhiladze asks the Court to resolve this alleged constitutional violation by declaring that the Attorney General or Mr. Mueller should have redacted Footnote 112. *Id.* But Rtskhiladze's invocation of a concurring opinion in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* in support of this new allegation does not revive this cause of action against the DOJ. *See* Pl.'s Opp. at 40 (citing 403 U.S. 388 (1971) (Harlan, J. concurring)). In *Bivens*, "the Supreme Court determined that under appropriate circumstances the federal courts possess the discretion to create remedial actions against *federal officials* for violations of constitutional rights, even though Congress has not expressly authorized those specific remedies by statute." *Davis v. Billington*, 681 F.3d 377, 380-81 (D.C. Cir. 2012) (emphasis added). The Supreme Court has repeatedly held that *Bivens* does not create a cause of action against federal *agencies. See Meyer*, 510 U.S. at 486 ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."); *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) ("We have seen no case for extending *Bivens* to claims against federal agencies."). By referencing *Bivens* as the basis for his due process cause of action, Rtskhiladze admits that the proper reading of this cause of action is one brought against *federal officials*, such as defendant Mueller, and not a federal agency such as DOJ.

**B. Even if Rtskhiladze Attempted to Plead a Due Process Cause of Action Against DOJ, He Failed to State a Claim.**

Because Rtskhiladze failed to assert a cause of action for a reputation-plus claim against DOJ in his FAC, the Court's inquiry need go no further. But even if Rtskhiladze had attempted to bring a due process claim under either a reputation-plus or stigma-plus theory against the DOJ, it would have been futile.[3] Rtskhiladze must assert "a right or status previously recognized by state law [or the Constitution that] was distinctly altered or extinguished" to bring a claim under these theories. *Paul v. Davis*, 424 U.S. 693, 711 (1976). An "injury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause]." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *see also Gen. Elec. Co., v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010) (observing that "stigma alone is insufficient to invoke due process protections").

Rtskhiladze attempts to repackage the alleged reputational impact of Footnote 112 into an injury to his liberty interest in continuing in his "chosen career" as an "international businessman." *See* Pl.'s Opp. at 15. To establish this interest has been harmed, Rtskhiladze "must suffer a binding disqualification from work or broad preclusion from his or her chosen field." *Abdelfattah v. DHS*, 787 F.3d 524, 539 (D.C. Cir. 2015). Rtskhiladze does not – nor could he – assert that Footnote 112 created a binding disqualification from his participation in international business transactions; thus he must demonstrate that there is a "broad preclusion" barring him from his chosen career. *Accord* Pl.'s Opp. at 39.

---

[3] Though the FAC describes Count I as a "defamation-plus" claim, *see* FAC at 5, Rtskhiladze's opposition describes this as a "reputation-plus" claim against DOJ. *See* Pl.'s Opp. 27, 29. A reputation-plus claim typically arises in a case in which the plaintiff points to "the conjunction of official defamation and adverse employment action." *O'Donnell v. Barry,* 148 F.3d 1126, 1139-40 (D.C. Cir. 1998). A "stigma-plus" claim generally "turns on the combination of an adverse employment action and a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities." *Id.* at 1140 (citation omitted). Rtskhiladze appears to be asserting a liberty interest in his ability to continue his "chosen career, to the extent that "business transactions" can be described as "employment opportunities." Though DOJ maintains that this cause of action is not properly raised against DOJ at all, out of an abundance of caution, DOJ briefly addresses both reputation-plus and stigma-plus theories here.

The D.C. Circuit has explained that the standard to demonstrate that a plaintiff is broadly precluded from his chosen career is a "high" one. *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506-07 (D.C. Cir. 1995). Rtskhiladze's allegations of frayed business partnerships fall short of this high hurdle. The D.C. Circuit has already held that lost "business interests . . . cannot qualify as a deprivation of liberty because it does not amount to a change in legal status." *Mosrie v. Barry*, c, 1162 (D.C. Cir. 1983). The D.C. Circuit explained that "[t]he reaction of others to unfavorable publicity about a person" is not a "change in legal status imposed by the government officials who generated the publicity" but instead constitutes "sanctions applied by public disapproval, not by law." *Id.* Rtskhiladze is suffering this precise circumstance: His business partners, the Georgian government, and civic organizations allegedly suspended their relationships with him because of disapproving media attention. *See* Pl.'s Opp. at 13-14. Thus, the Court should reject Rtskhiladze's failed effort to repackage the loss of his "business interests" as a loss of his chosen career of "international businessman" in order to bring a due process claim against the DOJ.

