## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GIORGI RTSKHILADZE,

     Plaintiff,

     v.

ROBERT S. MUELLER, III
*In his individual capacity*

     and

UNITED STATES DEPARTMENT OF
JUSTICE

          Defendants.

Case No.  1:20-cv-1591-CRC

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 60(b) MOTION

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    I.    Factual Background ......................................................................................... 2

    II.    Procedural History ......................................................................................... 5

LEGAL STANDARD ..................................................................................................... 8

ARGUMENT .................................................................................................................. 9

    I.    If He Had Used Reasonable Diligence, Plaintiff Could Have Reviewed his
    Grand Jury Transcript Earlier; Thus His Recent Review Does Not Warrant
    Extraordinary Relief.......................................................................................... 9

    II.    Plaintiff Presents No Reason to Reconsider this Court's Prior Conclusion
    that Plaintiff Could Not Satisfy the Requisite Level of Culpable Intent for
    Any Misstatements in Footnote 112. .................................................................. 14

        A.    Plaintiff's Hyperbolic Speculation about Ms. Rhee's Participation
        in His Interview in No Way Suggests the Requisite Culpable Intent
        by the Drafters of Footnote 112. ............................................................. 15

        B.    Plaintiff's Grand Jury Testimony Cannot Be Read to Suggest
        Intentional or Willful Misconduct. ........................................................... 17

CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Ackermann v. United States*,
340 U.S. 193 (1950)................................................................................................. 8

*Andrews v. Veterans Admin. of U.S.*,
838 F.2d 418 (10th Cir. 1988) ............................................................................... 19

*Bain v. MJJ Prods., Inc.*,
751 F.3d 642 (D.C. Cir. 2014) ............................................................................... 12

*Campbell v. Soc. Sec. Admin.*,
446 F. App'x 477 (3d Cir. 2011) ............................................................................ 19

*Comcast Corp. v. FCC*,
526 F.3d 763 (D.C. Cir. 2008) ............................................................................... 19

*Douglas Oil Co. of California v. Petrol Stops Nw.*,
441 U.S. 211 (1979) ............................................................................................... 11

*Fed. Trade Comm'n v. Facebook, Inc.*,
No. CV 20-3590 (JEB), 2022 WL 103308 (D.D.C. Jan. 11, 2022) .................. 16, 17

*Fleck v. Dep't of Veterans Affairs, Office of Inspector Gen.*,
No. CV 18-1452 (RDM), 2020 WL 42842 (D.D.C. Jan. 3, 2020) ........................... 1

*Good Luck Nursing Home Inc. v. Harris*,
636 F.2d 572 (D.C. Cir. 1950) ............................................................................ 8, 9

*Green v. AFL-CIO*,
811 F. Supp. 2d 250 (D.D.C. 2011) ......................................................................... 8

*Hoai v. Vo*,
935 F.2d 308 (D.C. Cir. 1991) ................................................................................. 9

*In re Grand Jury Proceeding*,
237 F.R.D. 1 (D.D.C. 2006) ................................................................................... 11

*In re Grand Jury*,
490 F.3d 978 (D.C. Cir. 2007) ............................................................................... 11

*Lee v. Geren*,
480 F. Supp. 2d 198 (D.D.C. 2007) ......................................................................... 1

*Maydak v. United States*,
630 F.3d 166 (D.C. Cir. 2010) ......................................................................... 14, 19

*McManus v. District of Columbia*,
545 F. Supp. 2d 129 (D.D.C. 2008) ......................................................................... 9

*Osborne v. Grussing*,
 No. CV 05-cv-224 (JRT/FLN), 2007 WL 9736031 (D. Minn. Oct. 5, 2007) ........................ 12

*Romero-Vargas v. Shalala*,
 907 F. Supp. 1128 (N.D. Ohio 1995)................................................................ 19, 20

*Rtskhiladze v. Mueller*,
 No. 20-CV-1591 (CRC), 2021 WL 3912157 (D.D.C. Sept. 1, 2021), *on appeal*, No.
 21-cv-5243 2021, WL 3912157 (D.C. Cir. 2021) .............................................. 5, 8

*Scrimgeour v. IRS*,
 149 F.3d 318 (4th Cir. 1998) .......................................................................... 19

*Smalls v. United States*,
 471 F.3d 186 (D.C. Cir. 2006) ........................................................................ 8

*Summers v. Howard Univ.*,
 374 F.3d 1188 (D.C. Cir. 2004) ....................................................................... 8

*Thomas v. Baker*,
 925 F.2d 1523 (D.C. Cir. 1991)....................................................................... 19

*Twelve John Does v. District of Columbia*,
 841 F.2d 1133 (D.C. Cir. 1988)........................................................................ 8

*United States v. Darden*,
 988 F.2d 123 (9th Cir. 1993) ...................................................................... 16, 17

*Waters v. Thornburgh*,
 888 F.2d 870 (D.C. Cir. 1989) ........................................................................ 19

*Wright v. United States*,
 732 F.2d 1048 (2d Cir. 1984) ......................................................................... 17

## STATUTES

5 U.S.C. § 552a .......................................................................................... 1, 14

## RULES

Fed. R. Crim. P. 6 ..................................................................................... 6, 11

## REGULATIONS

28 C.F.R. § 600.8 ........................................................................................ 3

## LEGISLATIVE MATERIALS

S. Rep. No. 116-290 (2020) ............................................................................ 5

## OTHER AUTHORITIES

Dep't of Justice, Office of the Deputy Attorney General, Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017),
    https://www.justice.gov/archives/opa/press-release/file/967231/download .............................. 2

