## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GIORGI RTSKHILADZE**, | |
| Plaintiff, | |
| v. | Case No. 20-cv-1591 (CRC) |
| **ROBERT S. MUELLER III** | |
| and | |
| **UNITED STATES DEPARTMENT OF JUSTICE**, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Giorgi Rtskhiladze, a Georgian-American businessman, claims that information published about him in a footnote to former Special Counsel Robert Mueller's report on Russian interference in the 2016 presidential election damaged his reputation and cost him valuable business opportunities. So, seeking injunctive relief and damages on a variety of legal theories, Rtskhiladze filed suit against Mr. Mueller and the Department of Justice ("DOJ"). In September 2021, the Court dismissed the complaint in its entirety.

Rtskhiladze now moves under Federal Rules of Civil Procedure 60(b)(2) and (6) for relief from a portion of the Court's judgment. Specifically, he seeks to resuscitate his Privacy Act damages claim against DOJ. The Court dismissed that claim because Rtskhiladze had failed to plausibly allege that anyone involved in the drafting of the relevant footnote—Footnote 112 of Volume II—acted intentionally or willfully, as required to recover damages under 5 U.S.C. § 552a(g)(4). Rtskhiladze asserts that newly discovered evidence reveals errors in the Court's analysis. He points to information gleaned from a recent review of the transcript of testimony he

gave before the Special Counsel's grand jury, as well as developments in other legal proceedings.  The Court will deny the motion for relief from judgment because Rtskhiladze has not presented evidence that qualifies as "newly discovered" for the purposes of Rule 60(b)(2), nor offered any other reason for reconsideration under Rule 60(b)(6).

## I.    Legal Standards

"Federal Rule of Civil Procedure 60(b) sets forth various grounds upon which a party may obtain relief from a judgment."  Bain v. MJJ Prods., Inc., 751 F.3d 642, 646 (D.C. Cir. 2014).  "Regardless of the particular reason for providing such relief, . . . under Rule 60(b) the trial judge must strike a delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of all the facts."  Twelve John Does v. District of Columbia, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (emphasis omitted) (internal quotation marks omitted).  Rtskhiladze here invokes two sections of 60(b):  Rule 60(b)(2) allows for relief based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2); see also Epps v. Howes, 573 F. Supp. 2d 180, 185 (D.D.C. 2008) (applying Rule 60(b)(2) to claim of new evidence following entry of judgment on motion to dismiss).  Rule 60(b)(6) permits the court to relieve a party of a prior judgment "for any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  This "catch-all, residual clause . . . applies only to extraordinary situations," and "should be only sparingly used."  Twelve John Does, 841 F.2d at 1140 (internal citations and quotation marks omitted).

Rtskhiladze filed his Rule 60(b) motion three months after noticing his appeal of this Court's dismissal order to the D.C. Circuit.  See Notice of Appeal, Oct. 28, 2021, ECF No. 34; Mot. for Relief from J., Jan. 19, 2022, ECF No. 37.  That appeal remains pending, although the

D.C. Circuit has held the case in abeyance while Rtskhiladze seeks relief in parallel proceedings related to his grand jury testimony.  See Clerk's Order Holding Case in Abeyance, <u>Rtskhiladze v. Mueller</u>, No. 21-5243 (D.C. Cir. Dec. 23, 2021).  The pendency of Rtskhiladze's appeal deprives the Court of jurisdiction to grant relief from judgment pursuant to Rule 60(b).  <u>Halvonik v. Doll</u>, 263 F.R.D. 13, 15 (D.D.C. 2009).  But that does not prevent it from taking up the merits of his argument.  The Court may still deny the motion or, in an indicative ruling, state that it would grant the motion, were the court of appeals to remand for that purpose.  See <u>Hoai v. Vo</u>, 935 F.2d 308, 312 (D.C. Cir. 1991); Fed. R. Civ. P. 62.1 (outlining procedure for indicative ruling on a motion for relief barred by a pending appeal).

