**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GIORGI RTSKHILADZE, | |
|                 Plaintiff, | |
|    v. | |
| ROBERT S. MUELLER, III<br>*in his individual capacity*, | Case No. 1:20-cv-1591-CRC |
| and | |
| UNITED STATES DEPARTMENT OF<br>JUSTICE | |
|               Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT UNITED STATES'
RENEWED MOTION TO DISMISS AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 1

I.      The Mueller Report ................................................................................................ 1

II.     Procedural History ................................................................................................ 3

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

I.      Mr. Rtskhiladze Fails to State a Claim Under the APA (Count II). .................... 6

    A. The Mueller Report Is Not Final Agency Action. ........................................... 6

    B. Even If the Mueller Report Was a Final Agency Action, It Is Exempt From the APA
    Because It Is Committed to Agency Discretion ............................................. 12

    C. Mr. Rtskhiladze Fails to State a Claim Under the Declaratory Judgment Act. ............ 13

II.     Mr. Rtskhiladze Fails to State a Claim Under the Privacy Act (Count III). ..................... 15

CONCLUSION ................................................................................................................. 17

## **TABLE OF AUTHORITIES**

### **Cases**

*Aerosource, Inc. v. Slater*,
142 F.3d 572 (3d Cir. 1998)................................................................................... 9

*Ali v. Rumsfeld*,
649 F.3d 762 (D.C. Cir. 2011)............................................................................. 13

*\*Armstrong v. Geithner*,
608 F.3d 854 (D.C. Cir. 2010)............................................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................. 5

*Bartel v. FAA*,
725 F.2d 1403 (D.C. Cir. 1984)........................................................................... 16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................. 6

*Bender v. Jordan*,
612 F. Supp. 2d 62 (D.D.C. 2009)....................................................................... 17

*\*Bennett v. Spear*,
520 U.S. 154 (1997)........................................................................................... 6, 8

*Boone v. MountainMade Found.*,
684 F. Supp. 2d 1 (D.D.C. 2010)......................................................................... 14

*Crumpton v. United States*,
843 F. Supp. 751 (D.D.C. 1994), *aff'd on other grounds sub nom. Crumpton v. Stone*, 59 F.3d
1400 (D.C. Cir. 1995)........................................................................................... 16

*CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*,
637 F.3d 408 (D.C. Cir. 2011)............................................................................. 11

*FAA v. Cooper*,
566 U.S. 284 (2012)............................................................................................. 15

*Flue-Cured Tobacco Coop. Stab. Corp. v. EPA*,
313 F.3d 852 (4th Cir. 2002) ..................................................................... 9, 11, 13

*Guerrero v. Clinton*,
157 F.3d 1190 (9th Cir. 1998) ............................................................................ 9, 11

*Hawkins v. Wash. Metro. Area Transit Auth.*,
    311 F. Supp. 3d 94 (D.D.C. 2018) ............................................................................ 5

*Hearst Radio, Inc. v. FCC*,
    167 F.2d 225 (D.C. Cir. 1948) ................................................................................. 7

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .................................................................................... 6, 12, 13

*Henke v. Dep't of Commerce*,
    83 F.3d 1453 (D.C. Cir. 1996) ............................................................................ 15, 16

*Indus. Safety Equip. Ass'n, Inc. v. EPA*,
    837 F.2d 1115 (D.C. Cir. 1988) ............................................................................... 7

*Invention Submission Corp. v. Rogan*,
    357 F.3d 452 (4th Cir. 2004) ............................................................................... 9, 11

*Joshi v. Nat'l Transp. Safety Bd.*,
    791 F.3d 8 (D.C. Cir. 2015) ..................................................................................... 9

*Krieger v. DOJ*,
    529 F. Supp. 2d 29 (D.D.C. 2008) ......................................................................... 16

*Lee v. Geren*,
    480 F. Supp. 2d 198 (D.D.C. 2007) ....................................................................... 16

*Maydak v. United States*,
    630 F.3d 166 (D.C. Cir. 2010) ............................................................................... 15

*McCready v. Nicholson*,
    509 F. Supp. 2d 22 (D.D.C. 2007) ......................................................................... 15

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ............................................................................................... 14

*Paige v. DEA*,
    665 F.3d 1355 (D.C. Cir. 2012) ........................................................................ 15, 16

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) ......................................................................... 8, 9, 11

