# EXHIBIT A



**U.S. Department of Justice**

Office of Privacy and Civil Liberties

_____

*Telephone: (202) 514-0208*                    *Washington, D.C. 20530*


August 17, 2020


Mr. Jerome A. Madden, Esq.
The Madden Law Group, PLLC
1455 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20004

     Re:    OPCL No. 20-1306

Dear Mr. Madden:

This letter is in response to your request for appeal of the decision by the U.S. Department of
Justice, Office of Information Policy (OIP), to deny a request to amend certain records pertaining
to your client, Mr. Giorgi Rtskhiladze.

By mail, dated May 26, 2020, you requested that the Department of Justice correct and amend
information pertaining to your client, pursuant to an individual's right to amendment under the
Privacy Act of 1974, as amended ("Privacy Act"). 5 U.S.C. § 552a(d)(2) (2018). Specifically,
you alleged that your client is "wrongfully referenced" in Footnote 112 of the Report on the
Investigation into Russian Interference in the 2016 Presidential Election, Volume II ("the
Report"), and requested all references to him be deleted. Your request to the Department's Mail
Referral Unit was referred to OIP. By letter, dated June 17, 2020, OIP denied your request,
determining that the Report is not contained within a "system of records," as defined by the
Privacy Act, and was therefore not subject to the Privacy Act's right to amendment. See id. §
552a(a)(5), (d). By mail, dated June 21, 2020, you appealed OIP's decision to my office, the
Office of Privacy and Civil Liberties, because we are responsible for reviewing Privacy Act
amendment appeal requests. See id. § 552a(d)(3); 28 C.F.R. § 16.46 (2020).

I have reviewed the information related to your appeal, and have decided to affirm OIP's
decision. The Privacy Act permits an individual to request an amendment to records pertaining to
that individual maintained in a system of records. 5 U.S.C. § 552a(d)(2); Brooks v. Dep't of
Justice, 959 F. Supp. 2d 1, 3 (D.D.C. 2013). A "system of records" exists when two conditions
are met: (1) there is an "indexing or retrieval capability using identifying particulars . . . built into
the system;" and (2) the agency "does, in fact, retrieve records about individuals by reference to
some personal identifier." Off. of Mgt. & Budget, Exec. Off. of the President, Privacy Act
Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,952 (July 9, 1975);
see also Henke v. Dep't of Commerce, 83 F.3d 1453, 1459-461 (D.C. Cir. 1996). After

Mr. Jerome A. Madden, Esq.
Page 2

consultation with Department personnel, I have confirmed OIP's determination that the Report is not maintained in a system of records from which information is retrieved using a personal identifier. As such, OIP is not required by the Privacy Act to amend the information pertaining to your client.

Your assertion that it is "irrelevant" whether the record at issue is maintained in a system of records is without merit. Certain Privacy Act provisions "make explicit that an alleged violation requires that the challenged record be within a system of records." McCready v. Nicholson, 465 F.3d 1, 8 (D.C. Cir. 2006). The Privacy Act's right to access and amend records, 5 U.S.C. § 552a(d), is one such provision. See, e.g., Henke, 83 F.3d at 1459 ("the determination that a system of records exists triggers virtually all of the other substantive provisions of the Privacy Act, such as an individual's right to receive copies and to request amendment of her records."); Barnett v. United States, 195 F.Supp.3d 4, 7 (D.D.C. 2016). Indeed, DOJ regulations are clear that its amendment procedures apply to records "in systems of records maintained by the Department that are retrieved by an individual's name or personal identifier." 28 C.F.R. § 16.40.

The portions of the United States Court of Appeals for the District of Columbia Circuit's decision in McCready to which you cite as supportive of your assertion assessed whether a civil damages action brought under 5 U.S.C. § 552a(g)(1)(C) requires a plaintiff to show that an allegedly inaccurate record was maintained by an agency in a system of records. Questions regarding 5 U.S.C. § 552a(g)(1)(C) are beyond the scope of my administrative review authorities, in accordance with the amendment request procedures enacted by the Privacy Act. See 5 U.S.C. § 552a(d)(2), (g)(1)(A); 28 C.F.R. § 16.46.

If you are dissatisfied with my action on your appeal, you have the right to seek judicial review in accordance with 5 U.S.C. § 552a(g)(1)(A).

