**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GIORGI RTSKHILADZE,

                Plaintiff,

     v.

ROBERT S. MUELLER, III
*in his individual capacity*,

and

UNITED STATES DEPARTMENT OF
JUSTICE

                Defendants.

Case No.  1:20-cv-1591-CRC

<u>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT UNITED STATES'
RENEWED MOTION TO DISMISS AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.      Plaintiff Fails to State a Claim Under the APA. ................................................. 2

     A.    The Mueller Report, or Its Redaction Decisions, Is Not Final Agency Action. ............. 2

     B.    The Mueller Report, or Its Redaction Decisions, Are Committed to Agency Discretion in Any Event. ............................................................ 4

     C.    In the Absence of Special Statutory Review, APA Review Under 5 U.S.C. § 704 Is Limited to Final Agency Action. ..................................... 6

     D.    Plaintiff Fails to State a Claim Under the Declaratory Judgment Act, References to *Bivens* Notwithstanding. ................................... 6

     E.    Neither the APA Nor the Declaratory Judgment Act Provides for a "Name-Clearing Hearing," Which Is Unwarranted in Any Event. .......................... 7

II.     Plaintiff Also Fails to State a Claim Under the Privacy Act........................................... 11

     A.    Plaintiff Fails to State a Claim Under § 552a(g)(1)(A). ............................................... 11

     B.    Plaintiff Fails to State a Claim Under § 552a(g)(1)(C). ............................................... 13

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Akl v. Sebelius*,
  No. 08-cv-00461, 2011 WL 13273368 (D.D.C. Jan. 13, 2011)................................................ 14

*Ali v. Rumsfeld*,
  649 F.3d 762 (D.C. Cir. 2011) ........................................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................ 10, 15

*Behrens v. Regier*,
  422 F.3d 1255 (11th Cir. 2005) .......................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................ 10, 15

*Bennett v. Spear*,
  520 U.S. 154 (1997)............................................................................................................. 3

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971)............................................................................................................. 7

*Boone v. MountainMade Found.*,
  684 F. Supp. 2d 1 (D.D.C. 2010) ...................................................................................... 7

*Campbell v. District of Columbia*,
  894 F.3d 281 (D.C. Cir. 2018)........................................................................................... 8

*Chambers v. U.S. Dep't of Interior*,
  568 F.3d 998 (D.C. Cir. 2009) .............................................................................. 11, 13, 15

*Chang v. Dep't of Navy*,
  314 F. Supp. 2d 35 (D.D.C. 2004) .................................................................................. 12

*Cohen v. United States*,
  650 F.3d 717 (D.C. Cir. 2011) ........................................................................................... 6

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001).............................................................................................................. 7

*Dick v. Holder*,
  67 F. Supp. 3d 167 (D.D.C. 2014) ......................................................................... 11, 13, 14

*Dickson v. OPM*,
    828 F.2d 32 (D.C. Cir. 1987) ................................................................................ 14

*Doe v. Tenenbaum*,
    127 F. Supp. 3d 426 (D. Md. 2012) ..................................................................... 3, 4

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ............................................................................................... 7

*Haymon v. District of Columbia*,
    610 F. Supp. 3d 101 (D.D.C. 2022) ....................................................................... 8

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ............................................................................................... 5

*Jacobs v. Nat'l Drug Intel. Ctr.*,
    423 F.3d 512 (5th Cir. 2005) ............................................................................... 12

*Jefferson v. Harris*,
    170 F. Supp. 3d 194 (D.D.C. 2016) ..................................................................... 10

*Joshi v. Nat'l Transp. Safety Bd.*,
    791 F.3d 8 (D.C. Cir. 2015) ................................................................................... 4

*Kartseva v. Dep't of State*,
    37 F.3d 1524 (D.C. Cir. 1994) ...................................................................... 8, 9, 10

*Khalid v. Garland*,
    No. 1:21-CV-02307 (CRC), 2023 WL 2561943 (D.D.C. Mar. 16, 2023) ................ 9

*Lea v. District of Columbia*,
    No. CV 22-1396, 2022 WL 3153828 (D.D.C. Aug. 8, 2022) .................................. 9

*Maydak v. United States*,
    363 F.3d 512 (D.C. Cir. 2004) ............................................................................. 14

*McCready v. Nicholson*,
    465 F.3d 1 (D.C. Cir. 2006) ................................................................................. 15

