## In the United States District Court
## for the District of Columbia

|  |  |
|---|---|
| **GIORGI RTSKHILADZE**, | ) |
| *Plaintiff,* | ) |
| v. | ) No. 1:20-cv-1591-CRC |
| **ROBERT S. MUELLER, III,** | ) |
| and | ) |
| **UNITED STATES DEPARTMENT OF JUSTICE,** | ) |
| *Defendants.* | ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR THE DISCRETIONARY AWARD OF ATTORNEY'S FEES UNDER THE PRIVACY ACT

## INTRODUCTION

Pursuant to Fed. R. Civ. Proc. 54(d)(2), the attorney of record for Plaintiff, Giorgi Rtskhiladze, submits this memorandum of law in support of his motion for the discretionary award of attorney's fees under the Privacy Act.

This Court has the discretionary authority under the Privacy Act to shift the fees incurred by a plaintiff to the government where the plaintiff substantially prevails. In certain cases, this is so regardless of whether the case was litigated to a final judgment or a court-approved consent decree, and even where the government insists that plaintiff's attorney waive the right to seek fees from the court. This is one of those cases.

The Motion should be granted.

**ARGUMENT**

I.   **THE *EVANS* STANDARD AND ITS EXCEPTIONS**

*Evans v. Jeff D.*, 475 U.S. 717 (1986) contemplates the discretionary award of fees under these circumstances. *Evans* does not categorically preclude a court from awarding discretionary fees under the Privacy Act where the DOJ required plaintiff's counsel to forego fees in a settlement, particularly given these specific circumstances. The Privacy Act's discretionary fee provisions operate under different standards than traditional civil rights statutes, and several potential avenues for fee recovery exist despite the settlement waiver.

*First*, the systematic practice exception noted in *Evans* applies where the government demands that counsel agree to forego fees is part of a long-standing practice designed to dissuade competent trial and appellate counsel from taking meritorious Privacy Act cases. As argued below, upon information and belief, DOJ has consistently demanded such clauses in settlement agreements regardless of the merits.

In *Evans*, the Supreme Court recognized that district courts generally have discretion to approve civil rights settlements that include attorneys' fee waivers, even when such waivers are expressly conditioned on the settlement. Although the Court held that the district court did not abuse its discretion in upholding a waiver of fees, it noted that the outcome may be different where the record indicates the government had a policy or practice that insists upon a fee waiver as a condition of settlement in civil rights litigation. *Id.* at 740.

In *Citizens for Responsibility and Ethics in Wash. v. H.U.D.*, 415 F. Supp. 3d 215 (2019), the court allowed pattern-or-practice claims regarding government fee waiver policies to proceed even when individual fee denials were moot, noting that agencies might have "a practice of

denying every waiver request in the hope that requesters will abandon their efforts."  The same logic applies here.

The D.C. Circuit's approach in *Moore v. National Ass'n of Securities Dealers, Inc*., 762 F.2d 1093 (1985) demonstrates additional nuance in evaluating fee waivers. The court of appeals distinguished between cases where the defendant expressly conditioned the merits settlement on a waiver of attorneys' fees and situations involving voluntary waivers, emphasizing that courts should assess "the reasonableness of all aspects of the settlement" including waivers.  *Id.*  Here, Plaintiff's counsel stated in a status conference with the Court on December 11, 2025, that it was ethically bound to settle the case because Plaintiff wanted to take the government's offer to correct the record even though counsel asserted upon information and belief the apparent impropriety of the government uniformly requiring such clauses in all Privacy Act settlements. Moreover, prior to finalizing the settlement agreement, undesigned counsel sent an email to DOJ expressly reserving the right to challenge DOJ's demand to include a fee-waiver clause in the settlement agreement.  Exhibit A

A.     **Privacy Act Fee Operates under a Distinct Statutory Framework**

Under 5 U.S.C. § 552a(g)(2)(B), courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed."  5 U.S.C. § 552a.  The D.C. Circuit in *Blazy v. Tenet*, 194 F.3d 90 (1999) emphasized that Privacy Act fee provisions should not "blindly embrace standards used under FOIA" because the statutes serve different purposes. The court noted that "there is no justification for a court to blindly embrace standards used under FOIA to assess claims for fees and litigation costs presented by prevailing parties under the Privacy Act." *Id*. at 95. This suggests that the Privacy Act's discretionary fee authority provides broader

judicial discretion than other fee-shifting statutes to address systematic government practices that undermine the statute's remedial purposes.

### B. Government's Recalcitrant Litigation Conduct

The D.C. Circuit has recognized that government bad faith in litigation can justify fee awards under the common law exception to the American Rule. In *American Hosp. Ass'n v. Sullivan*, 938 F.2d 216 (1991), the court upheld attorneys' fee awards where the government acted in bad faith, noting that such conduct warranted sanctions despite the lack of statutory fee-shifting authority.