Further, Defendant Mueller's motion to dismiss explains additional reasons why Rtskhiladze failed to state a claim under either a reputation-plus or a stigma-plus theory. *See* Def. Mueller's Mot. to Dismiss at 20-24 ("Def. Mueller's Br."), ECF No. 21. DOJ incorporates those arguments here to avoid redundant briefing. And Rtskhiladze failed to respond to any of those arguments. *See* Def. Mueller's Reply Br. (filed contemporaneously with this brief).

In sum, the Court should reject Rtskhiladze's attempt to amend his complaint through argument and assert a due process claim against the DOJ for money damages. Any such cause of action would be futile because Rtskhiladze has failed to state a claim for either a reputation-plus or stigma-plus cause of action.

## III.   Rtskhiladze Failed to State a Claim Under the APA (Count II).

Rather than respond to Defendant's arguments that the Mueller Report is not a final agency action and thus not subject to APA review, *see* Def.'s Br. at 10-16, Rtskhiladze moves the goal posts. Rtskhiladze now claims that he is not challenging the Mueller Report as a final agency action, but

instead challenges the Attorney General's "failure to redact" the text of Footnote 112. *See* Pl.'s Opp. at 36-38. This shift in position fails for three reasons.

*First*, the Court should reject Rtskhiladze's attempt to shift to challenging a different agency action under the APA. The FAC makes clear that the APA cause of action is a "name clearing" one, based on the allegation that the text of Footnote 112 was inaccurate and "defamatory." FAC ¶¶ 73-74. Rtskhiladze's alleged injuries center on his purported loss of reputation because the footnote allegedly portrays him as participating in "nefarious activities." Pls. Opp. 1-2. This confirms that Rtskhiladze is challenging the contents of Mueller Report itself. Thus, for relief, Rtskhiladze requests an injunction *change* the Mueller Report by "*delet[ing]* all references to plaintiff in Footnote 112." FAC at 29 (emphasis added). The FAC nowhere suggests that Rtskhiladze brought suit to compel the DOJ to change its position on *redactions* in the Mueller Report. As explained, such a suit would pose redressability issues, because the Mueller Report has already been released without redaction to Footnote 112.

Because Rtskhiladze's injuries allegedly flow from the text of the Mueller Report and the requested relief is to change the Mueller Report by deleting references to Rtskhiladze, the Mueller Report must be the agency action that Rtskhiladze challenges. And the Mueller Report is *not* a final agency action and not subject to APA review. *See* Def.'s Br. at 10-15. Rtskhiladze does not dispute this conclusion. *See generally* Pl.'s Opp. at 36-38. Thus, Rtskhiladze concedes that the Mueller Report is not a final agency action. *See e.g. Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded[.]"); *Kone v. D.C.*, 808 F. Supp. 2d 80, 83 (D.D.C. 2011) (same); *see also Manning v. Esper*, No. CV 12-1802 (CKK), 2019 WL 281278, at *6 (D.D.C. 2019), *appeal dismissed*, No. 19-5078, 2019 WL 4745367 (D.C. Cir. June 25, 2019) ("Grounds for concession may be stronger where Plaintiffs did file an opposition, but that brief did not address many of Federal Defendants' arguments.").

*Second*, even if the Court considers Rtskhiladze's reinvention of his APA claim as a challenge to DOJ's decision to publish Footnote 112 without redaction, that claim also fails. Any redaction

decisions are also not a "final agency action" subject to APA review for the same reasons that the Mueller Report is not a final agency action. Rtskhiladze's argues that this challenge is based on the Attorney General's decision, under 28 C.F.R. § 600.9(C), "to determine that public release of [the] reports would be in the public interest." *See* Pl.'s Opp. at 37. But, as DOJ already explained, the Mueller Report does not create any right or obligations for anyone, let alone Rtskhiladze himself. *See* Def.'s Br. at 11-14. Courts in multiple circuits have repeatedly held that reports are not final agency actions that create legal consequences. *Id.* (collecting authorities). If reports do not create legal consequences, by extension, releasing the report could not confer any new rights or obligations for anyone. Thus, the decision to release the Mueller Report, without redaction of Footnote 112, cannot be a final agency action and is not subject to APA review.