Special Counsel's Report on the Investigation into Russian Interference in the 2016 Presidential Election (March 2019),
    https://www.justice.gov/archives/sco/file/1373816/download ..................................... 1, 3, 4, 18

## <u>INTRODUCTION</u>

This Court previously dismissed the claims of Plaintiff, Giorgi Rtskhiladze, in their entirety.  Mem. Op., ECF No. 32.  Plaintiff now moves for relief from that judgment under Rule 60(b) only as to Count IV, his claim seeking damages under the Privacy Act based on alleged inaccuracies in Footnote 112 of the Special Counsel's Report on the Investigation into Russian Interference in the 2016 Presidential Election (Mueller Report).

Plaintiff cannot satisfy the high threshold for such relief.  In addition to other grounds for dismissal the Court did not reach,[1] the Court was correct when it dismissed Count IV because Mr. Rtskhiladze did not plausibly allege that any errors in Footnote 112—which largely mirrors the content in the Senate's report on Russian interference in the 2016 election, the accuracy of which is not challenged by Plaintiff—were intentional or willful as required to receive damages under the Privacy Act.  Mem. Op. at 13, 27-29.  The Court also noted that Plaintiff had failed to respond to Special Counsel Mueller's reasons to dismiss, Mem. Op. 31, and could not seek prospective relief due to the publication of the Senate's report containing the same information, Mem. Op. 21-27.

---

[1] First, Mr. Rtskhiladze did not suffer an "adverse" determination as required to state an accuracy claim under § 552a(g)(1)(C) because no federal agency "denied 'a right, benefit, entitlement, or employment' "which [he] could reasonably have been expected to have been given if the record had not been deficient.'" *Fleck v. Dep't of Veterans Affairs, Office of Inspector Gen.*, No. CV 18-1452 (RDM), 2020 WL 42842, at *6 (D.D.C. Jan. 3, 2020) (quoting *Lee v. Geren*, 480 F. Supp. 2d 198, 210 (D.D.C. 2007)); *see* Mem. Supp. U.S.' Mot. Dismiss FAC (DOJ MTD) 19-20, ECF No. 20.  Second, the Mueller Report is not maintained in a "system of records" as required to state a claim for unlawful disclosure in violation of § 552a(b). *See also* DOJ MTD 17-19, 22.  Third, the requirements of § 552a(b) do not apply to the disclosure of the Mueller Report because that disclosure was mandated by FOIA.  *See also* DOJ MTD 23-24.

Plaintiff's motion purports to rely on "newly discovered" evidence drawn from Plaintiff's review of the transcript of his testimony to the grand jury, in the form of (1) Jeannie Rhee's participation as a prosecutor, and (2) quotations from that transcript.  But, these arguments could have been raised much earlier in this case had Plaintiff exercised reasonable diligence and timely petitioned for access to his transcript.  And, given that Plaintiff already wrote about Ms. Rhee questioning him in his 2020 book, her involvement clearly is not "newly discovered."  In any event, Mr. Rtskhiladze's claims about Ms. Rhee amount to nothing more than extravagant speculation based on the mere fact that she previously did legal work for Hillary Clinton. Plaintiff's claims based on the transcript add little to his previous allegations, which the Court credited as true at the motion to dismiss phase, and leave unchanged the fact that the alleged inconsistencies he points to cannot plausibly be attributed to a culpable intent on the part of the Mueller Report's drafters.  Accordingly, this Court need not revisit its past ruling.

## **BACKGROUND**

### I.   **Factual Background**

Robert S. Mueller III was appointed to serve as Special Counsel to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump" and any other matters arising directly from the investigation.  Dep't of Justice, Office of the Deputy Attorney General, Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017) (Special Counsel Appointment).[2]  In accordance

---

[2] Available at: https://www.justice.gov/archives/opa/press-release/file/967231/download

with federal regulation, 28 C.F.R. § 600.8(c), Special Counsel Mueller submitted a two-volume

report to the Attorney General at the conclusion of his investigation.  The Department of Justice

(DOJ) first publically released a redacted version of the report on April 18, 2019.  *See* Mueller

Report.[3]

The Mueller Report mentions plaintiff Giorgi Rtskhiladze by name in both volumes, with

Mr. Rtskhiladze's name appearing 27 times, on six separate pages and in eight footnotes in the

public version of the report.  Mueller Report, Vol. I at ii, 69-70, n.313-18; Vol II at 27-28, n.112,

945, B-9.  Mr. Rtskhiladze objects to his appearance in just one of these footnotes, which states:

> Comey 1/7/17 Memorandum, at 1-2; Comey 11/15/17 302, at 3. Comey's briefing
> included the Steele reporting's unverified allegation that the Russians had
> compromising tapes of the President involving conduct when he was a private
> citizen during a 2013 trip to Moscow for the Miss Universe Pageant. During the
> 2016 presidential campaign, a similar claim may have reached candidate Trump.
> On October 30, 2016, Michael Cohen received a text from Russian businessman
> Giorgi Rtskhiladze that said, "Stopped flow of tapes from Russia but not sure if
> there's anything else. Just so you know . . . ." 10/30/16 Text Message, Rtskhiladze
> to Cohen. Rtskhiladze said "tapes" referred to compromising tapes of Trump
> rumored to be held by persons associated with the Russian real estate conglomerate
> Crocus Group, which had helped host the 2013 Miss Universe Pageant in Russia.
> Rtskhiladze 4/4/18 302, at 12. Cohen said he spoke to Trump about the issue after
> receiving the texts from Rtskhiladze. Cohen 9/12/18 302, at 13. Rtskhiladze said he
> was told the tapes were fake, but he did not communicate that to Cohen. Rtskhiladze
> 5/10/18 302, at 7.