## II.    Analysis

Rtskhiladze seeks relief from the portion of the Court's order dismissing his Privacy Act damages claim against DOJ.  The Court will deny the request.  *First*, none of the information Rtskhiladze presents satisfies Rule 60(b)(2)'s standard for "newly discovered" evidence.  Rtskhiladze's argument largely focuses on an alleged conflict of interest on the part of Assistant Special Counsel Jeannie Rhee, who questioned him before the grand jury.  The source of this supposed conflict, Rtskhiladze claims, is Ms. Rhee's prior legal work for Hillary Clinton and the Clinton Foundation while in private practice, and her donation to Ms. Clinton's 2016 presidential campaign.  But Rtskhiladze obviously knew of Rhee's role in the Mueller investigation, as well as her ties to Hillary Clinton, well before he filed this suit.  Nor could Rtskhiladze have uncovered anything new when he reviewed his grand jury transcript.  Rtskhiladze's memory of his own testimony does not appear to have been faulty, and the Court already accepted as true the complaint's allegations about the information he provided.  *Second*, neither this supposedly new information nor any of Rtskhiladze's recycled arguments offers any reason for the Court to

reconsider its Privacy Act analysis.  The Court therefore declines to grant any relief from judgment.

In so doing, the Court assumes familiarity with the underlying facts and procedural history laid out in its previous memorandum opinion.  See Mem. Op. on Mots. Dismiss ("MTD Op.") at 2–9, ECF No. 32.  The Court will recount a few recent procedural developments— before this Court and in related proceedings—that are necessary to understand the analysis below.

### A.  "Newly Discovered" Evidence

To qualify for relief under Rule 60(b)(2), a litigant must provide "newly discovered evidence that, *with reasonable diligence*, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2) (emphasis added); see also Epps, 573 F. Supp. 2d at 185 (applying rule to request for relief from judgment entered on motion to dismiss). Rtskhiladze is not entitled to relief under Rule 60(b)(2) because nothing he has provided is in fact new evidence that could not have reasonably been discovered earlier.

### 1.  *Grand Jury Testimony Transcript*

Rtskhiladze first claims that he discovered new evidence undermining the Court's dismissal order when he reviewed the transcript of his testimony before the grand jury that heard the Special Counsel's evidence.  See Mem. in Supp. of Mot. under Rule 60(b)(2) & (6) ("60(b) Mot.") at 11–13, ECF No. 37-1.  The Court agrees with the government, see Opp'n at 9–14, ECF No. 47, that this information is not newly discovered for the purposes of Rule 60(b)(2).

As an initial matter, it's unclear how much of this evidence could even conceivably be new—after all, Rtskhiladze obviously was present for his grand jury testimony and presumably knows what transpired.  Tellingly, Rtskhiladze's briefing throughout this case has continued to

mention the same supposed inconsistencies between his grand jury testimony and Footnote 112. Compare First Am. Compl. ¶ 30, ECF No. 19-1 (mentioning discrepancies) and Pl.'s Opp'n to DOJ's Mot. Dismiss at 15–18, ECF No. 22 (discussing substance of grand jury testimony) with 60(b) Mot. at 20–22 (listing same differences between testimony transcript and footnote).  Still, it is true that Rtskhiladze has sought and received access to his grand jury transcript since the briefing of DOJ's motion to dismiss.[1]  To the extent Rtskhiladze's memory was faulty, reviewing a transcript of what he said to the Special Counsel's grand jury could conceivably have helped Rtskhiladze in defending his Privacy Act claim.

 This recent development does not help Rtskhiladze's case under 60(b)(2), however, because he still did not exercise due diligence in seeking access to the transcript.  All along, Rtskhiladze has claimed entitlement to review his grand jury testimony transcript under In re Grand Jury, 490 F.3d 978 (D.C. Cir. 2007).  See Ex. 1 to 60(b) Mot. at 4 (citing case in August

---

[1] On December 9, 2021, Chief Judge Howell granted Rtskhiladze permission to review his grand jury transcript.  See Minute Order, In re Grand Jury Proceedings, 21-gj-48 (D.D.C. Dec. 9, 2021).  The Order clarified that it "does *not* by itself authorize further disclosure (*e.g.*, for inclusion in filings to be made in the related civil matter) of the contents of the transcripts and exhibits at issue by [Rtskhiladze] or the government."  Id.  Flouting that direction, Rtskhiladze filed alongside his 60(b) motion a declaration that transcribed or paraphrased quotes from his grand jury testimony transcript.  See Rtskhiladze Decl. ¶ 3, ECF No. 37-3.  So, at the government's request, the Court sealed that filing and stayed briefing of Rtskhiladze's Rule 60(b) motion pending further guidance from the Chief Judge on the scope of her disclosure orders.  See Minute Order, Jan. 20, 2022.  The Chief Judge ultimately denied Rtskhiladze's request to unseal his grand jury transcript, refused to order the government to produce a copy of the transcript, and limited disclosure of its contents in this case to sealed filings.  See Mem. Op. & Order, In re Grand Jury Proceedings, 21-gj-48 (D.D.C. Feb. 16, 2022), ECF No. 20.  As authorized by the Chief Judge, the Court ordered the government to file a copy of the transcript ex parte and under seal in this proceeding.  See Minute Order, Apr. 25, 2022.