*Rtskhiladze v. Mueller* (*Rtskhiladze I*),
    No. 20-CV-1591 (CRC), 2021 WL 3912157 (D.D.C. Sept. 1, 2021), *aff'd in part, rev'd in part*, 110 F.4th 273 (D.C. Cir. 2024) .......................................................... 1, 4, 8, 15

iv

*Rtskhiladze v. Mueller (Rtskhiladze II)*
    110 F.4th 273 (D.C. Cir. 2024) ............................................................. 1, 5, 15

*Schering Corp. v. Heckler*,
    779 F.2d 683 (D.C. Cir. 1985) ................................................................ 13

*Sierra Club v. Jackson*,
    648 F.3d 848 (D.C. Cir. 2011) ................................................................ 13

*Sofi Classic S.A de C.V. v. Hurowitz*,
    444 F. Supp. 2d 231 (S.D.N.Y. 2006) ..................................................... 14

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ........................................................ 9, 11-12

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) .............................................................................. 14

## Statutes

5 U.S.C. § 551(13) ................................................................................... 7, 8

5 U.S.C. § 552a ...................................................................................... 4, 15

5 U.S.C. § 701(a)(2) ............................................................................... 6, 12

5 U.S.C. § 704 ........................................................................................... 6

5 U.S.C. § 706 ........................................................................................... 6

5 U.S.C. §§ 701-706 ................................................................................... 6

28 U.S.C. § 510 ..................................................................................... 6, 13

## Rules

Fed. R. Civ. P. 12(b)(6) .............................................................................. 15

## Administrative and Executive Materials

28 C.F.R. pt. 600 ................................................................................... 2, 8

28 C.F.R. § 600.8(c) ......................................................................... 2, 10, 12

28 C.F.R. § 600.10 .................................................................................... 10

**Other Authorities**

10B Charles Alan Wright, Arthur R, Miller, Adam N. Steinman & Mary Kay Kane, Federal
    Practice & Procedure. § 2751 (4th ed. June 2024 update)........................................................ 14

Dep't of Just., DOJ Systems of Records (updated Dec. 10, 2024),
    https://www.justice.gov/opcl/doj-systems-records ...................................................................... 17

Office of the Deputy Attorney General, Dep't of Justice, Order No. 3915-2017, Appointment of
    Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and
    Related Matters (May 17, 2017),
    https://www.justice.gov/archives/opa/press-release/file/967231/dl ........................................... 2

Robert S. Mueller, III, Dep't of Justice, Report on the Investigation into Russian Interference in
    the 2016 Presidential Election (2019)
    https://www.justice.gov/d9/report.pdf ............................................................................. 2, 3, 10

**INTRODUCTION**

In this case, Giorgi Rtskhiladze seeks to challenge one footnote in former Special Counsel Mueller's Report on the Investigation into Russian Interference in the 2016 Presidential Election (Mueller Report). Mr. Rtskhiladze's amended complaint raised a variety of theories and sought $100 million in damages. This Court appropriately dismissed Mr. Rtskhiladze's claims for monetary damages, including all of his claims against Robert S. Mueller, III. *Rtskhiladze v. Mueller* (*Rtskhiladze I*), No. 20-CV-1591 (CRC), 2021 WL 3912157, at *13-15 (D.D.C. Sept. 1, 2021), ECF No. 32, *aff'd in part, rev'd in part*, 110 F.4th 273 (D.C. Cir. 2024). As to Mr. Rtskhiladze's claims for prospective and injunctive relief, this Court dismissed them on standing grounds without reaching the additional arguments raised in the United States' motion to dismiss. *Id.* at *8-13.

Now, on remand from the D.C. Circuit, the only claims remaining are Mr. Rtskhiladze's claims for declaratory and injunctive relief against the Department of Justice under the Administrative Procedure Act (APA), Declaratory Judgment Act, and Privacy Act. Dismissal remains appropriate because the Mueller Report is not a final agency action reviewable under the APA and is committed to agency discretion, the Declaratory Judgment Act claim is not a stand-alone claim and fails for the same reasons as the APA claim, and the report is not a record maintained in a system of records and thus subject to the Privacy Act.