Sincerely,


Katherine M. Harman-Stokes
Acting Director


cc:
Office of Information Policy (OIP)
  U.S. Department of Justice
  441 G St. N.W.
  Washington, DC 20530



MADDEN ▼ LAW

Big Law Experience, Small Firm Attention
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004

NOVA 220
22 JUN 2020 PM 4 L

REFERRED
MAIL REFERRAL UNIT

JUN 26 2020

READER #3

Office of Privacy & Civil Liberties
U.S. Department of Justice
145 N Street, N.E., Suite 8W.300
Washington, D.C. 20530

# THE MADDEN LAW GROUP PLLC

1455 Pennsylvania Avenue, NW, Suite 400
Washington, D.C. 20004
(202) 349-9836
TheMaddenLawGroup.com

Jerome A. Madden, Principal
JMadden@TheMaddenLawGroup.com
Admitted: D.C., Ohio

Virginia Whitner Hoptman, Of Counsel
VHoptman@TheMaddenLawGroup.com
Admitted: D.C., VA, MD

Charles Rowan, Of Counsel
CRowan@TheMaddenLawGroup.com
Admitted: D.C., VA

June 21, 2020

*By U.S. Mail and E-Mail PDF Attachment*

Office of Privacy and Civil Liberties (OPCL)
U.S. Department of Justice
Suite 8W.300
Two Constitution Square (2CON)
145 N. Street, N.E.
Washington, D.C. 20530

**Privacy Act Amendment Appeal**

Subject:     Appeal from the Denial of a Request for Redaction of all Information
Related to Giorgi Rtskhiladze in Footnote 112 of the Mueller Report—
Vol. II, Report on the Investigation into Russian Interference in the 2016
Presidential Election

Dear Sir or Madam:

I represent Mr. Giorgi Rtskhiladze, a citizen of the United States, who is wrongfully
referenced in Footnote 112, Volume II, of the Report on the Investigation into Russian
Interference in the 2016 Presidential Election (Report or Mueller Report).  On May 26, 2020, I
requested, on behalf of Mr. Rtskhiladze, that all references to him be removed from Footnote 112
of the Mueller Report.  Exhibit A.  On June 17, 2020, the Office of Information Policy responded
by letter stating that the Office "is unable to grant your request because the record you seek to
amend is not contained within a PA 'system of records.'"  Exhibit B.

I hereby appeal this decision.  The Department of Justice is required to maintain "any
record" concerning an individual with sufficient accuracy, relevance, timeliness, and
completeness.  5 U.S.C. § 552a(g)(1)(C).  A request to amend a "record" is not limited to a
"record" kept in a "system of records."  As the United States Court of Appeals for the District of
Columbia Circuit has held "[t]he text of subsection (g)(1)(C) does not incorporate or otherwise
refer to the Act's definition of a 'system of records' found in § 552a(a)(5)."  *McCready v.*

*Nicholson*, 465 F.3d 1, 10 (D.C. Cir. 2006).  The fact that Footnote 112 of the Report is not maintained in a "system of records," therefore, is irrelevant.

I may be reached at 202-349-9836 (firm telephone number), 703-430-8651 (direct office number), or by email at JMadden@TheMaddenLawGroup.com.

Very truly yours,

JEROME A. MADDEN

Enclosures

# THE MADDEN LAW GROUP PLLC

1455 Pennsylvania Avenue, NW, Suite 400
Washington, D.C. 20004
(202) 349-9836
TheMaddenLawGroup.com

**Jerome A. Madden, Principal**
JMadden@TheMaddenLawGroup.com
Admitted: D.C., Ohio

**Virginia Whitner Hoptman, Of Counsel**
VHoptman@TheMaddenLawGroup.com
Admitted: D.C., VA, MD

**Charles Rowan, Of Counsel**
CRowan@TheMaddenLawGroup.com
Admitted: D.C., VA

May 26, 2020

*By Federal Express and E-Mail PDF Attachment*

FOIA/PA Mail Referral Unit
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001

**Privacy Act Amendment Request**

Subject:     Request for Redaction of all Information Related to Giorgi Rtskhiladze in
Footnote 112 of the Mueller Report—Vol. II, Report on the
Investigation into Russian Interference in the 2016 Presidential Election

Dear Sir or Madam:

I represent Mr. Giorgi Rtskhiladze, a citizen of the United States, who is wrongfully referenced in Footnote 112 of the Report on the Investigation into Russian Interference in the 2016 Presidential Election (Report or Mueller Report). On April 23, 2019, within a few days of the release of the Mueller Report on April 18, 2019, Mr. Rtskhiladze through his then attorney, Scott A. Bolden, sent a letter to Attorney General William Barr (attached) requesting a full and immediate retraction of the Report's false, reckless, misleading inclusion of him in Footnote 112. The Department of Justice (Department) never responded. On May 12, 2020, on behalf of Mr. Rtskhiladze, I sent a second letter to Attorney General Barr renewing the request but received no response.