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) ........................................................................... 3, 6

*Rtskhiladze v. Mueller*,
    No. 20-CV-1591 (CRC), 2021 WL 3912157 (D.D.C. Sept. 1, 2021),
    *aff'd in part, rev'd in part and remanded*, 110 F.4th 273 (D.C. Cir. 2024) ........... 7, 8

*Sackett v. EPA,*
    566 U.S. 120 (2012)................................................................................................ 5

*Soundboard Ass'n v. Fed. Trade Comm'n,*
    888 F.3d 1261 (D.C. Cir. 2018)............................................................................. 6

*\*Sussman v. U.S. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007)........................................................................... 11

*Trifax Corp. v. District of Columia,*
    314 F.3d 641 (D.C. Cir. 2003)............................................................................. 10

*\*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006).............................................................................. 4

*Vega v. Lantz,*
    596 F.3d 77 (2d Cir. 2010)................................................................................... 8

*Williams v. Department of Veterans Affairs,*
    104 F.3d 670 (4th Cir. 1997)........................................................................... 11, 12

*Wilson v. McHugh,*
    842 F. Supp. 2d 310 (D.D.C. 2012)...................................................................... 5

**Statutes**

5 U.S.C. § 551(13) .................................................................................................... 2

5 U.S.C. § 552a(e)(5) .............................................................................................. 14

5 U.S.C. § 552a(g)(1)(A) ........................................................................................ 13

5 U.S.C. § 552a(g)(1)(C) ....................................................................... 5, 13, 14, 15

5 U.S.C. § 701(a)(2) .................................................................................................. 4

5 U.S.C. § 704 ....................................................................................................... 5, 6

42 U.S.C. § 1983 ...................................................................................................... 8

**Regulations**

28 C.F.R. § 600.8(c) ................................................................................................. 5

40 Fed. Reg. 28,948 (July 9, 1975)......................................................................... 14

## INTRODUCTION

As Defendant explained in its motion to dismiss, Plaintiff's challenge to a single footnote in former Special Counsel Mueller's Report on the Investigation into Russian Interference in the 2016 Election (Mueller Report) fails for multiple reasons: there is no final agency action reviewable under the Administrative Procedure Act (APA) and the Mueller Report is committed to agency discretion, the Mueller Report is not a record maintained in a system of records retrieved by Mr. Rtskhiladze's name or other identifying information for purposes of the Privacy Act, and the Declaratory Judgment Act does not provide for a stand-alone claim. Mem. Supp. Def.'s Renewed MTD (Def.'s MTD), ECF No. 53-1; Def.'s Notice, ECF No. 54. Plaintiff's opposition fails to meaningfully address these arguments, and instead seeks to recast his claims. But that recasting does not save his Amended Complaint from dismissal for the reasons discussed below.

First, Plaintiff now disclaims that he is challenging the Mueller Report under the APA, and instead characterizes his challenge as directed to the "Attorney General's decision not to redact or make more clear information in Footnote 112 about plaintiff before it was released to the public." Pl.'s Opp'n, at 31, ECF No. 57. But that recasting fails to salvage his claim because any such redaction decisions would likewise not constitute final agency actions and would likewise be committed to agency discretion. For the same reasons, Plaintiff is not entitled to a name-clearing hearing, given that such a claim could only even arguably have been raised in connection with the APA.

As to the Privacy Act, Plaintiff seeks to identify a new Privacy Act claim under § 552a(g)(1)(C), but that claim must fail because no agency has made an adverse decision

against Mr. Rtskhiladze based on the challenged portions of the Mueller Report. And Plaintiff's

existing argument under § 552a(g)(1)(A) of the Privacy Act fails because Plaintiff's Second

Amended Complaint does not even *allege* that the Mueller Report is contained in a system of

records retrievable by Mr. Rtskhiladze's name.

Accordingly, Plaintiff's remaining claims should be dismissed.[1]

## ARGUMENT

### I.    Plaintiff Fails to State a Claim Under the APA.

#### A.    The Mueller Report, or Its Redaction Decisions, Is Not Final Agency Action.

As an initial matter, as previously explained, Def.'s MTD at 7-8, the Mueller Report does

not constitute "agency action" under the APA, much less *final* agency action. This is because the

Mueller Report is not "the whole or a part of an agency rule, order, license, sanction, relief, or

the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  In his opposition, Plaintiff

appears to abandon any APA challenge to the Mueller Report itself, and instead recasts his

challenge as one to the Attorney General's decision "not to redact or make more clear

information in Footnote 112."  Pl.'s Opp'n at 31. But such recasting cannot save his claims.