The specific litigation history in this case—where DOJ settled only after the D.C. Circuit remanded a dismissal and the district court denied DOJ's renewed motion to dismiss—supports a conclusion that the government's conduct in demanding a waiver of fees was in bad faith. This is patently clear given that Plaintiff several times in his testimony before the grand jury point-blank corrected the senior government prosecutor questioning when the prosecutor characterized him as a "Russian businessman." The prosecutor knew Plaintiff was a long-time resident of the United States and a native of the Republic of Georgia. And upon information and belief, the government's demand here was part of a longtime practice of demanding fee waivers in all Privacy Act settlements, regardless of the merits or the government's admission of defamation. Here, the five-and-a-half-year duration and multiple proceedings provide additional factors supporting discretionary fee awards. *Copeland v. Marshall*, 641 F.2d 880, n.66 (1980) noted that government policy changes occurred "with great reluctance and only under the pressure of the lawsuit," suggesting that extended litigation pressuring government settlements may warrant special consideration in fee determinations.

4

## II.     THE EXCLUSIVE KNOWLEDGE DOCTRINE

The Supreme Court has consistently recognized that parties with exclusive knowledge or control of evidence are appropriately positioned to bear evidentiary burdens. In *Smith v. United States*, 568 U.S. 106 (2013), the Court articulated this principle clearly: "where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party is best situated to bear the burden of proof." The Court explained that placing the burden on the defendant was both "practical and fair" because "the informational asymmetry heavily favors the defendant."

The Court has also applied this principle in civil contexts, including in some of the earliest decisions by the Court. In *Greenleaf's Lessee v. Birth*, 31 U.S. 302 (1832), an early Supreme Court case established that "generally the burden of proof is on the party within whose peculiar knowledge and means of information the fact lies," though noting this rule is "subject to qualification in its application." *See also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) (explaining that presumptions and burden-shifting mechanisms reflect traditional common law principles for allocating evidentiary responsibilities); and *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977) (explaining that presumptions are "created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof.").

The doctrine has the salutary effect of incentivizing proper record-keeping and documentation practices. Entities aware they may face burden-shifting have strong incentives to maintain comprehensive records that can support their positions in litigation. This creates beneficial secondary effects of promoting transparency and accountability in government operations.

Here, there is no way for Plaintiff to probe the settlement practices in Privacy Act cases. All relevant information is in the possession and control of the government and the government should be required to demonstrate that it does not have an improper practice of requiring fee waivers in all Privacy Act settlements. If there are settlements where such a clause does not exist, it should be easy enough to produce them as part of a showing that there is no such practice.

### III.     PRIVACY ACT POLICY CONSIDERATIONS STRONGLY FAVOR AN AWARD.

The Privacy Act provides discretionary attorney's fees for record amendment cases under 5 U.S.C. § 552a(g)(2)(B), which states that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed." This provision applies specifically to cases where an agency "makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection." *Id.*

Courts exercising discretion to award attorney's fees in Privacy Act record amendment cases under 5 U.S.C. § 552a(g)(2)(B) must consider several key public policy factors established by Supreme Court precedent. As an initial matter, the plaintiff must have substantially prevailed in the litigation. Assuming that hurdle is satisfied, the primary considerations include: (i) the objective reasonableness of the government's position in denying the record amendment, (ii) the extent of the plaintiff's success in the litigation, (iii) whether the lawsuit served a broader public purpose beyond individual relief, (iv) the need to encourage enforcement of privacy rights while deterring frivolous litigation, (v) the significance of the constitutional or statutory rights vindicated, and (vi) the case's complexity and benefit to the public interest.

A.     **Plaintiff "Substantially Prevailed"**

Although the Privacy Act provides that courts may assess fees where the plaintiff has "substantially prevailed," the statute does not define what constitutes substantially prevailing, leaving this determination to judicial interpretation.

The D.C. Circuit established the foundational test in *Sweatt v. U.S. Navy*, 683 F.2d 420 (D.C. Cir. 1982), requiring a causal nexus between the litigation and the agency's action. The court explained that "the causal nexus between the litigation and the release of the Ho File required for an award of attorneys' fees is nonexistent" when rejecting a fee claim where no Privacy Act claim relating to the released file was pending at the time of release. *Id.* This established that mere temporal proximity between filing suit and agency action is insufficient without demonstrating that the litigation substantially caused the relief obtained.