Rtskhiladze cites a single non-binding Maryland district court decision in support of his argument that releasing a report can be a final agency action reviewable under the APA, distinct from the report itself. *See* Pl.'s Opp. 38 (citing *Doe v. Tenenbaum*, 127 F. Supp.3d 426, 460 (D. Md. 2012)). In *Tenenbaum*, the publication of the report was the culmination of an "informal agency adjudication," in which the Consumer Products Safety Commission completed a regulatory process to determine if it should publish the report if it contains material inaccuracies and whether those accuracies should be corrected. 127 F. Supp. 3d at 459. As part of that "adversarial" process, prescribed by regulation and statute, the plaintiff had the opportunity to contest material inaccuracies. *Id.* at 60. The *Tenenbaum* court itself explained that this case was distinguishable from other non-reviewable agency reports, because the publication decision was the culmination of an "adversarial process involving the submission of evidence and a legal determination" and "adjudicatory procedures governing the submission of material inaccuracy claims." *Id.* at 463-64. To the extent *Tenenbaum* is persuasive at all, *see* Def.'s Br. 11-12 (collecting cases), there is no similar regulatory or statutory scheme defining an adjudicatory process for publication of a Special Counsel's report. The public comments of the Attorney General about redactions cited by Rtskhiladze, *see* Pl.'s Opp. at 37, do not offer a meaningful substitute to an adjudicatory procedure

like that described in the *Tenenbaum* case. Without an adjudicatory process like the one in *Tenenbaum* to resolve inaccuracies, "numerous courts have rejected classifying defamatory statements as" final agency action subject to APA review. *See El-Shifa Pharm. Indus. Co. v. United States*, No. CIV.A.01 731 RWR, 2007 WL 950082, at *1 (D.D.C. Mar. 28, 2007) (citing *Hearst Radio v. F.C.C.*, 167 F.2d 225, 227 (D.C. Cir. 1948); *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 189 (D.C. Cir. 2006)). The Court should reject Plaintiff's contention that publishing the Mueller Report without redacting Footnote 112 was a final agency action.

*Third*, even if the decision to publish the report without redacting Footnote 112 was a final agency action, like the Mueller Report itself, it would surely fall into the APA's exception for decisions committed to agency discretion by law. 5 U.S.C. § 701(a)(2). Though there is no law governing the publication of Special Counsel reports, the regulation grants discretion to the Attorney General to determine if it is the "public interest" to release any such report. 28 C.F.R. § 600.9(C). Thus, for this reason, this decision is also exempt from APA review as committed to the discretion of the Attorney General. In any event, there is no question that there was substantial public interest in disclosure of the Mueller Report, making the Attorney General's publication decision entirely reasonable. *See* Def.'s Br. 23-24 (discussing Freedom of Information Act requests for the Mueller Report and the applicability of privacy exceptions).

## IV.   Rtskhiladze Failed to State a Claim Under the Declaratory Judgement Act (Count II).

Rtskhiladze speciously suggests that DOJ failed to address his claim under the DJA. *See* Pl.'s Opp. at 6, 40. Rtskhiladze is wrong. *See* Def.'s Br. at 15-16. Though Rtskhiladze is correct that the DJA can provide a remedy in some circumstances, none of those circumstances exists in this case. First, there is no underlying cause of action under the APA or the Privacy Act, and the DJA does not provide a standalone cause of action. *See Comm. On the Judiciary of United States House of Representatives v. McGahn*, No. 19-5331, 2020 WL 5104869, at *2 (D.C. Cir. Aug. 31, 2020); *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). And, as already explained, Rtskhiladze's attempt to insert a new due process claim against the DOJ should be rejected, and thus does not provide any

basis for declaratory relief nor would declaratory relief redress his injuries. Second, Rtskhiladze is not the type of defendant who is attempting to avoid the threat of impending litigation from the DOJ that might need the remedy of a declaration to avoid suit. *See* Purpose of Declaratory Judgments, 10B Fed. Prac. & Proc. Civ. § 2751 (4th ed.). Thus, Rtskhiladze cannot sustain a standalone claim under the DJA.