Mueller Report, Vol. II at 27-28, n.112 (Footnote 112).

---

[3] Volume I is available at: https://www.justice.gov/storage/report_volume1.pdf
  Volume II is available at: https://www.justice.gov/storage/report_volume2.pdf
  Both volumes and the glossary are available at: https://www.justice.gov/archives/sco/
file/1373816/download

Mr. Rtskhiladze has two grievances regarding alleged inaccuracies in this footnote.  He alleges that: (1) he was incorrectly described as a "Russian businessman," though he immigrated to the United States from the Republic of Georgia in the former Soviet Union;[4] *see* First Am. Compl. (FAC) ¶ 30, ECF No. 19-1, and (2) the text message was misquoted, because it should have read "stopped flow of *some* tapes from Russia" rather than "stopped flow of tapes from Russia" and the text message should have been quoted in the context of additional text messages. *See* FAC ¶¶ 31-33.

Because of these two alleged errors, Mr. Rtskhiladze claims that the footnote caused a myriad of harms: preventing him from serving as a *de facto* ambassador for U.S.–Georgia relations, FAC ¶ 51; denying him the position of "Honorary Consul," FAC ¶ 52; causing the cancellation of a $10 million dollar loan to the Silk Road Group, where he served as an executive (though Mr. Rtskhiladze admits the loan was canceled prior to the completion and publication of the Mueller Report), FAC ¶¶ 58-59; and creating a reputational stigma which has caused him to abandon certain financial transactions, FAC ¶¶ 60.  Mr. Rtskhiladze also offers a laundry list of unspecific, undated commercial transactions that he alleges failed or that he chose to abandon because of reputational damage that he claims Footnote 112 caused.  FAC ¶¶ 61.  For further description of Mr. Rtskhiladze's background and alleged injuries, *see* Def. Robert S. Mueller, III's Mot. Dismiss Count I, ECF No. 21.

---

[4] In the glossary to the Mueller Report, Mr. Rtskhiladze is described as an "Executive of the Silk Road Transatlantic Alliance, LLC who communicated with [Michael] Cohen about a Trump Tower Moscow proposal."  Mueller Report, Vol. II at B-9.  In Volume I, Mr. Rtskhiladze is described as "a business executive who previously had been involved in a development deal with the Trump Organization in Batumi, Georgia" and who "had pursued business ventures in Moscow."  Mueller Report, Vol. I at 70.  Mr. Rtskhiladze does not object to these characterizations.

## II.   Procedural History

Prior to filing this lawsuit, in May 2020, Mr. Rtskhiladze requested under the Privacy Act that DOJ amend Footnote 112 to "delete all references" to him.  FAC ¶ 64.  On June 17, 2020, DOJ denied Mr. Rtskhiladze's Privacy Act request because it does not maintain the Mueller Report in a "system of records" and therefore it is not subject to amendment under the Privacy Act.  FAC ¶ 65; *see* Ex. A, Privacy Act Record at 11-12.  Mr. Rtskhiladze submitted an administrative appeal.  FAC ¶ 66; Privacy Act Record at 5-6.

In June of 2020, Mr. Rtskhiladze filed this suit against the defendants DOJ and Special Counsel Mueller.  Compl., ECF No. 1.  In August, after DOJ's denial of his Privacy Act request, Mr. Rtskhiladze amended his Complaint to incorporate his Privacy Act claims seeking amendment of Footnote 112 and damages.  FAC, Prayer for Relief.

Upon consideration of motions to dismiss by DOJ and Special Counsel Mueller, this Court dismissed all of Mr. Rtskhiladze's claims.  Mem. Op., ECF No. 32.[5]  Mr. Rtskhiladze's claims against Special Counsel Mueller in Count I were dismissed because Mr. Rtskhiladze conceded Special Counsel Mueller's arguments.   Mem. Op. 14, 30-31.  Mr. Rtskhiladze's claims for injunctive or declaratory relief against DOJ under the Administrative Procedure Act or Privacy Act were dismissed because Mr. Rtskhiladze lacked standing to seek such prospective relief given that such relief would not redress any of his alleged injuries since Volume V of the Senate Select Committee on Intelligence's report on Russian Active Measures Campaigns and Interference in the 2016 Election (Senate Report), S. Rep. No. 116-290, Vol. 5 (2020), https://

---

[5] *See also Rtskhiladze v. Mueller*, No. 20-CV-1591 (CRC), 2021 WL 3912157 (D.D.C. Sept. 1, 2021), *on appeal*, No. 21-cv-5243 2021, WL 3912157 (D.C. Cir. 2021).

www.intelligence.senate.gov/sites/default/files/documents/report_volume5.pdf, "contains

essentially the same material and implications" as Footnote 112.  Mem. Op. at 13; *see also* 21-

27.