 The Court has reviewed that transcript but does not find its contents necessary to the resolution of this motion.  In this order, the Court does not cite directly to the transcript or rely on any of the plaintiff's characterization of its substance—which remains under seal.  The Court therefore sees no reason to seal this order.

2020 email to government counsel).  There, the D.C. Circuit held that grand jury witnesses are entitled to review transcripts of their own testimony under Federal Rule of Criminal Procedure 6(e)(3)(E)(i).  In re Grand Jury, 490 F.3d at 980.  But both Rule 6(e)(3) and In re Grand Jury make clear that individuals seeking such a review must request access from *a court*.  See Fed. R. Crim. P. 6(e)(3)(E) (outlining circumstances when "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other condition that it directs—of a grand jury matter"); Fed. R. Crim. P. 6(e)(3)(F) ("A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened."); In re Grand Jury, 490 F.3d at 980 (holding that grand jury witnesses are entitled to review transcripts of their own grand jury testimony at a U.S. Attorney's office or a place "designated by the district court").

Rtskhiladze did not file such a request with the district court overseeing the Special Counsel's grand jury until November 1, 2021—sixteen months after he filed this case, two months after this Court's order dismissing the complaint, and several weeks past the deadline to move to alter or amend a judgment under Rule 59.[2]  See Application for Access, In re Grand Jury Proceedings, 21-gj-48 (D.D.C. Nov. 1, 2021), ECF No. 2.  Chief Judge Howell moved diligently to process Rtskhiladze's request.  By early December, the Chief Judge had directed the government to give Rtskhiladze and his counsel access.  See Minute Order, In re Grand Jury Proceedings, 21-gj-48 (D.D.C. Dec. 9, 2021).  The delay here squarely falls on Rtskhiladze's shoulders, and it does not reflect ordinary diligence on his part.

---

[2] Rtskhiladze filed a letter brief requesting such relief on October 27, but the Chief Judge did not accept this non-conforming filing.  Instead, Chief Judge Howell directed Rtskhiladze to file a version of his application that followed the formatting requirements in the local rules.  See Minute Order, In re Grand Jury Proceedings, 21-gj-48 (D.D.C. Oct. 28, 2021).  That few days' difference—October 27 versus November 1—does not affect this Court's diligence analysis.

Rtskhiladze disagrees, and suggests that "lack of candor" on the part of counsel for DOJ "prevented" him from reviewing his transcript earlier.  See 60(b) Mot. at 11.  He points to a single email exchange from August 2020.  In those emails, Rtskhiladze's counsel requested access to the transcript, and counsel for the government confirmed that it had "received the request and was considering it."  Ex. 1 to 60(b) Mot. at 3–4.  Based on this initial exchange, Rtskhiladze's theory seems to be that government counsel misled him about the proper procedure for seeking relief when she suggested that the office would—and therefore could— "consider[]" the request.  The Court does not find this response to be materially misleading about the steps a grand jury witness should take to review testimony transcript.  But to the extent Rtskhiladze's counsel did believe, erroneously, that the ball was in government counsel's court, a single email response by no means *prevented* Rtskhiladze from seeking relief through the appropriate channels.  At all times, Rtskhiladze could have—and should have—conducted his own basic research into the proper way to seek review of the transcript.

What's more, Rtskhiladze did not diligently pursue relief through the channels he incorrectly believed to be proper.  Although he first requested access from DOJ in August 2020, his counsel did not follow up on that initial email until October 2021.  See Ex. 1 to 60(b) Mot. at 3.  At that point, the government directed Rtskhiladze's attorney to the procedure outlined above, which requires an application to the Chief Judge of this district.  Id. at 1.  As Chief Judge Howell observed, this fourteen-month delay covered "the entire lifecycle of the government's motion to dismiss."  See Mem. Op & Order at 7, In re Grand Jury Proceedings, 21-gj-48 (D.D.C. Feb. 16, 2022), ECF No. 20; see also id. (rejecting suggestion that email exchange "somehow reflect[ed] a willful campaign to deprive [Rtskhiladze] of access, . . . particularly in the absence of any

attempts by [him] to query the status of such a supposedly important request while a motion to dismiss was pending").