**BACKGROUND**

**I.    The Mueller Report**

On May 17, 2017, Robert S. Mueller III was appointed as Special Counsel to investigate "any links and/or coordination between the Russian government and individuals associated with

the campaign of President Donald Trump" and any other matters arising directly from that investigation. Office of the Deputy Attorney General, Dep't of Justice, Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017), https://www.justice.gov/archives/opa/press-release/file/967231/dl. The Office of the Special Counsel was a component of DOJ and federal regulations govern the powers and responsibilities of the Special Counsel. *See* 28 C.F.R. pt. 600. In particular, the regulations require that: "At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel." 28 C.F.R. § 600.8(c). Under this regulation, Special Counsel Mueller submitted his two-volume report to the Attorney General on March 22, 2019. DOJ first publicly released a redacted version of the report on April 18, 2019. *See* Mueller Report.[1]

The Mueller Report mentions Mr. Rtskhiladze by name in both volumes, with his name appearing 27 times, on six separate pages and in eight footnotes in the public version of the report. Mueller Report, Vol. I at ii, 69-70 & n.313-18; Vol II at 27-28 n.112, 138 n.945; Appendix B at B-9. Mr. Rtskhiladze objects to his appearance in just one of these footnotes, which states:

> Comey 1/7/17 Memorandum, at 1-2; Comey 11/15/17 302, at 3. Comey's briefing included the Steele reporting's unverified allegation that the Russians had compromising tapes of the President involving conduct when he was a private citizen during a 2013 trip to Moscow for the Miss Universe Pageant. During the 2016 presidential campaign, a similar claim may have reached candidate Trump. On October 30, 2016, Michael Cohen received a text from Russian businessman Giorgi Rtskhiladze that said, "Stopped flow of tapes from Russia but not sure if there's anything else. Just so you know . . . ." 10/30/16 Text Message, Rtskhiladze

---

[1] Volume I, II and the appendices are available at https://www.justice.gov/d9/report.pdf.

to Cohen. Rtskhiladze said "tapes" referred to compromising tapes of Trump rumored to be held by persons associated with the Russian real estate conglomerate Crocus Group, which had helped host the 2013 Miss Universe Pageant in Russia. Rtskhiladze 4/4/18 302, at 12. Cohen said he spoke to Trump about the issue after receiving the texts from Rtskhiladze. Cohen 9/12/18 302, at 13. Rtskhiladze said he was told the tapes were fake, but he did not communicate that to Cohen. Rtskhiladze 5/10/18 302, at 7.

Mueller Report, Vol. II at 27-28, n.112 (Footnote 112) (omission in Mueller Report).

Mr. Rtskhiladze has two concerns regarding alleged inaccuracies in this footnote. He alleges that: (1) he was incorrectly described as a "Russian businessman," though he immigrated to the United States from the Republic of Georgia in the former Soviet Union;[2] Am. Compl. ¶ 30, ECF No. 19-1, and (2) the text message was misquoted, because it should have read "Stopped flow of some tapes from Russia" rather than "Stopped flow of tapes from Russia"[3] (underline added) and the text message should have been quoted in the context of additional text messages, Am. Compl. ¶¶ 31-33.

## II.    Procedural History

Mr. Rtskhiladze filed suit in June 2020, Compl., ECF No. 1, and amended his complaint in August 2020, Am. Compl., ECF No. 19-1.

---

[2] In the glossary, Mr. Rtskhiladze is described as an "Executive of the Silk Road Transatlantic Alliance, LLC who communicated with [Michael] Cohen about a Trump Tower Moscow proposal." Mueller Report, Appendix B at B-9. In Volume I, Mr. Rtskhiladze is described as "a business executive who previously had been involved in a development deal with the Trump Organization in Batumi, Georgia" and who "had pursued business ventures in Moscow." Mueller Report, Vol. I at 70. Mr. Rtskhiladze does not object to these characterizations.

[3] Mr. Rtskhiladze also alleges that the text message was misquoted in footnote 112 because it should have read "Just so u know." rather than "Just so you know . . . ," (underline added) although whether Mr. Rtskhiladze alleges that this difference has legal significance is unclear. Am. Compl. ¶ 33.

The Amended Complaint advanced four claims: two seeking damages and two seeking prospective and injunctive relief. For damages, the Amended Complaint raised (1) a defamation claim against former Special Counsel Mueller in his personal capacity, Am. Compl. ¶¶ 1, 70, and (2) a claim for damages under the Privacy Act, Am. Compl. ¶¶ 77-79. *See also Rtskhiladze I*, 2021 WL 3912157, at *4. For prospective and injunctive relief, the Amended Complaint raised (1) a claim seeking a "name-clearing" hearing under the APA and Declaratory Judgment Act, Am. Compl. ¶¶ 1, 73-74, and a (2) claim seeking amendment of the Mueller Report under the Privacy Act, Am. Compl. ¶¶ 75-76. *See also Rtskhiladze I*, 2021 WL 3912157 at *4. In addition, Mr. Rtskhiladze filed in May 2020 a request to DOJ under the Privacy Act to amend Footnote 112 to "delete all references" to him, Am. Compl. ¶ 64, which was denied that same month because DOJ does not maintain the Mueller Report in a "system of records" and therefore it is not subject to amendment under the Privacy Act. Am. Compl. ¶ 65; *see* Ex. A, Privacy Act Correspondence at 11-12.