Pursuant to 5 U.S.C. § 552a(d)(2), I hereby request on behalf of Mr. Rtskhiladze that Footnote 112 be corrected and amended in order to delete all references to him for the following reasons all of which are further discussed in the April 23, 2019 and May 12, 2020 letters to Attorney General Barr:

- Footnote 112 states that Mr. Rtskhiladze is a "Russian businessman." ***That statement is false***. He is an American businessman who—until the publication of Footnote 112—was

engaged in international transactions principally designed to enhance relations between his native country of Georgia and the United States.

- Footnote 112 insinuates that at the time Mr. Rtskhiladze texted Mr. Michael Cohen on October 30, 2016, Mr. Rtskhidaze was aware of compromising and salacious tapes— noted in the unverified Steele Dossier—related to then Mr. Trump's 2013 trip to Moscow in connection with the Miss Universe Pageant. *That implication is patently false.* The Steele Dossier did not become public until sometime in November 2016 after the presidential election and Mr. Rtskhiladze did not then and does not now have any knowledge or information about whether these tapes do or do not exist. The truth is that during a telephone conversation that took place at his home in Connecticut, Mr. Rtskhiladze was told by a friend that he had attended a dinner party in Russia at which another guest—who the friend did not know—was bragging about tapes related to a trip Mr. Trump took to Moscow. Mr. Rtskhiladze passed that information on to Mr. Cohen in the text that was the subject of Footnote 112. *This is triple hearsay and, therefore, highly unreliable*

- Footnote 112 states that Mr. Rtskhiladze was told that the alleged Moscow tapes were fake but he did not pass this information along to Mr. Cohen. *This statement is false.* As noted above, Rtskhiladze had no way of knowing one way or the other whether the tapes even existed let alone whether they were fake. Footnote 112 implies that Mr. Rtskhiladze (i) knew tapes existed; (ii) knew their salacious content; (iii) knew the tapes' content was fake; and (iv) told Mr. Cohen that he somehow took actions to stop compromising videos from becoming public, purposely not mentioning that they were fake. The footnote implies that Mr. Rtskhiladze took these actions to demonstrate that he had provided a valuable service to Mr. Cohen and the Trump campaign. This insinuation is preposterous and cannot be justified when read with the contemporaneous exchange of text messages.

- Footnote 112 asserts that Mr. Rtskhiladze told Mr. Cohen in the October 30, 2016 text that he "Stopped flow of tapes from Russia but not sure if there is anything else. Just so you know." *The Report misquoted Mr. Rtskhiladze's text.* What the text states is "Stopped flow of *some* tapes from Russia but not sure if there is anything else. Will try to dial you tomorrow but *wanted you to be aware*." (emphasis added). These opportunistic alterations may be inferred to have been intentional to bolster a narrative that Mr. Rtskhiladze knew of the existence of the alleged but unverified scandalous tapes related to the 2013 Miss Universe Pageant, when, in fact, as Mr. Rtskhiladze informed the investigation, he did not know whether tapes existed and whether, if they existed, what they purportedly showed and whether they were bona fide.

- *Footnote 112 did not include contemporaneous and inextricably intertwined texts that provide essential context to the exchange.* In response to Mr. Rtskhiladze's text— misquoted in Footnote 112 (see above)—Mr. Cohen responded: "Tapes of what?" Mr.

Rtskhiladze then responded "*Not sure of the content* but *person in Moscow was bragging* had tapes from Russia trip.  Will try to dial you tomorrow but *wanted you to be aware. I'm sure it's no big deal* but there are a lot of stupid people." (emphasis added).  When the entire exchange is read in context, it is plain that all Mr. Rtskhiladze did was pass along pure hearsay without asserting that the hearsay was true, and that all he knew was what a friend told him.  As of October 30, 2016, when the text messages were exchanged, however, what Mr. Rtskhiladze and the public in general knew was that on October 7, 2016 secretly recorded audio recordings of Mr. Trump on the set of Access Hollywood were released into the public domain.  In this context, Mr. Rtskhiladze's comment that he was "sure it's not a big deal" makes sense.  If Mr. Rtskhiladaze had been told by his friend that the tapes recorded perverse and aberrant behavior described in the Steele Report, it is highly unlikely he would have told Mr. Cohen that he was "sure it's not a big deal."