Any APA challenge to the Attorney General's decisions as to what information to redact

in the Mueller Report fails for the same reasons Plaintiff's APA challenge to the Mueller Report

---

[1] After the filing of Defendant United States' Renewed Motion to Dismiss the Amended
Complaint, ECF No. 53, Plaintiff sought and obtained leave to correct one sentence in the
complaint by filing a Second Amended Complaint. Pl.'s Mot. Correct Compl., ECF No. 56;
Minute Order (Jan. 30, 2025). The arguments in Defendant's Renewed Motion to Dismiss apply
equally to the Second Amended Complaint, and the parties both agree that the Court can
consider Defendant's arguments as applied to the Second Amended Complaint. *See* Pl.'s Opp'n
at 2 n.9 ("Plaintiff proposes and assumes that [Defendant's pending motion to dismiss] will be
treated as on [sic] to dismiss the SAC.").

2

fails: that decision is not agency action because it is not an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act. Plaintiff offers no specific rebuttal to this point.

Beyond the fact that the Mueller Report and decisions reflected in that report are not agency action at all, they are further not "*final* agency action" reviewable under § 704. Final agency action requires both (1) that the action must mark the "consummation" of the agency's decision-making process, and (2) that the action be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

As Defendant previously explained, in the D.C. Circuit agency publications such as reports, opinions, or press releases have not been treated as final agency action. Def.'s MTD at 8-9 (collecting cases). Here, the publication of the Mueller Report is not plausibly final agency action because it does not "impose[ ]an obligation, den[y] a right, or fix[] some legal relationship." *Reliable Auto. Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003). And it follows that if the report is not final agency action, any decisions by the Attorney General that are reflected in that report also are not final agency action.

Plaintiff does not address any of the highly relevant cases addressing agency publications, instead citing a single, out-of-circuit district court case. Pl.'s Opp'n at 32 (citing *Doe v. Tenenbaum*, 127 F. Supp. 3d 426, 460 (D. Md. 2012)). *Doe* addressed a specific statutory scheme, the Consumer Product Safety Improvement Act of 2008 (CPSIA), which required the Consumer Product Safety Commission to establish and maintain a database of information about the safety of consumer products. *Doe*, 127 F. Supp. 3d at 430. The CPSIA included "provisions empowering manufacturers to contest the publication of reports on the ground that they contain

materially inaccurate information." *Id.* at 431. In the specific context of that statutory scheme—and the attendant obligations on the Commission to publish information and avenues for manufacturers to challenge information—the district court in *Doe* concluded that including information in the database "amounts to binding adjudication" and was final agency action. *Id.* at 462.

Here, of course, there is no such detailed statutory scheme governing the contents of the Special Counsel's reports (let alone any scheme dictating any decisions by the Attorney General that may be reflected in those reports), and there is no statutory avenue for entities involved in the report to challenge its accuracy, nor is the inclusion of any particular sentence in the report equivalent to a "binding adjudication." In contrast, as Defendant previously noted, the D.C. Circuit has "never found a press release of the kind at issue here to constitute 'final agency action' under the APA," *Trudeau v. FTC*, 456 F.3d 178, 189 (D.C. Cir. 2006), even when, for example, the agency action took the form of an investigative report that could subject a pilot to reputational and financial harm, *Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11 (D.C. Cir. 2015).

Plaintiff's attempt to recast the putative final agency action as the decision of whether to redact Footnote 112, Pl.'s Opp'n at 32, fails for all of the same reasons—the redactions likewise did not impose obligations, set legal rights, or determine legal relationships.

B. **The Mueller Report, or Its Redaction Decisions, Are Committed to Agency Discretion in Any Event.**

Furthermore, while APA review is available for some final agency actions, it is not available where the agency action is committed to agency discretion by law, 5 U.S.C. § 701(a)(2), which occurs when there is "no meaningful standard against which to judge the

agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see also* Def.'s

MTD at 12-13. That occurs here, where the regulation requiring the Special Counsel's report, 28

C.F.R. § 600.8(c), does not set out any meaningful standard for the Court to determine what facts

or evidence are necessary to include in the report.