In *Sweatt*, the court recognized that "a judicial order directing the release of documents is not a prerequisite to an award of attorneys' fees under either the FOIA or the Privacy Act" and that courts have read the substantially prevailed standard as not precluding fee recovery "where the government, after commencement of the litigation, (has) acted to moot the action by supplying the material sought." *Id.* This demonstrates that settlements and voluntary agency action can satisfy the substantially prevailed standard if proper causation is shown.

The D.C. Circuit significantly refined Privacy Act fee analysis in *Blazy v. Tenet*, 194 F.3d 90 (1999), holding that "there is no justification for a court to blindly embrace standards used under FOIA to assess claims for fees and litigation costs presented by prevailing parties under the Privacy Act." The court emphasized that "not only do FOIA and the Privacy Act serve very different purposes, but there is nothing in either statute or in the relevant legislative history that

7

requires courts to resolve claims arising under the Privacy Act pursuant to standards developed to assess claims arising under FOIA." *Id.*

The court explained that unlike FOIA, "the Privacy Act's primary purpose is not disclosure. Rather, 'the main purpose of the Privacy Act's disclosure requirement is to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies.'" *Id.* This individual-focused purpose means that "a prevailing claimant under the Privacy Act surely cannot be disqualified from fees and litigation costs because his or her interests are principally private in nature." *Id.*

Importantly, in *Blazy*, the district court found that the plaintiff had "substantially prevailed" because "the filing of the suit and the Court's involvement were directly responsible for the release of all documents to which plaintiff was entitled." *Id.* This demonstrates that causation can be established through the litigation process forcing agency action, even without a specific court order compelling relief.

Here, Plaintiff has substantially prevailed because, after five and a half years of intensive litigation including a district court dismissal, D.C. Circuit reversal and remand, and denial of the government's renewed motion to dismiss, DOJ agreed to amend the record leading to a settlement agreement. Indeed, this factual scenario presents strong evidence of causation between litigation and the DOJ's decision to amend records.

Several factors support this conclusion. *First*, the five-and-a-half-year litigation timeline demonstrates sustained legal pressure that ultimately resulted in the desired relief. Unlike cases where agencies provide quick responses that might have occurred anyway, this prolonged battle suggests the agency was resistant to providing relief until compelled by litigation success.

8

*Second*, the D.C. Circuit's reversal and remand represents a significant judicial victory that directly challenged the government's position. As established in *Martin v. Lauer*, 740 F.2d 36 (D.C. Cir. 1984), "the fact that government prevailed at trial level did not compel finding that its position was substantially justified so as to preclude an award of fees" under fee-shifting statutes.

*Third*, the timing of DOJ's agreement to amend records is crucial. The settlement occurred after the D.C. Circuit reversed and remanded, and after the district court denied the government's renewed motion to dismiss on remand. This sequence suggests that the litigation pressure, particularly the appellate success, directly influenced DOJ's willingness to provide the requested record amendment.

### B. A Settlement Agreement Can Be a Predicate to "Substantial Prevailed" Finding.

Moreover, courts recognize that settlement agreements can constitute the type of relief that establishes substantial prevailing. In *Davy v. C.I.A.*, 456 F.3d 162 (D.C. Cir. 2006), the D.C. Circuit held that a requester "substantially prevailed" by securing an "enforceable judgment" because it was a "judicially sanctioned change in the legal relationship of the parties." *Id.*

While the scenario described involves a settlement agreement rather than a court order, the key principle is that the litigation must substantially cause the relief obtained. The fact that DOJ agreed to correct its defamation only after suffering an appellate defeat, and denial of its renewed motion to dismiss strongly suggests the necessary causal relationship.

### C. This Case Soundly Falls within Public Policy Considerations.

#### 1. The Role of Private Attorney General

The Supreme Court in *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782 (1989) emphasized the importance of the "private attorney general" role in fee determinations. The Court held that plaintiffs who successfully vindicate constitutional or

9

statutory rights "have thus served the 'private attorney general' role which Congress meant to promote" through fee-shifting statutes. *Id.* In the context of Privacy Act cases, this principle recognizes that successful record amendment litigation serves broader interests in ensuring accurate government records and protecting individual privacy rights.

In *City of Riverside v. Rivera*, 477 U.S. 561 (1986), the Court explained that civil rights plaintiffs "often secures important social benefits that are not reflected in nominal or relatively small damages awards." The Court noted that "a successful civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms" and that "Congress has determined that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff....'" *Id.*

### 2. Case Complexity and Public Benefit

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) also established that case complexity is a critical factor in fee determinations. The Court endorsed district court findings that complex cases with "interrelated issues of fact and law" justify extensive attorney time, particularly when counsel "served the public interest by vindicating important constitutional rights." *Id.* Even though the case was not litigated to final judgment, the fact that the government finally agreed to acknowledge its defamation when it agreed to correct its error is a clear vindication of the public policy underlying the Privacy Act.