## V.     Rtskhiladze Failed to State a Claim Under the Privacy Act (Counts III and IV).

Rtskhiladze alleges two causes of action under three provisions of the Privacy Act. *See* FAC 75-79 (citing 5 U.S.C. §§ 552a(g)(1)(A), (C)-(D)). The Court should dismiss these causes of action for failure to state a claim.

As an initial matter, Rtskhiladze fails to respond to DOJ's argument that he failed to state an Amendment Claim under § 552a(g)(1)(A), or a Disclosure Claim under § 552a(g)(1)(D). [4] *See generally* Pls. Opp. 21, 25-26, 39-35. Rtskhiladze's Amendment and Disclosure Claims both fail because the Mueller Report is not contained in a system of records; and his Disclosure Claim for money damages also fails because Rtskhiladze failed to establish he suffered "adverse effects" caused by Footnote 112, because the Mueller Report is exempt from the prohibition on disclosure, and because Rtskhiladze cannot establish the disclosure was an intentional or willful violation. *See* Def.'s Br. at 16-19, 22-24. Because Rtskhiladze has not responded to DOJ's arguments that he failed to state a claim under these two provisions of the Privacy Act, the court should treat that that as a concession and dismiss his Amendment and Disclosure Claims. *See e.g. Rosenblatt*, 734 F. Supp. 2d at 22; *Kone*, 808 F. Supp. 2d at 83.

Rtskhiladze's remaining Accuracy Claim under 5 U.S.C. § 552a(g)(1)(C) still suffers from two fatal flaws: Rtskhiladze has not suffered the requisite adverse determination required for an

---

[4] It is possible Rtskhiladze did not allege a Disclosure Claim at all. *See* Def.'s Br. at 22 (explaining that Rtskhiladze's pleading was deficient because he did not explain what portion of the Privacy Act he was attempting to capture by invoking the "catchall" provision in section 552a(g)(1)(D)).

Accuracy Claim and Rtskhiladze has not demonstrated any inaccuracy was intentional or willful, as required for money damages.[5] Even if the Court permits Rtskhiladze to continue to press his Accuracy Claim (which it should not), he is not entitled to equitable relief.

### A. Rtskhiladze Has Not Suffered An Adverse Determination

Despite Rtskhiladze's argument to the contrary, his alleged hampered ability to participate in business transactions and the end of his candidacy for an Honorary Consul title from the Georgian Embassy do not constitute the requisite "adverse determinations" to bring an Accuracy Claim under the Privacy Act.

*First*, Rtskhiladze admits that private third parties or the Georgian government made the alleged adverse determinations. *See* Pl.'s Opp. at 5 (The FAC "alleges numerous adverse determinations by third parties"). For his Accuracy Claim to survive, Rtskhiladze suggests that the Court reject precedent requiring that a federal agency make the requisite adverse determination in reliance of federal agency records. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009) ("Central to a cause of action under subsection (g)(1)(C) is the existence of an adverse *agency* determination" and requiring an "adverse determination by a *government agency*.") (emphasis added); *accord Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 36 (D.C. Cir. 1987) (the adverse determination is made by a government agency). The Court should not reject this binding precedent, and for this reason alone, Rtskhiladze's Accuracy Claim fails.

*Second*, Rtskhiladze suggests that a single unpublished district court decision, from 2011, which has never been adopted or even cited by another Court, permits him to allege an adverse determination by a private third party rather than a federal agency. *See* Pl.'s Opp. 32-33 (citing *Aki v. Sebelius*, No. 08-cv-461, 2011 WL 13273368 (D.D.C. Jan. 13, 2011)). In *Aki*, a private entity, the Georgetown Hospital, allegedly made a concrete adverse determination about the plaintiff – the

---

[5] Rtskhiladze describes this claim as invoking the "clarity provision" of the Privacy Act. *See, e.g.,* Pl.'s Opp. at 4, 5, 22. To avoid confusion, DOJ will continue to describe this as an "Accuracy Claim," consistent with the terminology it used in its opening brief to describe Rtskhiladze's claim under 5 U.S.C. § 552a(g)(1)(C). *See* Def.'s Br. at 16.