Finally, the Court dismissed Mr. Rtskhiladze's Privacy Act claim for damages against

DOJ, Count IV, finding that he had not plausibly alleged that any error was intentional or willful

as required by the high standard of the Privacy Act.  Mem. Op. at 13, 27-29; *see also* Mem. Op.

at 29 (concluding that the characterization of Mr. Rtskhiladze as Russian and the omission of the

word "some" "are . . . not plausibly chalked up to intentional malfeasance on behalf of DOJ or

Special Counsel Mueller's team.  The much more obvious explanation is a mere drafting error.").

Because the Court dismissed the Privacy Act damages claim for the previously stated reasons, it

was not necessary for the Court to reach DOJ's arguments presenting other reasons that Mr.

Rtskhiladze failed to state a Privacy Act claim.  Mem. Op. at 28 n.3.  Similarly, the Court also

declined to reach whether the slight differences between Footnote 112 and similar material

contained in the Senate Report could meet the requisite "level of falsity."  Mem. Op. at 29 n.4.

Mr. Rtskhiladze appealed the Court's decision to the D.C. Circuit, Notice of Appeal, ECF No.

34, where proceedings have been stayed at Mr. Rtskhiladze's request "pending resolution of

issues surrounding review of appellant's grand jury transcript," Order, *Rtskhiladze v. Mueller*,

No. 21-5243 (D.C. Cir. Dec. 23, 2021).

After this Court's dismissal, Mr. Rtskhiladze applied to Chief Judge Howell to review his

grand jury testimony pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E).  *See generally*

*In re Grand Jury Proceedings*, 21-gj-48 (D.D.C., application filed October 27, 2021).  Chief

Judge Howell granted Mr. Rtskhiladze's application and he and his counsel were permitted to

review the transcript subject to conditions.  Minute Order, *In re Grand Jury Proceedings*, 21-gj-

48 (Dec. 9, 2021); Mem. & Order, *In re Grand Jury Proceedings*, 21-gj-48 (D.D.C.), ECF No. 11. When, after his review, Mr. Rtskhiladze filed a Rule 60(b) motion on the public docket in this case that appeared to contain grand jury material in violation of Chief Judge Howell's order, DOJ sought and obtained a precautionary seal of that filing, Mot. Seal, ECF No. 38; Minute Order (Jan. 20, 2022), over Mr. Rtskhiladze's opposition, Resp. Mot. Seal, ECF No. 39. Chief Judge Howell subsequently clarified that "nothing in the Court's previous orders explicitly or implicitly granted permission to petitioner to disclose publicly material obtained from petitioner's review of his grand jury transcript," and that "[s]hould petitioner wish to disclose publicly these materials, he would need to submit a motion to that effect in this docket." Minute Order, *In re Grand Jury Proceedings*, 21-gj-48 (D.D.C. Jan. 21, 2022).

Mr. Rtskhiladze moved before Chief Judge Howell to "unseal all Rule 60(b) materials" and receive a copy of his transcript. Petr.'s Mot. Unseal, *In re. Grand Jury Proceedings*, 21-gj-48 (D.D.C.), ECF No. 17. Chief Judge Howell denied the portion of the request seeking to unseal all Rule 60(b) materials, "since that motion is properly directed to the presiding Judge in that case." Minute Order, *In re. Grand Jury Proceedings*, 21-gj-48 (Jan. 26, 2022). As to Mr. Rtskhiladze's request to receive a copy of his transcript or implied request for authorization to disclose grand jury materials on the public docket in this case, Chief Judge Howell denied those requests also because "petitioner has presented no clear argument—under a 'particularized need' threshold, a balancing of interests test, or any other standard—as to why he should receive an unrestricted copy of the grand jury transcript." Mem. Op. & Order (Order Denying Further Access) at 5, *In re. Grand Jury Proceedings*, 21-gj-48, ECF No. 20. Chief Judge Howell also denied Mr. Rtskhiladze's request for reconsideration of that decision. Order, *In re. Grand Jury Proceedings*, 21-gj-48 (D.D.C.), ECF No. 25; Mem. Op., *In re. Grand Jury Proceedings*, 21-gj-

48 (D.D.C.), ECF No. 26.   Finally, Chief Judge Howell ordered that "the government is authorized, but not required, to file the full transcript of petitioner's grand jury testimony, *ex parte* and under seal, in the related civil matter, *Rtskhiladze v. Mueller*, No. 20-cv-1591 (CRC), or any appeal thereof, should the presiding judge in that related case so permit."  Order, *In re. Grand Jury Proceedings*, 21-gj-48, ECF No. 25.

Mr. Rtskhiladze now seeks Rule 60 relief from only the portion of this Court's order dismissing Count IV, his Privacy Act claim against DOJ for damages.  Pl.'s Mot. Under R. 60(b)(2) & (6) for Relief Final J. (Pl.'s Rule 60(b) Mot.), ECF No. 37 (under seal).

## LEGAL STANDARD

Rule 60(b) "should be only sparingly used," *Good Luck Nursing Home Inc.  v. Harris*, 636 F.2d 572, 577, (D.C. Cir. 1950) and relief under Rule 60(b) is granted only in "extraordinary circumstances," *Ackermann v. United States*, 340 U.S. 193, 199 (1950).  "Rule 60(b) was intended to preserve the 'delicate balance between the sanctity of final judgments . . . and the incessant command of the [C]ourt's conscience that justice be done in light of all the facts.'" *Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006).  As such, "[t]he party seeking relief from a judgment bears the burden of demonstrating that he satisfies the prerequisites for such relief." *Green v. AFL-CIO*, 811 F. Supp. 2d 250, 254 (D.D.C. 2011) (citation omitted).  A district court "is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988).  In exercising this discretion, the Court "must balance the interest in justice with the interest in protecting the finality of judgments." *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004).