In sum, because Rtskhiladze did not make reasonable efforts to gain access to his grand jury testimony transcript earlier, it is not "newly discovered" for the purposes of Rule 60(b)(2).

### 2. *Involvement of Assistant Special Counsel Jeannie Rhee*

In his reconsideration motion, Rtskhiladze also alleges that one of the prosecutors who questioned him before the grand jury, Jeannie Rhee, had a conflict of interest because of her "personal, political, and professional" ties to 2016 presidential candidate Hillary Clinton.  60(b) Mot. at 15.  Neither Rhee's questioning of Rtskhiladze before the grand jury nor any of her supposed ties to Ms. Clinton are "newly discovered," either.

Rtskhiladze obviously knew that Ms. Rhee was one of the prosecutors who questioned him well before the motion to dismiss briefing in this case.  Indeed, in his 2020 book, Rtskhiladze titled a chapter "Final Rounds with Prosecutor Rhee."  See Notice of Article in the Daily Mail (UK) at 1, 2 nn.2–3, In re Grand Jury Proceedings, 21-gj-48 (D.D.C. Feb. 19, 2022), ECF No. 22 (discussing Kompromat: My Story from Trump to Mueller and USSR to USA (Rare Bird Books 2020)).  In his own telling, Rhee "continued to insist that [he] was connected to Russia" during the grand jury proceedings.  Id.

Rtskhiladze's claimed conspiracy involving Rhee and Ms. Clinton is not new to him, either.  Rtskhiladze has conceded that he "was aware of" Rhee's alleged "ties to Hillary Clinton" "no later than July 24, 2019"—before he even filed this case.  See Reply in Supp. of 60(b) Mot. ("Reply") at 3, ECF No. 48 (discussing questioning of Special Counsel Mueller about Rhee in testimony before Congress).  In his reply brief, Rtskhiladze nevertheless suggests that it was not

until much more recently that "Rhee's motive to defame" him "came into focus."  See id. at 5.
Rtskhiladze offers two recent developments to bolster this point.  Neither is convincing.

First, Rtskhiladze claims that his review of the questioning in his grand jury transcript
revealed Rhee's supposed vendetta against him.  See id. at 6–7.   To the extent the transcript
even could reveal such an improper motive, the Court has already held that any particulars
uncovered during Rtskhiladze's recent review of his grand jury transcript do not count as "newly
discovered" for the purposes of Rule 60(b)(2).  Once again, Rtskhiladze was present for the
questioning and does not appear to have forgotten any pertinent information.

Second, Rtskhiladze points to the November 2021 indictment of Igor Danchenko secured
by Special Counsel John H. Durham, who was appointed to investigate whether any federal
official violated the law in connection with intelligence or law enforcement activities
surrounding the 2016 presidential campaigns.  See id. at 5; Dep't of Justice, Appointment of
Special Counsel to Investigate Matter Related to Intelligence Activities & Investigations Arising
Out of the 2016 Presidential Campaigns, Order No. 4878-2020 (Oct. 19, 2020).  According to
Rtskhiladze, Danchenko's indictment revealed that compromising information in the dossier
about then-candidate Donald J. Trump prepared by former British intelligence officer
Christopher Steele came from "a political operative of the Clintons."  Reply at 5–6.  In
Rtskhiladze's view, the Danchenko indictment "raise[s] the inference that Rhee" was "acting as
another political operative of Clinton" when she questioned him about that same compromising
information before the grand jury and tied him to those rumors in Footnote 112.  Id.  This
argument is frivolous.