As to the damages claims, this Court dismissed any claim by Mr. Rtskhiladze against former Special Counsel Mueller, whether characterized as a *Bivens* claim or as a claim for a name-clearing hearing under the Declaratory Judgment Act. *Rtskhiladze I*, 2021 WL 3912157 at *14. This Court also held that Mr. Rtskhiladze's claim for damages under the Privacy Act failed because he had not plausibly alleged that "the agency acted in a manner which was intentional or willful." *Id.* at *13 (citing 5 U.S.C. § 552a(g)(4)). To the extent Mr. Rtskhiladze later attempted to argue that he had brought any other damages claim against DOJ, such as a "defamation-plus claim," the Court also dismissed those claims. *Id.* at *15.

As to the claims seeking prospective and injunctive relief, this Court held that Mr. Rtskhiladze lacked standing, *id.* at *6-13, and did not reach the United States' additional

arguments that Mr. Rtskhiladze failed to state a claim under the APA, Declaratory Judgment Act, or Privacy Act. DOJ MTD at 10-17, ECF No. 20.

On appeal, the D.C. Circuit affirmed the dismissal of Mr. Rtskhiladze's claims for damages, including all claims against former Special Counsel Mueller.[4] *Rtskhiladze v. Mueller* (*Rtskhiladze II*), 110 F.4th 273, 275, 278-79 (D.C. Cir. 2024). The D.C. Circuit concluded that Mr. Rtskhiladze had standing, however, *id.* at 277-78, and, accordingly, remanded for further consideration of his claims for prospective and injunctive relief, *id.* at 275.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege enough facts to state a claim for relief that is facially plausible. *See, e.g.*, *Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 100 (D.D.C. 2018). Although a court must construe the complaint in the plaintiff's favor, "[c]onclusory allegations . . . are not entitled to an assumption of truth, and even allegations pleaded with factual support need only be accepted insofar as 'they plausibly give rise to an entitlement of relief.'" *Id.* at 100-01 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). This plausibility showing "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and it "asks for more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Legal conclusions, "naked assertions devoid of further factual enhancement," and "a formulaic

---

[4] *See also Rtskhiladze II*, 110 F.4th at 275 n.2 ("Rtskhiladze brought a separate damages claim against DOJ and Special Counsel Mueller personally. But the district court held that Rtskhiladze abandoned this claim before appeal, and in any event, he forfeited all arguments about this claim in his appellate brief.").

recitation of the elements of a cause of action" are legally insufficient to state a plausible claim.

*Id.*(cleaned up) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## ARGUMENT

### I.    Mr. Rtskhiladze Fails to State a Claim Under the APA (Count II).

The APA, 5 U.S.C. §§ 701-706, establishes a waiver of sovereign immunity and a cause

of action for injunctive relief for parties adversely affected by agency action. *See* 5 U.S.C.

§ 706(1)-(2); *see also Heckler v. Chaney*, 470 U.S. 821, 828 (1985). The APA permits judicial

review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C.

§ 704; *Bennett v. Spear*, 520 U.S. 154 (1997). Under the APA, a court must "hold unlawful and

set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory

authority, *id.* § 706(2)(C), or "without observance of procedure required by law," *id.*

§ 706(2)(D). And the APA explicitly excludes from judicial review those agency actions that are

"committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Mr. Rtskhiladze fails to state a claim under the APA because the Mueller Report is not a

reviewable final agency action, and even if it were, its development and decisions regarding its

contents are committed to agency discretion by law. Mr. Rtskhiladze also brings a claim under

the Declaratory Judgment Act, 28 U.S.C. § 510, Am. Compl. ¶¶ 73-74, which fails for the same

reasons.

### A.    The Mueller Report Is Not Final Agency Action.

To state a claim under the APA, a plaintiff must challenge a covered "agency action"

and, unless another statute permits review, the agency action must be "final." 5 U.S.C. § 704.

Mr. Rtskhiladze's attempt to challenge the Mueller Report under the APA fails on both counts—

the report does not meet the statutory definition of "agency action," and, even if it did, it does not constitute "final agency action" because it does not result in legal consequences for Mr. Rtskhiladze.

As an initial matter, "agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Although this definition is broad, it is not all-encompassing. *See Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1120 (D.C. Cir. 1988) ("Clearly Congress did not intend that the APA definition of a rule be construed so broadly that every agency action would be subject to judicial review.").