- Not only can the phrase "Stopped flow of some tapes" not be understood without reference to the full exchange of texts, but it cannot be understood without an understanding of the nature of the relationship between Mr. Rtskhiladze and Mr. Cohen.  The two had known each other since 2010 when the Trump Organization expressed interest in building a residential Trump Tower in Georgia.  They had worked together when a Trump Tower in Moscow was proposed.  The repartee in their texts over time reveals that they were friendly business associates.  With this in mind, "Stopped flow of some tapes," given the then recent release of the Access Hollywood tapes, was intended to get a rise out of Mr. Cohen which it did: "Tapes of what?"

Every fact surrounding the texts between Mr. Rtskhiladze and Mr. Cohen was in the possession of the FBI and the special prosecutors.  They had questioned him inside and outside the grand jury for over seventeen hours.  They also were in possession of 25,000 pages of documents he produced in response to the grand jury subpoena—many of which were copies of texts between Mr. Rtskhiladze and Mr. Cohen.  Moreover, as the FBI and special prosecutors were aware, the subject of the October 30 texts was never raised again by either Mr. Rtskhiladze or Mr. Cohen (or anyone else).

When a complete and accurate view of the facts are considered, my client provided no material evidence that would justify his mention in Footnote 112.  For the reasons set forth here and in the letters to the Attorney General, all references to Mr. Rtskhiladze in Footnote 112 are neither accurate, relevant, timely, nor complete and, therefore, all text in Footnote 112 after the second sentence should be deleted.

I encourage you to contact me at 202-349-9836, my direct office number 703-430-8651, or email JMadden@TheMaddenLawGroup.com, to discuss this matter.

3

Very truly yours,

*/s/ Jerry Madden*

JEROME A. MADDEN

Enclosures



**Exhibit B**

**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

June 17, 2020

Jerome A. Madden
The Madden Law Group, PLLC
1455 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20004
JMadden@TheMaddenLawGroup.com

Re:    2020-01339
       DRH:VAV:AF

Dear Jerome A. Madden:

This letter responds to your Privacy Act (PA) amendment request dated May 26, 2020, and received by this Office on June 3, 2020, seeking to correct and amend a Department record that references your client.[1]

Your request has been received by the Office of Information Policy (OIP) of the United States Department of Justice, which processes Freedom of Information Act (FOIA) and PA requests for records it maintains as well as records maintained by the Offices of the Attorney General, Deputy Attorney General (ODAG), Associate Attorney General, Public Affairs, Legislative Affairs, and Legal Policy.

The Privacy Act of 1975 permits an individual to request access to or amendment of records pertaining to that individual that are contained in a system of records, subject to certain exemptions. 5 U.S.C. § 552a (2018). Unlike FOIA records, which include all agency records, a PA "system of records" is limited to "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." § 552a(a)(5). Applicability of the PA depends not on whether the information itself is identifying, but instead on whether the information is retrieved using a personal identifier.

In your letter dated May 26, 2020 you specifically request to amend information referencing your client, Giorgi Rtskhiladze, found in Footnote 112, pages 27 and 28, within Special Counsel Robert Mueller III's <u>Report on the Investigation into Russian Interference in the 2016 Presidential Election</u> (Mueller Report), Volume II. Within your letter you provide detailed information and attachments for your request. However, please be advised, this Office is unable to grant your request because the record you seek to amend is not contained within a PA "system of records." The Mueller Report, which was created by the Special Counsel's Office is maintained by and under the purview of the ODAG. The Mueller Report was compiled using various supportive records and is not itself a PA record. While the Mueller Report includes personally identifying information, it is not maintained in a system of records from which information is retrieved using a personal identifier. Accordingly, the Mueller Report is not a record that can be amended pursuant to the PA.

---

[1] You directed your request to the FOIA/PA Mail Referral Unit (MRU), Justice Management Division, who forwarded it to this Office for handling. The MRU tracking number associated with this request is 393205902560.

-2-

Should you seek additional information on this process, please see the Office of Privacy and Civil Liberties' webpage on PA Amendment requests: https://www.justice.gov/opcl/doj-privacy-act-requests.

If you are not satisfied with this Office's denial of your request, you may administratively appeal to the Office of Privacy and Civil Liberties (OPCL), United States Department of Justice, Suite 8W.300, Two Constitution Square (2CON), 145 N Street NE, Washington, DC 20530. You must make your appeal in writing to the OPCL within sixty days of the date of this response letter denying your request. Your appeal letter may include as much related information as you wish, as long as it clearly identifies the component determination (including the assigned request number, if known) that you are appealing. For the quickest possible handling, you should mark both your appeal letter and the envelope "Privacy Act Amendment Appeal."

Sincerely,

Douglas R. Hibbard
Chief, Initial Request Staff