Plaintiff cites *Sackett v. EPA*, 566 U.S. 120, 128 (2012), for the proposition that "final

agency decisions that adversely affect individuals are *presumptively reviewable*," Pl.'s Opp'n 33,

but *Sackett* holds no such thing. It does not specifically address "decisions that adversely affect

individuals," and simply holds that "[t]he APA, we have said, creates a 'presumption favoring

judicial review of administrative action,' but as with most presumptions, this one 'may be

overcome . . . .'" *Sackett v. EPA*, 566 U.S. 120, 128 (2012) (citation omitted).

Plaintiff again seeks to focus on the choice of redactions in the Mueller Report rather

than the decision to publish the report, Pl.'s Opp'n at 32-34, but the application of redactions is

equally committed to agency discretion.

Plaintiff does not dispute that 28 C.F.R. § 600.8(c) provides no standard to apply for

either the report as a whole or redaction decisions. Instead, Plaintiff's sole argument is that

Privacy Act provisions, specifically 5 U.S.C. § 552a(g)(1)(C), provide standards to apply. Pl.'s

Opp'n at 32. As discussed below, the Privacy Act does not apply, but, if it did, while that might

theoretically bolster Plaintiff's Privacy Act claim, it would foreclose Plaintiff's APA claim,

because the APA only provides for review of agency action "for which there is no other adequate

remedy in a court."  5 U.S.C. § 704; *see Wilson v. McHugh*, 842 F. Supp. 2d 310, 320 (D.D.C.

2012) ("[B]ecause the APA provides review of final agency action only where 'there is no other

adequate remedy,' 5 U.S.C. § 704, a 'plaintiff cannot bring an independent APA claim

predicated on a Privacy Act violation.'" (citations omitted)). Thus, the Privacy Act does not

provide standards to govern Plaintiff's APA claim.

### C.  In the Absence of Special Statutory Review, APA Review Under 5 U.S.C. § 704 Is Limited to Final Agency Action.

Perhaps in recognition of the problems with his other theories, Plaintiff advances an

"alternative" argument that he may bring a "generic" cause of action under the APA because

there "is no other adequate remedy."  Pl's Opp'n at 30. Plaintiff is mistaken. As the text of § 704

and case law make clear, review under § 704 is available only for challenges to final agency

action or agency action otherwise made reviewable by statute, in addition to restrictions on

review where another adequate remedy exists. *See, e.g.*, *Soundboard Ass'n v. Fed. Trade

Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) ("[W]ithout final agency action, 'there is no

doubt that appellant would lack a cause of action under the APA.'" (quoting *Reliable Auto.

Sprinkler Co.*, 324 F.3d at 731). The case Plaintiff cites, *Cohen v. United States*, 650 F.3d 717,

732 (D.C. Cir. 2011), Pl.'s Opp'n at 30, only addressed whether APA review was foreclosed due

to an adequate remedy elsewhere, not the final agency action requirement, likely because a

previous panel of the D.C. Circuit had already found that the challenged action constituted final

agency action. *Cohen*, 650 F.3d at 722. Thus, Plaintiff must satisfy the final agency action

requirement.

### D.  Plaintiff Fails to State a Claim Under the Declaratory Judgment Act, References to *Bivens* Notwithstanding.

Plaintiff also fails to state a claim pursuant to the Declaratory Judgment Act. Def.'s MTD

at 13-15. The Declaratory Judgment Act does not create a stand-alone cause of action. *Ali v.

Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Furthermore, if Plaintiff's Declaratory Judgment

Act claim is purely duplicative of the APA claim, then it should be dismissed as redundant. *Cf. Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 12 (D.D.C. 2010).