### 3. Balancing Deterrence and Abuse Prevention

Fee-shifting statutes serve to eliminate financial disincentives to challenge governmental actions and encourage private parties to vindicate their rights. This principle applies directly to Privacy Act enforcement, where individual plaintiffs typically lack the resources to challenge

government record-keeping practices without fee protection. This supports liberal fee awards when the government's position lacks substantial justification, even when the litigation costs exceed any monetary relief obtained.  There can be no clearer case than this one.

IV.	THE FEES SOUGHT ARE "REASONABLE"

A.	Hours Reasonably Expended

This action commenced in the summer of 2020, was dismissed in September 2021, involved a grand jury proceeding in 2021 to 2022, involved a consolidated appeal to the D.C. Circuit in 2022 to 2024, and the denial of DOJ's Renewed Motion to Dismiss in May 2025. Only then did DOJ offer to correct its defamation of Plaintiff.  Six-months of negotiation then commenced resulting in settlement and dismissal in December 2025. Not only that but the case involved a petition for rehearing *en banc* in the D.C. Circuit and a petition for certiorari in the Supreme Court:

> **Rtskhiladze v. Mueller**, 2021 WL 3912157 (D.D.C. Sept. 1, 2021) (dismissing Privacy Act claims)
>
> **In re Grand Jury Proceedings**, 2021 WL 7908202 (D.D.C. Dec. 29, 2021)
>
> **In re Grand Jury Proceedings**, 2022 WL 474134 (D.D.C. Feb. 16, 2022) (proceeding related to grand jury transcript)
>
> **In re Grand Jury Proceedings**, 2022 WL 1063005 (D.D.C. April 8, 2022)
>
> **Rtskhiladze v. Mueller**, 110 F.4th 273 (D.C. Cir. 2024) (reversing and remanding Privacy Act claim to amend)
>
> **Rtskhiladze v. Mueller**, 2024 WL 4508511 (D.C. Cir. Oct. 16, 2024)
>
> **Rtskhiladze v. Department of Justice**, 145 S. Ct. 1429 (March 24, 2025) (cert. denied)

>Rtskhiladze v. Mueller, 784 F. Supp.3d 256 (D.D.C May 30, 2025) (denying DOJ's renewed motion to dismiss)

Given the extensive litigation, the expenditure of 704.55 hours is reasonable. Exhibit B (Time59 timesheets); Exhibit C (Madden Declaration).

### B. The Fees Sought Are Less than Awardable under the Laffey Matrix

The Privacy Act authorizes courts, in their discretion, to award "reasonable attorney fees and other litigation costs reasonably incurred" to a prevailing plaintiff. 5 U.S.C. § 552a(g)(4)(B). Courts in this District frequently rely on the Laffey Matrix, particularly the LSI-adjusted Laffey Matrix, as a proxy for prevailing market rates in complex federal litigation. *DL v. District of Columbia*, 924 F.3d 585, 589–90 (D.C. Cir. 2019); *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 80 F. Supp.3d 1, 5–6 (D.D.C. 2015). Under recent LSI adjustments, attorneys with 31 or more years of experience routinely command rates well in excess of $650–$750 per hour—a range of $455,000 to $525,000 in this case.

Plaintiff's counsel has forty years of intensive civil trial and appellate experience, placing him squarely within the highest Laffey experience band. Notwithstanding this, Plaintiff seeks a rate of $500 per hour, the amount designated in the Engagement Agreement (Exhibit D), which is below prevailing Laffey rates and therefore conservative. Courts may accept an attorney's actual billing rate where, as here, it reflects the market rate for comparable work. *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982). Accordingly, $500 per hour is a reasonable—and restrained—rate for counsel of this seniority litigating a successful Privacy Act case in this District.

**CONCLUSION**

      For the foregoing reasons, Plaintiff respectfully requests that the Motion be granted and that his attorneys be awarded $350,000 in attorney's fees.

      Respectfully submitted,

      /s/ *Jerome A. Madden*
      Jerome A. Madden
      THE MADDEN LAW GROUP PLLC
      1455 Pennsylvania Ave., NW, Suite 400
      Washington, DC 20004
      (202) 349-9836
      JMadden@TheMaddenLawGroup.com
      District of Columbia Bar No. 272260

**CERTIFICATE OF SERVICE**

On January 13, 2026, I certify that I caused to be served on counsel for the Department of Justice and Robert S. Mueller, III by way of the CM ECF system a copy of the Plaintiff's Motion for Discretionary Award of Attorney's Fees under the Privacy Act.

_____
Jerome A. Madden