denial of hospital admitting privilege – in reliance of an alleged inaccuracy in a government record. The *Akl* court explained "because the Privacy Act limits this Court to the correction of factual or historical errors . . . it cannot pass judgment on the merits of the Hospital Center's decision to suspend and ultimately revoke the plaintiff's medical privileges." *Akl v. Sebelius*, 2012 WL 12905168, *4 (quoting *Kleiman v. Dept. of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992)). If this Court were to follow *Akl*, Rtskhiladze would have to show that his business associates or the Georgian government made adverse determinations due to *factual* errors in Footnote 112. And, as explained, it strains credibility that the Georgian government or his long-time business partners made their decisions based on a factual misunderstanding of Rtskhiladze's nationality, or because he texted about "some tapes" rather than "tapes," the only two alleged factual inaccuracies in Footnote 112. *See* Def.'s Br. at 9. Rtskhiladze admits the third parties made their decisions because of publicity, not because of their reliance on incorrect facts in Footnote 112. *See, e.g.*, Pl.'s Opp. at 28, 34. Thus, Rtskhiladze failed to show that he has suffered an adverse decision even under the *Akl* court's reasoning (which itself departs from the D.C. Circuit).

*Third*, Rtskhiladze failed to establish how the third parties made a "concrete, adverse determination," in reliance of an inaccurate agency record, which denied him "a right, benefit, entitlement, or employment." *Lee v. Geren*, 480 F. Supp. 2d 198, 210 (D.D.C. 2007) (citing *McCready v. Nicholson*, 465 F.3d 1, 12 (D.C. Cir. 2006)); *see, e.g.*, *Dick v. Holder*, 67 F. Supp. 3d 167, 185 (D.D.C. 2014) ("lost outside employment opportunities, being shunned by neighbors and peers, and having the [information] used as evidence at his divorce proceedings" are not adverse determinations); Def.'s Br. 19-20. Footnote 112 did not compel Rtskhiladze's business partners or the Georgian government to sever their relationships with him, nor was their relationship a right, benefit, entitlement, or even an employment relationship. These were discretionary choices, not the type of "concrete" adverse determinations compelled by inaccurate information, as required for an Accuracy Claim.

**B.   Rtskhiladze Failed to Allege Any Inaccuracy Was Intentional or Willful.**

The Court should also reject Rtskhiladze's baseless speculation that DOJ intentionally or willfully included any inaccuracies in Footnote 112.

The purpose of the Mueller Report was to explain to the Attorney General prosecution and declination decisions regarding the Special Counsel's investigation into Russian interference in the 2016 election. *See* Def.'s Br. at 2. Despite this uncontested purpose, Rtskhiladze conspiratorially suggests that Special Counsel team intentionally engineered Footnote 112 to create a "media storm" that they must have known would deprive Rtskhiladze of his chosen career. *See* Pl.'s Opp. 35-36. It strains credibility that the Special Counsel's team inserted two inaccuracies into a minor footnote buried in a lengthy report as a wanton or reckless attempt to deprive Rtskhiladze of his livelihood, particularly when the Report, by regulation, was drafted for the Attorney General, not for public dissemination. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (internal quotation marks omitted) (The conduct must be "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful."). It is far more plausible that if Footnote 112, which a small portion of a voluminous report, contained inaccuracies in two words ("Russian, rather than Georgian;" "tapes" rather than "some tapes"), at most, these inaccuracies it were the result of a simple mistake. *See* Def.'s Br. 21-22.

**C.   Rtskhiladze Is Not Entitled To Equitable Relief For His Accuracy Claim.**

Even if Rtskhiladze had stated an Accuracy Claim, he is not entitled to equitable relief under this portion of the Privacy Act. *See* Def.'s Br. at 17. Rtskhiladze's request for equitable relief for an Accuracy Claim, *see* Pl.'s Opp. at 30-31, is contrary to clear Supreme Court and D.C. Circuit precedent interpreting the Privacy Act's remedies provisions. Invoking the APA does not permit Rtskhiladze to circumvent this precedent.[6]

---

[6] Incongruously, Rtskhiladze attempts to bolster his argument by suggesting that if equitable relief is allowed in a defamation-plus case, it must also be allowed for an Accuracy Claim. *See* Pl.'s Opp. at 29 (citing *Doe v. DOJ*, 753 F.2d 1092, 1104 (D.C. Cir. 1985)). Though the *Doe* court held that a