Plaintiff here relies on two provisions of Rule 60(b), Rule 60(b)(2), which addresses relief in light of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," and Rule 60(b)(6), which addresses "any other reason that justifies relief." Courts have noted that, while the presentation of "a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust" may warrant relief under Rule 60(b)(2), a party that "has not presented known facts helpful to its cause when it had the chance cannot ordinarily avail itself on rule 60(b) after an adverse judgment has been handed down." *McManus v. District of Columbia*, 545 F. Supp. 2d 129, 134 (D.D.C. 2008) (quoting *Good Luck Nursing*, 636 F.2d at 577).

Where, as here, a party seeks Rule 60(b) relief from a district court while the case is pending on appeal, the district court may consider such a motion and may deny Rule 60(b) relief, but lacks jurisdiction to grant Rule 60(b) relief. *McManus*, 545 F. Supp. 2d at 133-34. However, given that a district court in such a circumstances may indicate that it would grant relief, and that the moving party may then seek remand from the appellate court on that basis, *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991), DOJ responds to Mr. Rtskhiladze's motion on its substance.

## ARGUMENT

I.   **If He Had Used Reasonable Diligence, Plaintiff Could Have Reviewed his Grand Jury Transcript Earlier; Thus His Recent Review Does Not Warrant Extraordinary Relief.**

As an initial matter, it is disingenuous for Plaintiff to suggest his motion rests on "newly discovered" evidence. According to Plaintiff, "review of the grand jury transcript revealed a breathtaking breach of prosecutorial ethics." Pl.'s Rule 60(b) Mot. 2. Yet this purported "breach" is the simple involvement of Ms. Rhee as a prosecutor, not any particular action by her,

*see* Pl.'s Rule 60(b) Mot. 13-19, and her role as a prosecutor was emphatically *not* "revealed" recently.  Mr. Rtskhiladze was necessarily aware of Ms. Rhee's participation in his interview given that he was its subject.  Nor do we need to wonder whether Mr. Rtskhiladze recalled her specifically—the book he wrote about his experiences with the Mueller investigation included an entire chapter titled "Final Rounds with Prosecutor Rhee" and described how she questioned him.[6]  That book was published in 2020, well prior to his review of his grand jury testimony.  Thus it was Plaintiff's strategic choice not to raise Ms. Rhee's participation in his complaint or in opposition to the motions to dismiss, despite being well aware of her involvement, and any second thoughts he may have now about that strategy are not a reason to grant Rule 60(b) relief or indicative of any delay by DOJ.  In any event, as discussed below, Mr. Rtskhiladze's arguments about Ms. Rhee's role in his interview are also entirely baseless.  *See infra* Part II.A.

Secondary to his theories about Ms. Rhee, Mr. Rtskhiladze also raises quotations from his grand jury interview as a basis for relief.  Pl.'s Rule 60(b) Mot. 19-22.  Again, given that Mr. Rtskhiladze was present for his interview, and wrote a book about his experience, it is unclear how he could have "newly discovered" what transpired.  In any event, if Mr. Rtskhiladze's memory was insufficient to the task, he could have exercised reasonable diligence by earlier petitioning Chief Judge Howell for access to his transcript, and obtained such access well prior to the resolution of the motions to dismiss in this case.

---

[6] According to Mr. Rtskhiladze's filings in the access docket before Chief Judge Howell, his book includes a chapter 13 titled "Final Rounds with Prosecutor Rhee" and descriptions of his testimony including "Rhee continued to insist that I was connected to Russia."  *See* Notice of Article in the Daily Mail (UK) at 2 n.2-3, *In re Grand Jury Proceedings*, 21-gj-48 (D.D.C.), ECF No. 22 (stating that it quotes from *Kompromat: My Story from Trump to Mueller and USSR to USA*, a book written by Mr. Rtskhiladze and published in 2020).

The Federal Rules of Criminal Procedure addressing access to grand jury material note that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding; . . ." Fed. R. Crim. P. 6(e)(3)(E).  Indeed, Mr. Rtskhiladze ultimately obtained access to his transcript pursuant to this provision after eventually filing such a petition. And the same Rule instructs: "[a] petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened."  Fed. R. Crim. P. 6(e)(3)(F).[7]  Likewise, the Local Rules of this Court note that such proceedings will occur under seal before the Chief Judge.  LCvR 6.1.  Legal research databases present adequate examples of such petitions.  *See, e.g.*, *In re Grand Jury Proceeding*, 237 F.R.D. 1, 1-2 (D.D.C. 2006) ("Petitioner has moved to compel the Government to disclose the transcript of her previous grand jury testimony pursuant to Rule 6(e)(3)(E)(I) of the Federal Rules of Criminal Procedure[.]" (footnote omitted)), *rev'd on other grounds sub nom. In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007).