The Danchenko indictment—taken alone or put in context with other allegations in the
record—cannot give rise to the baseless inference Rtskhiladze proposes.  See Kowal v. MCI

Comme'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.").  To begin, Rtskhiladze has not alleged any facts to suggest improper ties between Ms. Rhee and former candidate Clinton during the Special Counsel's investigation.  The most he can point to is some of Rhee's past professional work for Clinton—representing Ms. Clinton or the Clinton Foundation in two unrelated cases in 2015 while Rhee was in private practice—and Rhee's donation to her 2016 presidential campaign.  See 60(b) Mot. at 15.  Crucially, Rtskhiladze also does not offer any evidence to tie Ms. Rhee to the origins of the Steele dossier.  He does not claim that she was involved in seeding or disseminating the compromising rumors, or that she had any personal ties to the Democratic Party operative who Rtskhiladze claims spread them. Rtskhiladze has therefore not plausibly alleged that Rhee was a "political operative of Clinton," acting on behalf of some grand Clinton conspiracy, when she oversaw the publication of Footnote 112 of the Mueller Report.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (explaining that plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

### 3.  Other Arguments

Finally, the Court notes that none of the specific complaints about Footnote 112 Rtskhiladze raises in his 60(b) Motion were only available to him recently.  Indeed, as mentioned above, Rtskhiladze challenged *all* the same alleged misstatements or omissions in his opposition to the government's motion to dismiss.  Compare Pl.'s Opp'n to DOJ's Mot. Dismiss at 15–18 (listing reasons "[t]he Special Counsel and his team of prosecutors knew that the footnote was false and misleading") with 60(b) Mot. at 20–22 (listing similar reasons).  The Court has already

addressed and rejected these arguments, see MTD Op. at 28–29, so there is no reason to revisit them under Rule 60(b)(2).

B.  Other Grounds for Reconsideration

The Court likewise rejects Rtskhiladze's request for relief under the catch-all provision in Rule 60(b)(6).  None of his arguments or evidence convincingly demonstrate that the Court erred in its initial analysis of the Privacy Act damages claim.

The Court begins with an overview of the relevant legal standards.  First is the high bar for relief under Rule 60(b)(6):  It is an "extraordinary" remedy that "should be only sparingly used."  Twelve John Does, 841 F.2d at 1140.  Second is the substantive showing Rtskhiladze must make to succeed on his dismissed claim:  To receive damages under the Privacy Act, a plaintiff must plead and prove facts showing that "that the agency acted in a manner which was intentional or willful" and that, as a result, the plaintiff suffered "actual damages."  5 U.S.C. § 552a(g)(4).  Under the Act, "[i]ntentional or willful" conduct is "somewhat greater than gross negligence, or, an act committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act."  Maydak v. United States, 630 F.3d 166, 179 (D.C. Cir. 2010) (emphasis omitted) (internal quotation marks omitted).  With that definition, the Act's intent element sets "a high hurdle" for Privacy Act litigants.  Hurt v. D.C. Ct. Servs. & Offender Supervision Agency, 827 F. Supp. 2d 16, 20 (D.D.C. 2011).

The Court has already held that Rtskhiladze did not clear that hurdle.  In its dismissal opinion, the Court held that Rtskhiladze had not plausibly alleged that any misstatements in Footnote 112 were made intentionally or willfully.  In particular, the Court noted that Rtskhiladze had admitted that a report by the Senate Select Committee on Intelligence accurately described his conduct.  MTD Op. at 28–29 (discussing the Senate Report).  Because that report

"contains the same (and in some cases substantially worse) facts and implications regarding Rtskhiladze's conduct," the Court concluded that any minor variations in those depictions could not be "plausibly attributed to a culpable mental state" as defined in the Privacy Act.  Id. at 29. In addition, the Court held that the few "clear factual errors uniquely present in Footnote 112"— misidentifying Rtskhiladze as Russian and omitting a single word in recounting a text message Rtskhiladze sent—were much more likely "drafting error[s]" than the product of "intentional malfeasance."  Id.

So, to seek relief under 60(b)(6), Rtskhiladze must demonstrate not only that this Privacy Act analysis was erroneous, but also that any error presents the rare circumstance where relief from judgment is warranted.  Rtskhiladze does not even attempt to argue that the circumstances here justify such an extraordinary intervention.  To the best of the Court's understanding, Rtskhiladze's argument essentially focuses on the totality of the circumstances—combining his new claim about Ms. Rhee's supposed conflict of interest with several recycled arguments about the purported inaccuracies, omissions, and improper shading in Footnote 112.  In Rtskhiladze's telling, these inaccuracies amount to defamation by implication, and Rhee's involvement suggests that they were inserted in flagrant disregard of his rights.  See Reply at 6.  The Court rejects this effort, as Rtskhiladze has not plausibly alleged any misconduct on Rhee's part nor offered any reason for the Court to revisit its past Privacy Act analysis.