The Mueller Report falls into none of these categories. The D.C. Circuit has concluded that similar reports issued by agencies fall outside reviewable agency action. For example, the D.C. Circuit concluded that a Federal Communications Commission report that discussed the services of broadcast stations after the transfer of ownership was not "agency action" subject to APA review. *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948). (In fact, the D.C. Circuit reached that conclusion even accepting for the purposes of the motion to dismiss that the report was false, libelous, and caused actual damages to the owner of a station. *Id.*). Similarly, in *Industrial Safety Equipment*, the D.C. Circuit concluded that an Environmental Protection Agency report evaluating the effectiveness of respirators was not a reviewable agency action. *See Indus. Safety Equip.*, 837 F.2d at 119-21 (examining the types of agency action listed at 5 U.S.C. § 551(13), determining that the report could only arguably to considered either a "sanction" or "rule," and concluding (1) that it was not a rule because it was "advisory," "[did] not change any law or official policy presently in effect," and was not published in the Federal Register or Code of Federal Regulations, and (2) that it was not a sanction because it was not

7

"intended to penalize producers or consumers" of criticized respirators). Like these reports, the Mueller Report was provided, pursuant to 28 C.F.R. pt. 600, to explain the Special Counsel's separate prosecution and declination decisions. It did not change any law or official policy, was not published in the Federal Register or Code of Federal Regulations, and was not intended to penalize anyone. It is thus neither a "rule" nor a "sanction" nor any other reviewable agency action listed in 5 U.S.C. § 551(13).[5]

In any event, even if the Mueller Report were a reviewable type of agency action, it is not a *final* agency action. In *Bennett v. Spear*, the Supreme Court held that two conditions must be satisfied for a plaintiff to make the threshold showing of final agency action: First, the action must mark the "consummation" of the agency's decision making process—it must not be of a merely tentative or interlocutory nature. 520 U.S. 154, 177-78 (1997) (citation omitted). Second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Id*. (citation omitted). "Agency action is considered final to the extent that it imposes an obligation, denies a right, or fixes some legal relationship." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003).

Courts repeatedly have held that agency reports, opinions, press releases, and similar publications do not constitute final agency action under the APA. For example, the D.C. Circuit has held that a letter sent by the Consumer Protection Safety Commission to a manufacturer after an investigation into its product—where the letter conveyed the agency's preliminary conclusion

---

[5] Indeed, the flaw in Mr. Rtskhiladze's attempted APA challenge to the Mueller Report is further demonstrated by his characterization of it as a "name-clearing" claim. *Compare, e.g.*, Am. Compl. ¶¶ 73-74, *with Rtskhiladze I*, 2021 WL 3912157 at *14 n.5 (noting that "[a name-clearing] hearing is typically the equitable remedy ordered as redress for a so-called 'stigma-plus' or 'reputation-plus' claim brought under the Fifth Amendment").

that the product presented a substantial hazard and requested voluntary corrective action—was not a final agency action because it carried no legal consequences, despite the likely practical consequences of the letter. *See Reliable Automatic Sprinkler Co.*, 324 F.3d at 732 ("No legal consequences flow from the agency's conduct to date, . . . [t]o be sure, there may be practical consequences, namely the choice Reliable faces between voluntary compliance with the agency's request for corrective action and the prospect of having to defend itself in an administrative hearing should the agency actually decide to pursue enforcement. But the request for voluntary compliance clearly has no legally binding effect."); *Trudeau v. FTC*, 456 F.3d 178, 189 (D.C. Cir. 2006) (observing that "we have never found a press release of the kind at issue here to constitute 'final agency action' under the APA"); *cf. also Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11 (D.C. Cir. 2015) (investigative report that identified a pilot as the likely cause of an accident was not a "final order" because it carried no legal consequences, despite the assertion of reputational, emotional, and financial harm).

Other courts agree with the D.C. Circuit. In *Guerrero v. Clinton*, 157 F.3d 1190 (9th Cir. 1998), the Ninth Circuit refused to review the adequacy of an agency's report to Congress, explaining that the report was not final agency action because it was "purely informational" and had "no legal consequences." *Id.* at 1194-95; *see also Invention Submission Corp. v. Rogan*, 357 F.3d 452, 453 (4th Cir. 2004) (Patent and Trademark Office advertising campaign alerting consumers to invention promotion scams did not constitute final agency action); *Flue-Cured Tobacco Coop. Stab. Corp. v. EPA*, 313 F.3d 852, 854 (4th Cir. 2002) (EPA report classifying environmental tobacco smoke as a carcinogen was not final agency action); *cf. Aerosource, Inc. v. Slater*, 142 F.3d 572, 579-80 (3d Cir. 1998) (FAA reports warning the aviation community that the plaintiff may have improperly maintained aircraft parts were not final orders).