Plaintiff responds by citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 400 (1971). Pl.'s Opp'n at 17 n.71. This response is somewhat opaque, because *Bivens* did not involve the Declaratory Judgment Act and thus does not support any cause of action created by the Declaratory Judgment Act. If Plaintiff seeks to argue that the Court should, by analogy to *Bivens*, read in a new judicially-created cause of action for constitutional violations under the Declaratory Judgment Act, there is no basis for such an innovation. The Supreme Court has specifically considered and rejected an expansion of *Bivens* to encompass suits against federal *agencies*, as opposed to suits against federal *officers*. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69-70 (2001) ("[In] *FDIC v. Meyer*, we unanimously declined an invitation to extend *Bivens* to permit suit against a federal agency, . . . . it is clear that the claim urged by respondent is fundamentally different from anything recognized in *Bivens* or subsequent cases." (citing *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994))). And, of course, Plaintiff did already bring a *Bivens* claim against former Special Counsel Mueller in this case, which this Court has already dismissed. *Rtskhiladze v. Mueller*, No. 20-CV-1591 (CRC), 2021 WL 3912157, at *14-15 (D.D.C. Sept. 1, 2021), ECF No. 32, *aff'd in part, rev'd in part and remanded*, 110 F.4th 273 (D.C. Cir. 2024).

### E. Neither the APA Nor the Declaratory Judgment Act Provides for a "Name-Clearing Hearing," Which Is Unwarranted in Any Event.

Plaintiff's opposition makes numerous references to seeking a name-clearing hearing. Pl.'s Opp'n at 17-20. A name-clearing hearing is "typically the equitable remedy ordered as redress for a so-called 'stigma-plus' or 'reputation-plus' claim brought under the Fifth

Amendment." *Rtskhiladze*, No. 20-CV-1591, 2021 WL 3912157, at *14 n.5, and, indeed, the

portions of Plaintiff's opposition discussing the name-clearing hearing also discuss stigma-plus

and reputation-plus claims at length, Pl.'s Opp'n 17-20.

As an initial matter, it is clear from all versions of the complaint that any argument for a

name-clearing hearing relates to the APA and Declaratory Judgment Act. *See* 2AC at 28

(describing Count II as a "Name-Clearing Claim under the Administrative Procedure Act and the

Declaratory Judgment Act"), ECF No. 56-3; *see also* 2AC at 5 (summarizing Count I, which has

since been dismissed, as "assert[ing] a defamation-plus claim under the Fifth Amendment").

Thus, because Plaintiff's APA and Declaratory Judgment Act claims fail as described

above, *supra* Part I.A-D, no name-clearing hearing is warranted.[2] Based on the organization of

Plaintiff's brief, it appears that Plaintiff does not think the name-clearing hearing relates to the

APA claim, but perhaps instead to the Privacy Act, *see generally* Pl.'s Opp'n, but the Privacy

---

[2] Claims seeking a name-clearing hearing to cure an alleged violation of Fifth
Amendment due process rights are often brought under 42 U.S.C. § 1983, an avenue for raising
constitutional claims against state officers, respectively, as the cases cited by Plaintiff make
clear. *See, e.g.*, *Campbell v. District of Columbia*, 894 F.3d 281, 284 (D.C. Cir. 2018) (section
1983); *Haymon v. District of Columbia*, 610 F. Supp. 3d 101, 106 (D.D.C. 2022) (section 1983);
*Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (section 1983); *Behrens v. Regier*, 422 F.3d 1255,
1258 (11th Cir. 2005) (section 1983).
    Claims alleging a violation of Fifth Amendment due process rights could conceivably
also be brought against federal officers under *Bivens*. *See, e.g.*, *Kartseva v. Dep't of State*, 37
F.3d 1524, 1525 (D.C. Cir. 1994) (analyzing Fifth Amendment claims based on a *Bivens* theory
and on the APA).
    Here, of course, Plaintiff initially attempted to bring a *Bivens* claim against former
Special Counsel Mueller, but that claim was dismissed by this Court and does not form a part of
this case. *Rtskhiladze v. Mueller*, 2021 WL 3912157, at *14.
    In the absence of that *Bivens* claim, it is unclear what statute—other than the APA—
would provide a waiver of sovereign immunity and cause of action to raise an alleged violation
of the Fifth Amendment.

Act is not mentioned in Count II, 2AC at 28, and Plaintiff has identified no caselaw supporting the use of a name-clearing hearing as a Privacy Act remedy.

In any event, even if there was some other cause of action supporting a request for a name-clearing hearing, Mr. Rtskhiladze cannot state a claim for either a stigma-plus claim or reputation-plus claim because he cannot establish the required "plus."