### 1.   *Multiple Courts Have Held The Privacy Act Bars Equitable Relief For an Accuracy Claim.*

"The [Privacy] Act's subsection on civil remedies authorizes entry of injunctive relief in only two specific situations [amendment and to gain access to a record] . . . the Act precludes other forms of declaratory and injunctive relief." *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988) (citing § 552a(g)(2)(A), (g)(3)(A)). Rtskhiladze attempts to reason away the statutory limitation against equitable relief by arguing that just because amendment and access claims direct the court to "de novo" review, and Accuracy Claims do not, that does not mean that equitable relief is prohibited. *See* Pl.'s Opp. at 30-31. This tortured reasoning is meritless. The Privacy Act's civil remedy provisions are clear regarding the available remedies. For an amendment claim, "the court may order the agency to amend the individual's record," § 552a(g)(2)(A); and for an access claim, "the court may enjoin the agency from withholding the record and order the production," § 552a(g)(3)(A). Unlike the amendment and access remedy provisions, the remedy provision for an Accuracy Claim allows monetary relief and contains no allowance for equitable relief. *See* § 552a(g)(4).

The D.C. Circuit and other Circuits have repeatedly affirmed that equitable relief is not available for Accuracy Claims. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) (reaffirming the *Doe v. Stephens* holding); *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (injunctive relief is not available under [section 552a(g)(1)(C)])*; Doe v. Chao*, 435 F.3d 492, 505 (4th Cir. 2006) ("Simply put, [] the Privacy Act does not allow Doe to obtain injunctive relief under subsections (g)(1)(C)"); *Hanley v. DOJ*, 623 F.2d 1138, 1139 (6th Cir. 1980) (holding that "the injunctive relief sought by [the plaintiffs] is precluded under the Privacy Act by the failure of Congress to provide for such relief"); *Parks v. IRS*, 618 F.2d 677, 684 (10th Cir. 1980) (observing that because the Privacy Act expressly authorizes injunctive relief "in only two instances," then such

---

discharged DOJ employee was entitled to a name-clearing hearing, the decision was based on a purported Fifth Amendment violation (alleged against DOJ). *See Doe*, 753 F.2d at 1104. The *Doe* court did not consider the Privacy Act or the APA at all, and so it lends no support to this argument. As already explained, Rtskhiladze has not stated a claim for defamation-plus against DOJ.

relief is unavailable under the "relevant principle of construction . . . that where . . . the statute provides for certain special types of equitable relief but not others, it is not proper to imply a broad right of injunctive relief" (emphasis added)); *see, e.g.*, *Kursar v. TSA*, 581 F. Supp. 2d 7, 19 (D.D.C. 2008), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011) (holding that there is "no possibility" that the court can grant equitable relief for an Accuracy Claim).

In a footnote, Rtskhiladze cites *Haase v. Sessions*, in which the D.C. Circuit stated, in dicta, that "[i]t is not at all clear to us that Congress intended to preclude broad equitable relief (injunctions) to prevent (e)(7) violations."[7] 893 F.2d 370, 374 n.6 (D.C. Cir. 1990); *see* Pl.'s Opp. at 30 n.15. More recent Supreme Court decisions have confirmed that, contrary to the dicta in *Haas*, "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001); *see also Hinck v. United States*, 550 U.S. 501, 506 (2007) (holding that it is a "well-established principle" that "a precisely drawn, detailed statute preempts more general remedies."); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."); *Meghrig v. KFC Western,* Inc., 516 U.S. 479, 488 (1996). In light of this, Rtskhiladze cannot rely on *Haas* as endorsing an equitable remedy for his Accuracy Claims.

### 2.   *The APA Does Not Provide a Basis for Equitable Relief For An Accuracy Claim.*

Grasping for authority, Rtskhiladze argues that the APA allows him to circumvent the Privacy Act's lack of an equitable remedy for an Accuracy Claim. *See* Pl.'s Opp. at 30-32. However, the APA does not permit a cause of action when another statute "expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. "That provision prevents plaintiffs from exploiting the

---

[7] Section 552a(e)(7), which is not at issue here, bars agencies from maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity."

APA's waiver [of sovereign immunity] to evade limitations on suit contained in other statutes."

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). "When

Congress has dealt in particularity with a claim and has intended a specified remedy – including its

exceptions – to be exclusive, that is the end of the matter; the APA does not undo the judgment."

*Id.* at 216. The Privacy Act contains a detailed remedial scheme that the APA cannot undo.