Yet, despite now claiming that the transcript is relevant to this lawsuit, Mr. Rtskhiladze failed to petition for access before filing his suit, or before DOJ and Special Counsel Mueller filed their motions to dismiss, or before this Court resolved those motions.  In fact, Mr. Rtskhiladze did not make his petition until November 2021.  *In re Grand Jury Proceedings*, 21-

---

[7] *Cf. Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 225-26 (1979) ("[T]he policies underlying Rule 6(e) dictate that the grand jury's supervisory court participate in reviewing such requests, as it is in the best position to determine the continuing need for grand jury secrecy.  Ideally, the judge who supervised the grand jury should review the request for disclosure . . . . But even other judges of the district where the grand jury sat may be able to discover facts affecting the need for secrecy more easily than would judges from elsewhere around the country.").

gj-48 (D.D.C., application filed October 27, 2021).  This demonstrates a lack of reasonable

diligence.  *Cf. Bain v. MJJ Prods., Inc.*, 751 F.3d 642, 649 (D.C. Cir. 2014) (affirming that a

party had not exercised reasonable diligence in seeking a copy of a letter when the party had not

"mention[ed] the . . . letter to the district court, [sought] the court's assistance in locating a copy,

or [asked] the defendants for any copy in their possession"); *see also Osborne v. Grussing*, No.

CV 05-cv-224 (JRT/FLN), 2007 WL 9736031, at *2 (D. Minn. Oct. 5, 2007) (denying plaintiffs

request for relief under Rule 60(b)(2) because their evidence was not "new" where they "failed

to conduct a full investigation at the time of their initial complaint"—although plaintiffs did

"point to a document request sent to defendants . . . and a[] . . . follow-up letter" they did not

"indicate[] that they made any independent effort to locate those minutes until after the entry of

summary judgment").

Plaintiff tries to excuse his lack of diligence by blaming DOJ.  His theory appears to be

that he was unable to complete his own legal research and was therefore unable to file a petition

because DOJ did not immediately respond to his emailed question about access to the transcript.

Pl.'s Rule 60(b) Mot. 11-13.  Despite the apparent urgency which this theory suggests should

attach to that email, his counsel did not follow-up on the email for 14 months after sending it.

When he did eventually follow-up, he received a response the very next day which, as a

courtesy, informed him of the Federal and Local Rules relating to such petitions, and he was

ultimately able to use this information to successfully petition for access.  Emails between Jerry

Madden and Rebecca Cutri-Kohart, Ex. 1, ECF No. 37-2 (sealed); *see also* Order Denying

Further Access at 7 (characterizing these facts as "an email thread that stalled out for fourteen

months").  Plaintiff's suggestion that DOJ obstructed his access to his transcript is nonsense.

Plaintiff could have read the Federal and Local Rules or consulted a legal research database and

filed a petition at his convenience.  Even assuming, *arguendo*, that Mr. Rtskhiladze was tripped up by DOJ's delayed response, he could have at least followed up on the email or requested a response by a particular date at some point during the pendency of the dispositive motions in this case.  *See* Order Denying Further Access 7 ("Despite the supposed importance of the transcript to his civil case, petitioner did not inquire further until October 19, 2021," "The intervening period of over a year includes the entire lifecycle of the government's motion to dismiss.").

Plaintiff's suggestion that a stalled email chain implicates issues of professional responsibility is equally baseless.  Defendant struggles to understand Plaintiff's reference to Rule 3.4 of the Rules of Professional Conduct for the District of Columbia Bar, cited at Pl.'s Rule 60(b) Mot. 11, given that Plaintiff's email was certainly not a "legally proper discovery request[]."  And although Plaintiff characterizes the purported issue as relating to "candor," Pl.'s Rule 60(b) Mot. 11, that is also inaccurate—Plaintiff's objection is not that the information provided by DOJ was *incorrect* (indeed, given that Plaintiff ultimately obtained access to his transcript by following DOJ's advice, the answer was manifestly accurate), but that the response took too long.  But there is no basis to conclude that any delay represented an effort to obstruct Plaintiff, rather than simply the normal ebb and flow of email communication, where it is not unusual to deprioritize an email chain that has been dormant for multiple months.  *See* Order Denying Further Access 7 ("Petitioner seizes on the August 2020 email exchange as somehow reflecting a willful campaign to deprive him of access, but this is a leap too far, particularly in the absence of any attempts by petitioner to query the status of such a supposedly important request while a motion to dismiss was pending.").

Accordingly, Plaintiff is unable to establish that his recent review of the grand jury transcript is "newly discovered evidence that, with reasonable diligence, could not have been

discovered in time to move for a new trial under Rule 59(b)," as required by Rule 60(b)(2).  In

any event, as discussed below, even if this Court considers Plaintiff's "newly discovered"

evidence, the high standard for relief under Rule 60(b) is not met.

II.   **Plaintiff Presents No Reason to Reconsider this Court's Prior Conclusion that Plaintiff Could Not Satisfy the Requisite Level of Culpable Intent for Any Misstatements in Footnote 112.**

Plaintiff seeks relief from the dismissal of only Count IV of the First Amended

Complaint.  *See generally* Pl.'s Rule 60(b) Mot.  This count seeks money damages.  To succeed

in such a damages claim, a Plaintiff must show that the "agency acted in a manner which was

intentional or willful" in violating the relevant provisions of the Privacy Act.  5 U.S.C.

§ 552a(g)(4).  This "intent requirement" sets a high bar.  Negligent or even grossly negligent

conduct does not suffice.  *See Maydak v. United States*, 630 F.3d 166, 179 (D.C. Cir. 2010)

("'Intentional or willful' means: 'somewhat greater than gross negligence, or, an act committed

without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under

the Act.'" (citation omitted)).  And, "[a]s our case law makes clear, the Privacy Act's 'intentional

or willful' element cannot be established with mere speculation."  *Maydak*, 630 F.3d at 183

(citation omitted).