To begin, Rtskhiladze has not plausibly alleged that Ms. Rhee participated in any grand conspiracy on behalf of Hillary Clinton, nor that any alleged defamation against him in Footnote 112 of the Mueller Report was the result of such a conflict of interest.  Again, all Rtskhiladze has to suggest a conflict of interest on Rhee's part is that she separately represented Hillary Clinton and the Clinton Foundation in other matters while in private practice, and that she donated to

Hillary Clinton's presidential campaign.  Even if this were enough to substantiate ongoing ties between Ms. Rhee and Ms. Clinton, it would not cast any aspersions on Rhee's work for Special Counsel Mueller.  As the government points out, the Special Counsel was appointed to investigate "the Russian government's efforts to interfere in the 2016 presidential election"—not to investigate "the conduct of Clinton's presidential rival" or work on former-candidate Clinton's behalf.  Opp'n at 16.  The conspiracy Rtskhiladze has concocted is thus doubly attenuated—both in the strength of the link between Ms. Rhee and Ms. Clinton, and the relevance of any Clinton ties to the course of the Special Counsel's investigation generally and the drafting of Footnote 112 specifically.  It therefore offers no support to Rtskhiladze's effort to satisfy the Privacy Act's intent element.  See Iqbal, 556 U.S. at 679 (outlining plausibility standard).

Rtskhiladze tries to shore up his conspiracy claim by tying it to the same alleged errors and omissions in Footnote 112 that he presented to the Court during the last round of briefing. See Reply at 7–10.  For instance, he points out that Rhee questioned him about whether he was a "Russian businessman" even after he had testified earlier about his ties to Georgia and the United States.  See id. at 7.  He suggests that, "[a]bsent intentional or willful misconduct, there is simply no way" this mistake could be made.  Id.  Rtskhiladze similarly suggests that Rhee's conflict of interest is a plausible explanation for Footnote 112's omission of some of the content and context of a text exchange he had with Michael Cohen, Trump's then-attorney, about rumored compromising material circulating in Russia.  Id. at 7–9.  The Court has already rejected both of these arguments as the basis for Rtskhiladze's Privacy Act claim.  See MTD Op. at 29 (explaining that "mere drafting error" was the "much more obvious explanation" for mistake as to Rtskhiladze's nationality); id. (holding that Rtskhiladze's concession of the accuracy of a substantially similar description of the text exchange in the Senate Report doomed his claim that

the framing in Footnote 112 was the product of intentional or willful misconduct[3]).  Nothing

Rtskhiladze has presented about Ms. Rhee calls into question any of this reasoning.

In sum, Rtskhiladze's attenuated and wholly unsupported allegation of a vast conspiracy

between one of the Special Counsel's Office's prosecutors, an unnamed Democratic party

operative, and former candidate Clinton is not enough to make his claim plausible.  See Iqbal,

556 U.S. at 679.  It therefore does not present the kind of "extraordinary" circumstance that

justifies relief under Rule 60(b)(6).  Twelve John Does, 841 F.2d at 1140.

### III.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [37] Plaintiff's Motion Under Rule 60(b)(2) & (6) for Relief from the

Final Judgment, Dated September 1, 2021, as to the Claim for Damages under the Privacy Act is

DENIED with prejudice.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  August 1, 2022

_____

[3] In a footnote, Rtskhiladze objects to the Court's past reliance on his admission that the Senate Report is accurate.  See 60(b) Mot. at 19 n.60.  In so doing, Rtskhiladze again concedes that the report is accurate, but says it operated as a functional "retraction" of the inaccuracies in Footnote 112.  Because a retraction is not enough to avoid retrospective damages, Rtskhiladze contends the Court erred in using the Senate Report to dismiss his Privacy Act claim.  This argument ignores the substantive similarities the Court found between Footnote 112 and the Senate Report.  Because the two documents paint substantially the same picture of Rtskhiladze's conduct, the Court did not—and could not—treat the latter as a retraction of the former.  Instead, the Court used Rtskhiladze's concession to substantially narrow the scope of his challenge to how he was depicted in Footnote 112.  Rtskhiladze's continued concession that the Senate Report is accurate therefore still undermines much of his Privacy Act claim.