The Mueller Report is like these other reports and is not, therefore, final agency action under the APA. It neither imposes obligations on nor denies rights to Mr. Rtskhiladze. It does not alter the legal relationship between the DOJ and Mr. Rtskhiladze in any way. The Mueller Report itself explains its purview and purpose: "This report is submitted to the Attorney General pursuant to 28 C.F.R. § 600.8(c)" and "[Volume II] of our report summarizes our obstruction-of-justice investigation of the President." Mueller Report, Vol. II at 1. As a report—to wit, a document that the Special Counsel is required to provide to the Attorney General at the "[c]losing" of an investigation to explain prosecutorial decisions that the Special Counsel made during the course of the investigation, 28 C.F.R. § 600.8(c)—the Mueller Report does not purport to take any action against anyone. It describes the "factual results" of the investigation and any charging decisions that were made, after those decisions were made and implemented. Mueller Report, Vol. I at 2-3.

Indeed, the regulations governing the Special Counsel's Office specifically do not "create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative." 28 C.F.R. § 600.10. The Mueller Report, which summarizes events and legal conclusions after prosecutorial and investigative decisions were made, did not create any rights or obligations for anyone, let alone for Mr. Rtskhiladze himself. It is, therefore, not a final agency action for purposes of the APA.

Even if Mr. Rtskhiladze could establish injuries to his business affairs or civic duties from Footnote 112, those alleged injuries would not be the type of legal consequences that would make the Mueller Report a final agency action. The D.C. Circuit has rejected the notion that "practical" consequences of an agency report, such as reputational harm or voluntarily changing business practices in responses to a finding, are sufficient to create final agency action. *See, e.g.,*

*Reliable Automatic Sprinkler*, 324 F.3d at 732 (concluding that the agency's letter was not a final

agency action because—despite the likely "practical consequences" on the manufacturer, "the

agency has not yet made any determination or issued any order imposing any obligation on

Reliable, denying any right of Reliable, or fixing any legal relationship" and "[n]o legal

consequences flow from the agency's conduct to date"). At most, Mr. Rtskhiladze's alleged

injuries are the "practical" fallout of the Mueller Report, not "legal" consequences.[6]

Indeed, Congress did not intend for the APA "to create private rights of actions to

challenge the inevitable objectionable impressions created whenever controversial research by a

federal agency is published." *Invention Submission*, 357 F.3d at 459 (quoting *Flue-Cured

Tobacco*, 313 F.3d at 861). If the contrary view were adopted and the accuracy of agency

statements could be challenged based on their persuasive effect, "almost any agency policy or

publication issued by the government would be subject to judicial review." *Flue-Cured Tobacco*,

313 F.3d at 861. "Such policy statements are properly challenged through the political process

and not the courts." *Id.* "Under these circumstances, the presumption of reviewability of agency

action is woefully inapposite." *Guerrero*, 157 F.3d at 1196 (citation omitted).

Because Mr. Rtskhiladze does not, and indeed could not, allege that the Mueller Report

affected his rights or obligations, or altered his legal relationship with the DOJ, it is not a final

agency action. *See, e.g.*, *Reliable Automatic Sprinkler*, 324 F.3d at 372; *Trudeau*, 456 F.3d at

---

[6] Nor does this case come close to the rare case where an agency issues a definitive statement of legal position that will have immediate effect. *Cf. CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412-14 (D.C. Cir. 2011) (finding a final order where an agency issued a definitive statement of position on a purely legal issues which would "imposed an immediate and significant burden" on a regulated entity, putting that entity "to the painful choice between costly compliance and the risk of prosecution at an uncertain point in the future").

189. Thus, Mr. Rtskhiladze's cause of action under the APA should be dismissed for failure to state a claim.

**B.  Even If the Mueller Report Was a Final Agency Action, It Is Exempt From the APA Because It Is Committed to Agency Discretion.**

Even if the Mueller Report was a final agency action—and it is not—an additional reason that it is not subject to APA review is because it is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). An agency action is committed to agency discretion by law if there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830.