A "reputation-plus" claim "requires 'the conjunction of official defamation,' and the violation of a 'right or status previously recognized by state law,'" whereas a "stigma-plus" claim "differs from [the reputation-plus theory] in that it does not depend on official speech, but on a continuing stigma or disability arising from official action." *Khalid v. Garland*, No. 1:21-CV-02307 (CRC), 2023 WL 2561943, at *4 (D.D.C. Mar. 16, 2023) (citation omitted). Both theories require "alleging an adverse official action." *Lea v. District of Columbia*, No. CV 22-1396, 2022 WL 3153828, at *4 (D.D.C. Aug. 8, 2022).

There are two ways to show such an adverse official action—first, showing that the government *formally* took an action harming the plaintiff's liberty interest, and second, demonstrating that *in practice* the government action excludes the plaintiff from such a wide range of opportunities as to harm a liberty interest. For example, in a case where the allegedly injured liberty interest was the opportunity to obtain future employment, showing that "plus" could take the form of either (1) demonstrating a "change [to plaintiff's] formal legal status" such as "formally or automatically exclude[ing] [plaintiff] from work on some category of future State contracts or from other government employment opportunities," or (2) demonstrating that, in practice, even if the agency's action "does not have this binding effect, [it] nevertheless has the broad effect of largely precluding [plaintiff] from pursuing her chosen career as a Russian translator." *Kartseva*, 37 F.3d at 1528.

Here, Plaintiff's Second Amended Complaint does not allege that the government *formally* changed his status in a way that barred him from enjoying business opportunities. Instead, Plaintiff appears to argue that the effect of the Mueller Report in practice resulted in broadly precluding him from his chosen career "of fostering closer commercial and cultural ties between the United States, Georgia, and former Soviet Bloc satellites." Pl.'s Opp'n at 19. However, Plaintiff's vague assertion that "the publication caused numerous projects to be cancelled, postponed, and or required plaintiff's disassociation," Pl.'s Opp'n at 19, are more akin to the types of allegations found legally insufficient. For example, a court concluded that "[e]ven though [plaintiff's] allegations suffice to show some 'hampering' of his employment prospects, his episodic anecdotes of having had one job offer revoked, having final negotiations terminated in another, and losing a handful of public-speaking opportunities are insufficient to show broad preclusion from continuing his career." *Jefferson v. Harris*, 170 F. Supp. 3d 194, 205-06 (D.D.C. 2016); *see also Kartseva*, 37 F.3d at 1527 (a lack of due process claim "even where [ ] defamation 'undoubtedly . . . impair[s one's] future employment prospects'" (citation omitted)). To successfully show that he had been broadly precluded from his chosen career, Plaintiff "must show that 'the government "has seriously affected, if not destroyed, [their] ability to obtain employment [or contracts] in [their] field,"'" *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003) (citations omitted), which Plaintiff has not done.

Nor need the Court credit, at the motion to dismiss stage, allegations that it finds facially implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For example, Plaintiff asserts that the alleged inaccuracies in footnote 112 "caused the Republic of Georgia . . . to halt the

10

process of granting plaintiff the diplomatic title," Pl.'s Opp'n at 19, despite the fact that

Plaintiff's "native country," 2AC ¶ 6, would certainly have better sources of information than

footnote 112 about Plaintiff's nationality.

## II.    **Plaintiff Also Fails to State a Claim Under the Privacy Act.**

As previously discussed, Plaintiff's Privacy Act claim in Count III also fails, and

Plaintiff's recent effort to introduce a § 552a(g)(1)(C) claim does not change that outcome.

### A.    <u>**Plaintiff Fails to State a Claim Under § 552a(g)(1)(A).**</u>

As Defendant previously explained, Plaintiff fails to state a claim under § 552a(g)(1)(A)

of the Privacy Act because the Mueller Report is not maintained in a Privacy Act system of

records retrieved by Mr. Rtskhiladze's name. *See, e.g.*, *Sussman v. U.S. Marshals Serv.*, 494 F.3d

1106, 1123 (D.C. Cir. 2007) ("[Plaintiff] must show the [agency] improperly disclosed materials

located in records *retrievable* by [plaintiff's] *name* as opposed to someone else's name"). The

D.C. Circuit reached this conclusion in part based on the need to interpret the Privacy Act's

waiver of sovereign immunity narrowly. *Id.* at 1123.

Plaintiff does not contest that this is a required element of a claim under § 552a(g)(1)(A).