In light of this recent Supreme Court precedent, the older cases that Rtskhiladze cites in

footnotes do not lend any credence to his theory that the APA provides an avenue for equitable

relief for an Accuracy Claim. *See* Pl.'s Opp. at 30 n.15-16. For instance, Rtskhiladze mischaracterizes

the Supreme Court holding in *Doe v. Chao* in support of his argument. In dicta, the *Chao* Court said

that "[t]he Privacy Act says nothing about standards of proof governing equitable relief that may be

open to victims of adverse determinations or effects, although it may be that this inattention is

explained by the general provisions for equitable relief within the [APA]." *Doe v. Chao*, 540 U.S. 614,

619 n.1 (2004). But *Chao* was a case about monetary damages; the Supreme Court did not need to

reach the issue of whether equitable relief was otherwise available. Indeed, in Justice Ginsburg's

dissent, on other grounds, she stated "[i]t bears emphasis that the Privacy Act does not authorize

injunctive relief when suit is maintained under § 552a(g)(1)(C)."[8] *Id.* at 635.

Rtskhiladze also mischaracterizes the D.C. Circuit's holding in *Doe v. Stephens* as providing

APA relief under the Privacy Act. *See* Pl.'s Opp. at 31 n.15 (citing *Stephens*, 851 F.2d at 1466-67). It

did not. It provided APA relief under the Veterans' Record Statute. *See Stephens*, 851 F.2d at 1467

("Doe is entitled to declaratory relief against future disclosure unauthorized by the *Veterans' Records*

*Statute*, and having invalidated the VA's 'routine use' regulation insofar as it is inconsistent with the

---

[8] Eight years later, in *FAA v. Cooper*, even though the Supreme Court noted the Privacy Act "possibly . . . allow[s] for injunctive relief under the [APA]," it again did not reach the issue. 566 U.S. 284, 303 n.12 (2012)

interpretation of *that statute* . . . we believe it is unnecessary to award Doe additional injunctive relief." (emphasis added)).[9]

None of the decisions cited by Rtskhiladze can overcome the Supreme Court holding that the Rtskhiladze cannot use the APA to read in relief that is otherwise excluded by the statute. *See Patchak*, 567 U.S. at 215. Accordingly, Rtskhiladze's requests for equitable relief – which venture far beyond the narrow circumstances allowed in amendment and access sections of the Privacy Act – must be rejected.

## CONCLUSION

For the these reasons and the reasons stated in the DOJ's motion to dismiss, all counts against defendant DOJ should be dismissed for lack of standing and for failure to state a claim upon which relief can be granted.


Dated: October 20, 2020                    Respectfully submitted,

                                           JEFFREY BOSSERT CLARK
                                           Acting Assistant Attorney General
                                           Civil Division

                                           ELIZABETH J. SHAPIRO
                                           Deputy Branch Director
                                           Federal Programs Branch

---

[9] Rtskhiladze also cites three cases in which the Court ordered expungement of records. *See* Pl.'s Opp. at n.15 (citing *Doe v. Air Force*, 812 F.2d 738, 741 (D.C. Cir. 1987); *Smith v. Nixon*, 807 F.2d 197, 204 (D.C. Cir. 1986); *Hobson v. Wilson*, 737 F.2d 1, 65-66 (D.C. Cir.1984)). *Doe v. Air* Force was not brought under the Privacy Act, and accordingly, has no bearing on whether equitable relief is available for an Accuracy Claim. *Hobson v. Wilson* and *Smith v. Nixon* dealt with a different provision of the Privacy Act, and an intertwined constitutional violation, holding that an expungement a permissible remedy in that circumstance. A more recent D.C. Circuit decision clarified that the precedent stands for the proposition that when a plaintiff has suffered a constitutional violation, specific Privacy Act remedies do not bar a claim for expungement. *Abdelfattah v. DHS,* 787 F.3d 524, 534 (D.C. Cir. 2015). Those circumstances are not present here, nor has Rtskhiladze requested an expungement remedy. As explained, Rtskhiladze has failed to allege a constitutional violation at all, and thus would not be entitled to an expungement under this line of cases even if had requested one.

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

/s/ *Rebecca Cutri-Kohart*
REBECCA CUTRI-KOHART
D.C. Bar No. 1049030
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W. Washington, D.C. 20530
Telephone: (202) 514-0265
Facsimile: (202) 616-8460
E-mail: rebecca.cutri-kohart@usdoj.gov

*Counsel for the United States*