In its motion-to-dismiss analysis, this Court concluded that Mr. Rtskhiladze did not

plausibly allege any intentional or willful violation of the Privacy Act by the drafters of Footnote

112.  Mem. Op. 27-29.  As the Court noted, Mr. Rtskhiladze does not question the accuracy of

the Senate Report, which contains substantially similar information about his involvement with

Michael Cohen.  Mem. Op. 27-28.  Given that concession, the Court considered Footnote 112,

including its "Russian businessman" language and the omission of the word "some," and

concluded that any errors are "not plausibly chalked up to intentional malfeasance on behalf of

14

DOJ or Special Counsel Mueller's team," but instead that "[t]he much more obvious explanation is a mere drafting error."  Mem. Op. 29.  Plaintiff now offers two arguments attempting to show an intentional or willful inaccuracy, but neither presents a reason to disturb the Court's conclusion.

> **A.  Plaintiff's Hyperbolic Speculation about Ms. Rhee's Participation in His Interview in No Way Suggests the Requisite Culpable Intent by the Drafters of Footnote 112.**

Plaintiff's entirely generalized theorizing about one of the prosecutors involved in Mr. Rtskhiladze's grand jury interview is nothing more than a baseless speculation, and is far from what would be necessary to show intentional or malicious intent by the drafters of Footnote 112.

In the absence of any concrete facts which would suggest an actual conflict of interest on Ms. Rhee's part, Plaintiff cites a laundry list of ethical requirements for prosecutors, presenting virtually no analysis on any particular one.  Pl.'s Rule 60(b) Mot. 13-14.  As an initial matter, it is unclear if any such standards have relevance where Mr. Rtskhiladze does not allege that he was wrongfully *prosecuted*.  But setting that aside, Plaintiff also makes no effort to actually explain why any particular cited provision was violated, deploying only vague rhetoric and insinuation.  Notably absent from Plaintiff's argument is any citation to any case involving an actual prosecution arising out of Special Counsel Mueller's investigation where Ms. Rhee's work was found to pose a conflict of interest, likely because no such case exists.

Plaintiff's entire objection to Ms. Rhee is that she represented former Secretary of State Hillary Clinton in two lawsuits in 2015, and that she donated to Ms. Clinton's presidential

campaign.[8]  To link that to Special Counsel Mueller's work, Plaintiff argues that the Special

Counsel was "investigating the conduct of Clinton's presidential rival," Pl.'s Rule 60(b) Mot. 15,

although in actuality the Special Counsel was appointed to investigate "the Russian

government's efforts to interfere in the 2016 presidential election."  Special Counsel

Appointment.  No political candidate or United States official, including Ms. Clinton or then-

President Trump, was named in the appointment.  Special Counsel Appointment.

Plaintiff offers no explanation of why Ms. Rhee's past work for Ms. Clinton would make

her have any particular bias for or against Mr. Rtskhiladze or why she would be particularly

prone to casting him as a Russian versus Georgian businessman.  Having done work in the past

for a person peripherally involved with an issue or having donated to that person's campaign are

far from what courts have previously found to constitute potentially impermissible prosecutorial

bias.  A court in this district recently declined to find a problem with the Chair of the Federal

Trade Commission voting to authorize a lawsuit against Facebook despite the fact that the Chair

"ha[d] undoubtedly expressed views about Facebook's monopoly power" because "there is no

allegation that [the Chair] ha[d] a personal animosity against Facebook beyond her own views

about antitrust law, nor does she have a financial conflict of interest."  *Fed. Trade Comm'n v.*

*Facebook, Inc.*, No. CV 20-3590 (JEB), 2022 WL 103308, at *20 (D.D.C. Jan. 11, 2022).  Here,

likewise, what Plaintiff brings forward is far from evidence of personal animosity against Mr.

Rtskhiladze by Ms. Rhee or evidence of a financial conflict of interest.  *See also United States v.*

---

[8] Plaintiff asserts that "Rhee has close personal, political, and professional ties to the
2016 Democratic candidate for President Hillary Clinton."  Pl.'s Rule 60(b) Mot. 2.  Presumably
the "professional" tie is the past work, and the "political" tie is the campaign donation.  What
"personal" tie Plaintiff thinks exists is left unstated.

*Darden*, 988 F.2d 123 (9th Cir. 1993) (denying a motion to disqualify prosecutors based on

defendant's "unfounded allegations regarding a conflict of interest," and citing a case that found

insufficient "where the only evidence of a conflict of interest was based upon 'unfounded gossip

and speculation' fueled in part by the defendant").  Cases where courts have disqualified

prosecutors often include far more extreme facts—for example, a court did find the potential

"appearance of impropriety" where the prosecutor's wife was a "political opponent" of the

defendant and had brought multiple "complaints to federal authorities" about the defendant that

could have resulted in criminal charges.  *Fed. Trade Comm'n v. Facebook, Inc.*, No. CV 20-3590

(JEB), 2022 WL 103308, at *20 (D.D.C. Jan. 11, 2022) (quoting *Wright v. United States*, 732

F.2d 1048, 1055 (2d Cir. 1984)).  Here, of course, Plaintiff does not allege that Ms. Rhee was a

political opponent of Mr. Rtskhiladze, but that one of Ms. Rhee's former clients was a political

opponent of the sitting President, a much more tenuous linkage.  And, Ms. Rhee was not required

to disclose a conflict of interest that she did not have.  *Contra* Pl.'s Rule 60(b) Mot. 16-17.