The Special Counsel's report is not required or defined by statute, but by DOJ internal regulation. *See* 28 C.F.R. § 600.8(c). Though that regulation requires that the closing report "explain[] the prosecution or declination decisions reached by the Special Counsel," it does not set out any meaningful standard for the Court to determine what facts or evidence are necessary to include in the report to explain those decisions. *Id*. The regulation leaves the contents of the report up to the Special Counsel's discretion. The regulation does not impose any standards regarding accuracy, and the only regulatory guidance regarding the purpose of the report focuses on whether the report provided an explanation of prosecutorial or declination decisions. Even if later events or litigation calls into question the accuracy of a fact relied on in the analysis in the Mueller Report, that does not alter the prosecutorial decisions that were made at the time of the investigation. And there is no meaningful standard for the Court to assess the exercise of the Special Counsel's discretion in how to explain what facts it relied on (regardless of whether those facts may be later proven correct).

Finally, it would be anomalous for this Court to entertain a judicial action over the contents of a single footnote in a report about criminal enforcement determinations, where not

even Mr. Rtskhiladze suggests that the underlying prosecution or declination determinations

could be subject to civil judicial review. Just as those prosecutorial determinations lie well

outside the judicial purview, see *Heckler*, 470 U.S. at 831, drafting determinations about how to

describe and explain those determinations are also unreviewable. *Cf. Schering Corp. v. Heckler*,

779 F.2d 683, 686 (D.C. Cir. 1985) (in civil enforcement context, noting that "an agency

judgment relating to the exercise of its enforcement power presumptively lies beyond the reach

of APA review as an action 'committed to agency discretion by law'"); *Sierra Club v. Jackson*,

648 F.3d 848, 855 (D.C. Cir. 2011) (noting that unless a statute provides "meaningful standards,"

enforcement, or declination of enforcement, is "committed to the agency's discretion" (citation

omitted)). And the APA does not create a private right of action for review of all government

decisions. *See Flue-Cured Tobacco*, 313 F.3d at 861.

The Court lacks meaningful standards to judge the exercise of the Special Counsel's

discretion in selecting information to include in his final report to the Attorney General to

explain his decisions. Thus, even if the Court considers the Mueller Report a final agency action,

Mr. Rtskhiladze still fails to state a claim under the APA, because determining the proper

contents of Mueller Report is committed to the Special Counsel's discretion.

### C.  Mr. Rtskhiladze Fails to State a Claim Under the Declaratory Judgment Act.

Mr. Rtskhiladze also brings a cause of action under the Declaratory Judgment Act, 28

U.S.C. § 510. Am. Compl. ¶¶ 73-74. Such claims must be tethered to some other viable claim for

non-declaratory relief about the same issue; the Declaratory Judgment Act does not create a

stand-alone cause of action. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (The

Declaratory Judgment Act does not itself "provide a cause of action," as the "availability of

[declaratory] relief presupposes the existence of a judicially remediable right." (citation omitted)

(alteration in original)); *cf., e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (declaratory-judgment actions are subject to Article III and require "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). Rather than providing a cause of action, the Declaratory Judgment Act offers a remedy, typically for a potential defendant in action that might otherwise be brought against them, but has not yet been. In other words, "[i]t relieves potential defendants 'from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never.'" 10B Charles Alan Wright, Arthur R, Miller, Adam N. Steinman & Mary Kay Kane, *Federal Practice & Procedure*. § 2751 (4th ed. June 2024 update) (citation omitted). Mr. Rtskhiladze does not allege he is such a potential defendant with regard to the DOJ here.

Furthermore, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). For example, courts may dismiss claims under the Declaratory Judgment Act when those claims are duplicative or redundant of other claims. *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 12 (D.D.C. 2010). Thus, to the extent that Mr. Rtskhiladze's Declaratory Judgment Act claim is duplicative of his APA claim, it should be dismissed as redundant, s*ee Sofi Classic S.A de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action."), *see also Boone*, 684 F. Supp. 2d at 12, but

in any event, the Declaratory Judgment Act should be dismissed because it fails to state a claim

for the same reasons as the APA claim.

## II.    Mr. Rtskhiladze Fails to State a Claim Under the Privacy Act (Count III).

The Privacy Act of 1974, 5 U.S.C. § 552a, establishes "a comprehensive and detailed set

of requirements" for federal agencies that maintain systems of records containing individuals'

personal information. *FAA v. Cooper*, 566 U.S. 284, 287 (2012).

While the Amended Complaint raised several theories under the Privacy Act, in light of

this Court's dismissal of the claims for monetary damages under the Privacy Act, *Rtskhiladze I*,

2021 WL 3912157 at *13-15, and the D.C. Circuit's affirmance of the same, *Rtskhiladze II*, 110

F.4th at 278-79, the only live claim remaining is the claim for amendment under

§ 552a(g)(1)(A), Am. Compl. ¶¶ 75-76.