Plaintiff seeks to shift the focus to cataloguing what evidence is currently before the Court, Pl.'s

Opp'n at 25-30, but this gets it precisely backwards. The Second Amended Complaint, like the

prior versions of the complaint, nowhere alleges that the Mueller Report is maintained in a

system of seconds retrieved by Mr. Rtskhlidaze's name or other identifying information. *See*

*generally* 2AC. Because that is an essential element of a claim under § 552a(g)(1)(A), any such

claim should be dismissed.

Plaintiff cites out-of-circuit *Williams v. Department of Veterans Affairs*, 104 F.3d 670,

675 (4th Cir. 1997) to support its argument about the need to develop a record, Pl.'s Opp'n at 27-

28, but this Court is bound by the D.C. Circuit, even if its interpretation of the Privacy Act is "narrow[]." *Williams*, 104 F.3d at 674.

Finally, Plaintiff for the first time posits the existence of "information about Plaintiff in another system of records," in addition to the Mueller Report, "that was searchable (and was searched) by name or personal identifier." Pl.'s Opp'n at 29. Plaintiff's theory is based on another out-of-circuit case, *Jacobs v. National Drug Intelligence Center*, and a district court case *Chang v. Department of the Navy*. Pl.'s Opp'n 28-29.

*Jacobs* and *Chang* were both about claims under § 552a(b) for wrongful disclosure, not any part of § 552a(g). *See Jacobs v. Nat'l Drug Intel. Ctr.*, 423 F.3d 512, 517 (5th Cir. 2005); *Chang v. Dep't of the Navy*, 314 F. Supp. 2d 35, 40 (D.D.C. 2004). In that context, understanding the source of information is more salient. *Jacobs* in particular relied upon giving a broad reading to "disclosure." *See Jacobs*, 423 F.3d at 517 ("A myriad of cases has held or assumed that the Act protects against oral disclosures, as well as the nonconsensual dissemination of letters and memoranda containing information from a system of records." (footnotes omitted)).

In contrast, tracing the source of information does not make sense in the context of Plaintiff's claims here—Plaintiff's entire theory of injury is based on the publication of the Mueller Report, specifically. The existence of unknown other records containing similar information would have no relevance to Plaintiff's theory of injury. Nor does Plaintiff allege that he sought amendment of any such additional information. *Cf.* 2AC ¶¶ 62-64 (containing allegations about amendment requests relating to the Mueller Report in particular). This novel theory about the existence of other inaccurate information is also in tension with the assertions in the Second Amended Complaint that Defendant had accurate information elsewhere. *See, e.g.,*

2AC ¶ 30 ("As a result of his cooperation with the Department of Justice and testimony before the grand jury, Special Counsel Mueller and the special prosecutors working for him: . . . knew that plaintiff is a native of Georgia, not Russia . . . .").

### A.  <u>Plaintiff Fails to State a Claim Under § 552a(g)(1)(C).</u>

In addition to discussing a claim under 5 U.S.C. § 552a(g)(1)(A), Plaintiff now also seeks to rely on a claim under § 552a(g)(1)(C). Pl.'s Opp'n at 20-25. Section 552a(g)(1)(C) involves civil remedies where an agency makes an adverse decision about an individual based on an inaccurate record pertaining to them. 5 U.S.C. § 552a(g)(1)(C). The location of this claim in the Second Amended Complaint is somewhat opaque. *Compare* 2AC at 28 (describing Count III as a "Claim under the Privacy Act Seeking the Amendment of Footnote 112"), *with* (5 U.S.C. § 552a(g)(1)(A), the Privacy Act provision allowing civil remedies with respect to the Act's amendment provisions at § 552a(d)(3)).

Assuming such a claim has been pleaded, Plaintiff cannot state a claim under § 552a(g)(1)(C) either because the better view of § 552a(g)(1)(C) is that the adverse decision must be made *by an agency*, not a non-governmental third-party actor. *See, e.g., Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009) ("Central to a cause of action under subsection (g)(1)(C) is the existence of an adverse *agency* determination resulting from inaccurate agency records. Yet [the plaintiff] does not even attempt to identify an adverse determination *by a government agency* that was caused by [the agency's] alleged failure to accurately maintain her records." (emphasis added)); *Dick v. Holder*, 67 F. Supp. 3d 167, 185 (D.D.C. 2014) ("[The plaintiff's] other allegations . . . also do not amount to adverse determinations *by an agency*. . . . Thus, these alleged consequences do not qualify under

§ 552a(g)(1)(C) because they do not rise to the level of a "concrete" determination made *by the agency*." (emphasis added)).