### B.  <u>Plaintiff's Grand Jury Testimony Cannot Be Read to Suggest Intentional or Willful Misconduct.</u>

Plaintiff's search for a "smoking gun" in Mr. Rtskhiladze's grand jury testimony has also

come up empty.  Plaintiff has surprisingly little to say about the contents of his transcript,

relegating the argument to the last three-and-a-half pages of his motion.

At most, Plaintiff's argument would show that the drafters of Footnote 112 had available

accurate facts.  This in no way suggests, much less shows, intentional or willful misconduct as

required by the Privacy Act, nor should it disturb this Court's prior conclusion that, given the

nature of the errors in Footnote 112, the only plausible explanation is a simple oversight by the

drafters.  Indeed, this Court's prior decision to dismiss was based, as it must be, on the Court

crediting Plaintiff's factual allegations and granting them the benefit of all inferences that can be derived from those factual allegations. *See, e.g.*, Mem. Op. 19 & n.1 (noting that "the Court at this stage must accept Rtskhiladze's allegations that all of these implications are false" concerning the implications "that Rtskhiladze was generally aware of salacious tapes involving Trump, that he was connected with the alleged purveyors of those tapes, and that he hid his knowledge of the veracity of the tapes from Cohen").

Nor is it particularly surprising if the drafters of Footnote 112 had access to accurate facts, given that Mr. Rtskhiladze is identified elsewhere in the Mueller report as "a U.S.-based executive of the Georgian company," Mueller Report, Vol. I at 70 n.313, as well as identified as Georgian in the Senate Report.

Plaintiff also mentions that he finds the statement in Footnote 112 that "Rtskhiladze said he was told the tapes were fake, but did not communicate that to Cohen," to be "not credible." Pl.'s Rule 60(b) Mot. 22. This same information, however, appears in the Senate Report. *See* Senate Report 660 ("Rtskhiladze has said that Khokhlov subsequently called and stated that the tapes were fake, but Rtskhiladze said this information was not conveyed to Cohen."). Plaintiff has not challenged the accuracy of the Senate Report, and certainly inclusion of the same information in Footnote 112 cannot give rise to any inference of malfeasance or culpable intent by the drafters of Footnote 112. In sum, Plaintiff's motion offers no reason to disturb this Court's prior determination that "[e]ven if some sliver of daylight" exists between the facts mentioned in the Senate Report and Footnote 112, that difference "[is] not plausibly attributable to a culpable mental state" as required to show an intentional or willful violation of the Privacy Act. Mem. Op. 29.

*     *     *

The weak arguments that Plaintiff has presented fall below the high threshold required to demonstrate that an agency "intentionally or willfully" violated the Privacy Act, particularly given that courts "must presume an agency acts in good faith."  *Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) (quoting *Thomas v. Baker*, 925 F.2d 1523, 1525 (D.C. Cir. 1991)). "Plaintiffs who oppose summary judgment on the intent issue cannot prevail by merely presenting evidence that 'the government acted negligently, or that the government handled a matter in a disjointed, or confused manner, or that the government acted inadvertently to contravene the Act.'"  *Maydak*, 630 F.3d at 180-81 (quoting *Waters v. Thornburgh*, 888 F.2d 870, 875-76 (D.C. Cir. 1989)).

In harmony with this standard, courts have required a high showing to demonstrate an intentional or willful violation of the Privacy Act.  For example, the Third Circuit concluded that the intentional or willful standard was not met where a plaintiff asserted "that his wife discovered some documents in her SSA file that should have been in his file" because "if true, [that] established nothing more than negligence, and negligence is an insufficient basis for an award of damages under the Privacy Act."  *Campbell v. Soc. Sec. Admin.*, 446 F. App'x 477, 479-81 (3d Cir. 2011).  Similarly, the Fourth Circuit concluded that no Privacy Act violation occurred where employees processed and released tax reforms in a way that was immediately recognizable as incorrect because "there is no evidence on the record before us that indicates that the [agency's] response reflects any greater level of culpability than simple negligence, i.e., lack of due care."  *Scrimgeour v. IRS*, 149 F.3d 318, 324 (4th Cir. 1998); *see also Andrews v. Veterans Admin. of U.S.*, 838 F.2d 418, 425 (10th Cir. 1988) (finding the Privacy Act's standard for intentional or willful action was not met where an agency employee had tried to sanitize files but had failed to correctly do so); *Romero-Vargas v. Shalala*, 907 F. Supp. 1128, 1134 (N.D.

19

Ohio 1995) (finding that the Privacy Act's intentional or willful standard was met where an employee violated multiple internal regulations at each step of a course of action "indicat[ing] a blatant disregard not only for the specifics of the [agency] guidelines, but for the policies underlying the guidelines and the law they are meant to effectuate").

## **CONCLUSION**

For the above-stated reasons, and as discussed in Defendant's prior motion to dismiss, Plaintiff's Rule 60(b) motion should be denied.

Dated: May 16, 2022                     Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

BRIGHAM BOWEN
Assistant Branch Director
Federal Programs Branch

/s/ *Rebecca M. Kopplin*
REBECCA M. KOPPLIN
Trial Attorney (California Bar No. 313970)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 514-3953
Fax: (202) 616-8470
rebecca.m.kopplin@usdoj.gov

*Counsel for the United States*

20