That amendment claim fails because the Mueller Report is not maintained in a system of

records subject to the Privacy Act. Only records that are maintained within a "system of records"

are subject to amendment claims under the Privacy Act. *See McCready v. Nicholson*, 509 F.

Supp. 2d 22, 27 (D.D.C. 2007) (citing *Henke v. Dep't of Commerce*, 83 F.3d 1453, 1459 (D.C.

Cir. 1996)); *cf. Paige v. DEA*, 665 F.3d 1355, 1359 (D.C. Cir. 2012).

Per the statutory definition, the Mueller Report is not maintained in a Privacy Act system

of records retrieved by plaintiff's name. A "system of records" is defined as "a group of any

records under the control of any agency from which information is retrieved by the name of the

individual or by some identifying number, symbol, or other identifying particular assigned to the

individual." 5 U.S.C. § 552a(a)(5). "A system of records exists only if the information contained

within the body of material is both '*retrievable* by personal identifier' and '*actually retrieved* by

personal identifier.'" *Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010); *see also*

*Paige*, 665 F.3d at 1359 (same); *Henke*, 83 F.3d at 1460 ("[R]etrieval capability is not sufficient to create a system of records."). This definition—which incorporates the requirement that information be "retrieved"—has given rise to the so-called "retrieval rule." What matters is the "agency's actual retrieval practice and policies" not the existence of "retrieval capability." *Lee v. Geren*, 480 F. Supp. 2d 198, 207 (D.D.C. 2007) (citation omitted). Similarly, an unlawful disclosure "must be the result of someone having actually retrieved the record from that system of records" by name or personal identifier. *Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010) (quoting *Bartel v. FAA*, 725 F.2d 1403, 1408 (D.C. Cir. 1984)). Disclosure is not a violation if the "information happens to be contained in the records." *Id.*

The Amended Complaint nowhere alleges that the Mueller Report is indexed by Mr. Rtskhiladze's name or that DOJ's policy or practice is to retrieve information in the Mueller Report by name. *Cf., e.g.*, *Krieger v. DOJ*, 529 F. Supp. 2d 29, 44-45 (D.D.C. 2008) (holding that a record was not maintained in a system of records after Plaintiff offered no facts to suggest a record was indexed by name and that a "search function does not [make it] a system of records"); *Crumpton v. United States*, 843 F. Supp. 751, 755-56 (D.D.C. 1994) (holding that the Privacy Act did not apply to records that contained information about plaintiff, but were not retrieved by name), *aff'd on other grounds sub nom. Crumpton v. Stone*, 59 F.3d 1400 (D.C. Cir. 1995). And, indeed, the Mueller Report is not indexed and retrieved by Mr. Rtskhiladze's name personally, nor by any other identifying number or symbol assigned to his or any other person's name. *See* Ex. A, Privacy Act Correspondence at 2-3 ("I have confirmed OIP's determination that the Report is not maintained in a system of records from which information is retrieved using a personal identifier"); 11 ("The Mueller Report was compiled using various supportive

records," and "it is not maintained in a system of records from which information is retrieved using a personal identifier.").[7]

The Amended Complaint even admits that DOJ released the redacted version of the report to the general public as part of the closing of the Special Counsel's investigation, which is a series of events that cannot plausibly be tied to retrieving the report by Mr. Rtskhiladze's name. Am. Compl. ¶ 28. Confirming this interpretation, DOJ maintains a list of its internal systems of records subject to the Privacy Act, which does not include the Mueller Report. *See* Dep't of Just., DOJ Systems of Records (updated Dec. 10, 2024), https://www.justice.gov/opcl/doj-systems-records.

Because the Mueller Report is not maintained in a Privacy Act system of records, Mr. Rtskhiladze's Amendment Claim under § 552a(g)(1)(A) fails.

## CONCLUSION

For the above-stated reasons, all remaining claims should be dismissed for failure to state a claim.

Dated: December 12, 2024                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            ELIZABETH J. SHAPIRO
                                            Deputy Branch Director

---

[7] In deciding a Rule 12(b)(6) motion to dismiss, a court may consider "documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Bender v. Jordan*, 612 F. Supp. 2d 62, 66 (D.D.C. 2009), *cf.* Am. Compl. ¶¶ 62-68 (referring to Privacy Act correspondence).

JOSHUA E. GARDNER
Special Counsel

*/s/ Rebecca Kopplin*
REBECCA KOPPLIN
Trial Attorney (California Bar No. 313970)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C.  20005
Telephone:  (202) 514-3953
Facsimile:  (202) 616-8470
Email: Rebecca.M.Kopplin@usdoj.gov

*Counsel for the United States*