The case Plaintiff cites to the contrary, *Akl v. Sebelius*,[3] No. 08-cv-00461, 2011 WL 13273368 (D.D.C. Jan. 13, 2011), Pl.' Opp'n at 22-23, involved a damages claim and overreads *Dickson v. OPM*, 828 F.2d 32 (D.C. Cir. 1987). *Dickson* ultimately concluded that an adverse determination occurs "whether [made] by OPM *or by another agency*," 828 F.2d at 37 (emphasis added), but did not hold that an adverse determination could be made by a non-government third party. Rather, the better reading is that the civil remedy in § 552a(g)(1)(C) is intended to align with the requirements on an agency in § 552a(e)(5), which require an agency to "maintain all records *which are used by the agency in making any determination* about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5) (emphasis added); *see also* Office of Management and Budget, Privacy Act Guidelines—July 1, 1975, 40 Fed. Reg. 28,948, 28,969 (July 9, 1975) ("An individual may bring an action under [5 U.S.C. § 552a(g)(1)(C)] only if it can be shown that the deficiency in the record resulted in an adverse determination by the agency which maintained the record, on the basis of the record."); *cf. Maydak v. United States*, 363 F.3d 512, 518 (D.C. Cir. 2004) (considering OMB's Guidelines).

Indeed, other courts have refused to read § 552a(g)(1)(C) as applying to adverse decisions by non-governmental third parties, such as "lost outside employment opportunities, being shunned by neighbors and peers, and having the [allegedly inaccurate information] used as evidence [in] divorce proceedings." *Dick*, 67 F. Supp. 3d at 185.

---

[3] Defendant assumes Plaintiff's references to "*Aki v. Sebelius*" intend to refer to this case.

In any event, Plaintiff would still fail to state a claim under § 552a(g)(1)(C) because he does not plausibly allege a concrete adverse determination "consequently" caused by inaccurate information. 5 U.S.C. § 552a(g)(1)(C); *see also McCready v. Nicholson*, 465 F.3d 1, 12 (D.C. Cir. 2006) ("Quite simply, the text of the statute conditions relief upon a concrete, adverse determination.").

In claiming an adverse determination, Plaintiff points to several allegedly frustrated business transactions,[4] but these claims are akin to a general hampering of an ability to apply for jobs, which has been found insufficient to state a claim under § 552a(g)(1)(C). *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009). These allegations also seem more closely tied to alleged "the media storm," Pl.'s Opp'n at 24, caused by the Mueller Report generally— but Plaintiff does not challenge every occurrence of his name in the Mueller Report. Nor is it plausible that the specific inaccuracies alleged in footnote 112 caused these claimed lost business deals, particularly where Plaintiff was accurately identified elsewhere in the report. To survive a motion to dismiss, Plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" which is evaluated using the court' "judicial experience and common sense." *Ashcroft*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

---

[4] Pl.'s Opp'n at 23-25; *see, e.g.*, Pl.'s Opp'n at 24 ("Plaintiff was forced to abandon his involvement in raising hundreds of millions of dollars in Euro bonds . . . ."); Pl.'s Opp'n at 24 ("Plaintiff has been forced to forgo numerous business opportunities because no bank, investment company, or other financial institutions will meet with him once they google his name.").

## **CONCLUSION**

For the above-stated reasons, and the reasons previously stated, all remaining claims should be dismissed for failure to state a claim.


Dated: February 7, 2025                              Respectfully submitted,

                                                     BRETT A. SHUMATE
                                                     Acting Assistant Attorney General

                                                     ELIZABETH J. SHAPIRO
                                                     Deputy Branch Director

                                                     JOSHUA E. GARDNER
                                                     Special Counsel

                                                     */s/ Rebecca Kopplin*
                                                     REBECCA KOPPLIN
                                                     Trial Attorney (California Bar No. 313970)
                                                     United States Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     1100 L Street NW
                                                     Washington, D.C. 20005
                                                     Telephone: (202) 514-3953
                                                     Facsimile: (202) 616-8470
                                                     Email: Rebecca.M.Kopplin@usdoj.gov

                                                     *Counsel for the United States*

16